# NO. 24-1271

In The

# United States Court Of Appeals
## For The Fourth Circuit

**KRISTEN M. BARNETT,**

*Plaintiff – Appellant,*

v.

**INOVA HEALTH CARE SERVICES,**

*Defendant – Appellee,*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

———————

**BRIEF OF APPELLANT**

———————

Timothy P. Bosson
Isaiah R. Kalinowski
BOSSON LEGAL GROUP PC
8300 Arlington Boulevard,
Suite B2
Fairfax, VA 22031
(571) 775-2529
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1271__        Caption: __KRISTEN BARNETT v. INOVA HEALTH CARE SERVICES__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kristen Barnett__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?               ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?               ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: 15 April 2024

Counsel for: Kristen Barnett, Appellant

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF ISSUES ....................................................................... 1

STATEMENT OF THE CASE ................................................................. 2

SUMMARY OF THE ARGUMENT ....................................................... 5

ARGUMENT ............................................................................................ 7

    I.     STANDARD OF REVIEW ............................................................... 7

    II.    THE DISTRICT COURT FAILED TO APPLY MANDATORY
           PRECEDENT REGARDING RELIGIOSITY OF SINCERELY-HELD
           BELIEFS ............................................................................................. 7

           A. THE DISTRICT COURT'S RULING DEPARTED FROM THIS
               COURT'S PRECEDENT REGARDING WHETHER A PARTICULAR
               BELIEF IS RELIGIOUS ...................................................... 8

           B. THE DISTRICT COURT BASED ITS RULING ON AN INCORRECT
               LEGAL STANDARD .......................................................... 16

    III.   THE DISTRICT COURT ERRED BY DISMISSING MRS. BARNETT'S
           ACCOMMODATION CLAIM ................................................................ 19

           A. MRS. BARNETT WAS ENTITLED TO ACCOMMODATION OF HER
               SINCERELY-HELD RELIGIOUS BELIEFS ............................... 19

           B. MRS. BARNETT PLED THE ELEMENTS OF AN ACCOMMODATION
               CLAIM ............................................................................. 21

**IV.** **THE DISTRICT COURT ERRED BY DISMISSING MRS. BARNETT'S DISPARATE TREATMENT CLAIMS** ..........................................................23

    A. THE PLEADING STANDARD IS NOT ONEROUS ....................................23

    B. THE LAW DOES NOT PRECLUDE A PARTY FROM PLEADING REASONABLE ACCOMMODATION AND DISPARATE TREATMENT CLAIMS THAT RELY UPON SIMILAR FACTS .........................................24

    C. A PARTY NEED NOT PLEAD A COMPARATOR ......................................28

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE ........................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abeles v. Metro. Wash. Airports Auth.,*
676 Fed. Appx. 170 (4th Cir. 2017) ............................................................26

*Africa v. Pennsylvania,*
662 F.2d 1025 (3d Cir. 1981) ......................................................6, 8, 17, 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................23, 28

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................23, 28

*Bing v. Brivo Sys., LLC,*
959 F.3d 605 (4th Cir. 2020) ........................................................................24

*Bryant v. Aiken Reg'l Med. Ctrs., Inc.,*
333 F.3d 536 (4th Cir. 2003) ...................................................................28, 29

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014)........................................................................................10

*Chalmers v. Tulon Co.,*
101 F.3d 1012 (4th Cir. 1996) ...............................................20, 24, 25, 26, 27

*Coleman v. Maryland Court of Appeals,*
626 F.3d 187 (4th Cir. 2010) ........................................................................24

*Dachman v. Shalala,*
9 Fed. Appx. 186 (4th Cir. 2001) .................................................................21

*Dettmer v. Landon,*
799 F.2d 929 (4th Cir. 1986) ................................................................... 17-18

*Doswell v. Smith,*
No. 94-6780, 1998 U.S. App. LEXIS 4644
(4th Cir. Mar. 13, 1998)......................................................................12, 13, 18

*Dykzeul v. Charter Communs., Inc.*,
No. CV 18-05826 DSF, 2019 U.S. Dist. LEXIS 228981
(C.D. Cal. 2019)............................................................................25

*Emp't Div. v. Smith*,
494 U.S. 872 (1990)................................................................9, 10

*Enriquez v. Gemini Motor Transport LP*,
No. CV-19-04759-PHX-GMS, 2021 WL 5908208
(D. Ariz. Dec. 14, 2021) .........................................................25, 26

*Feminist Majority Found. v. Hurley*,
911 F.3d 674 (4th Cir. 2018) .........................................................24

*Guthrie v. PHH Mortg. Corp.*,
79 F.4th 328 (2023) ......................................................................26

*Haywood v. Locke*,
387 Fed. Appx. 355 (4th Cir. 2010) ...............................................29

*Hernandez v. Commissioner*,
490 U.S. 680 (1989).......................................................................10

*Holt v. Hobbs*,
574 U.S. 352 (2015).......................................................................13

*Laing v. Fed. Express Corp.*,
703 F.3d 713 (4th Cir. 2013) .........................................................28

*McCleary-Evans v. Maryland Department of Transportation*,
780 F.3d 582 (4th Cir. 2015) .........................................................23

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).......................................................................28

*Mickle v. Moore (In re Long Term Admin. Segregation of Inmates
Designated As Five Percenters)*,
174 F.3d 464 (4th Cir. 1999) ...........................................11, 12, 18

*Patrick v. LeFevre*,
745 F.2d 153 (2d Cir. 1984) ......................................12, 15, 18, 19

iv

*Rayyan v. Va. DOT*,
719 Fed. Appx. 198 (4th Cir. 2018) ...............................................................26

*Ringhofer v. Mayo Clinic, Ambulance*,
Nos. 23-2994, 23-2995, 23-2996, 23-2997, 23-2999,
2024 U.S. App. LEXIS 12522 (8th Cir. May 24, 2024) ...............................21

*Semenova v. Md. Transit Admin.*,
845 F.3d 564 (4th Cir. 2017) ...........................................................................7

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981)...........................................................................................23

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*,
450 U.S. 707 (1981)...............................................................................10, 12, 18

*Tinsley v. City of Charlotte*,
854 F. App'x 495 (4th Cir. 2021)....................................................................28

*Tutt v. Wormuth*,
No. 19-2480, 2021 U.S. App. LEXIS 26986
(4th Cir. Sep. 8, 2021) ......................................................................................28

*United States EEOC v. Consol Energy, Inc.*,
860 F.3d 131 (4th Cir. 2017) ......................................... 6, 8, 9, 19, 20, 22, 27

*United States v. Ballard*,
322 U.S. 78 (1944).............................................................................................12

*United States v. Seeger*,
380 U.S. 163 (1965)...............................................................................14, 15, 18

*Walker v. Novo Nordisk Pharm. Indus.*,
No. 99-2015, 2000 U.S. App. LEXIS 17848 (4th Cir. 2000) .......................26

*Welsh v. United States*,
398 U.S. 333 (1970)...............................................................................14, 15, 16

*Wisconsin v. Yoder*,
406 U.S. 205 (1972)...........................................................................................11

*Woods v. Astrazeneca Pharms., L.P.*,
    659 F. Supp. 3d 512 (M.D. Pa. 2023)............................................24

*Woods v. City of Greensboro*,
    855 F.3d 639 (4th Cir. 2017) ......................................................23

**Statutes**

28 U.S.C. § 1291 ..............................................................1, 3, 4, 5

28 U.S.C. § 1331 ...........................................................................1

28 U.S.C. § 1367 ........................................................................26

42 U.S.C. § 2000e ..............................................................5, 6, 23

42 U.S.C. § 2000e(j) ..................................................................11

42 U.S.C. § 2000e-2(a)(1)....................................................19, 29

42 U.S.C. § 2000e-2(a)(2)...........................................................29

Va. Code § 2.2-3900, *et seq.*......................................................23

**Constitutional Provisions**

U.S. Const. amend. I .........................................................11, 12, 18

**Regulations**

29 C.F.R. § 1605.1 ..............................................................9, 10, 14

**Rules**

Fed. R. Civ. P. 8(d)(2)................................................................24

Fed. R. Civ. P. 12(b)(6)...................................................5, 7, 11, 22

## STATEMENT OF JURISDICTION

The Eastern District of Virginia Federal Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the case involves a federal question. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. After oral argument and a bench ruling on 7 March 2024, the trial court entered its Final Order on 26 March 2024, dismissing the complaint with prejudice. JA86. Appellant timely filed her Notice of Appeal on 27 March 2024. JA87-88.

## STATEMENT OF ISSUES

1. Whether the district court erred in ruling that beliefs rooted in biblical authority and supplemented by prayerful consideration were not religious beliefs entitled to legal recognition and protection;

2. Whether the district court erred in dismissing Mrs. Barnett's reasonable accommodation claim on the basis that she failed to plead a legally-cognizable cause of action; and

3. Whether the district court erred in dismissing Mrs. Barnett's federal and state disparate treatment claims on the basis that the facts were duplicative with the reasonable accommodation claim and that a comparator was required to be pled.

## STATEMENT OF THE CASE

Appellant Kristen Barnett was such a high-achieving supervising nurse that she was chosen by Appellee Inova Healthcare Services ("Inova") as "a liaison between the Children's Hospital and [Inova's] central system headquarters to plan a coordinated response to the [Covid-19] pandemic." JA6. Throughout the pandemic—well before vaccines were available—Mrs. Barnett sacrificially served her co-workers and patients. JA6, JA21, JA26. As the pandemic wound down, however, Inova decided to double-down on its Covid-19 vaccine requirements. JA6-7. Mrs. Barnett's religious exemption request to the vaccine was denied, and she was forced by Inova to choose between her job and her faith. JA7-9. She chose her faith and was terminated on July 5, 2022. JA9-10.

Mrs. Barnett, a registered nurse, was first hired by Inova on 8 January 2018. JA6. She began as a bedside nurse but worked her way up to the Pediatric Intensive Care Unit Supervisor within two years. JA21.

In July 2021, near the height of the pandemic, Inova developed its first Covid-19 vaccination policy, and approved basically all employee medical or religious exemption requests. JA6-7. Under that policy, Mrs. Barnett received an exemption from vaccination. JA7.

At the end of 2021, as the pandemic began to subside, Inova changed their Covid-19 policy, and required all employees that desired exemptions to reapply.

JA6-7.  This time Inova decided to analyze each individual request with enhanced scrutiny.  JA8.  For religious exemptions, Inova particularly scrutinized each application to determine, in its view, the validity of each employee's religious beliefs.  *Id.*  Under its internal rubric, Inova ultimately approved some requests and denied others.  JA13.

The new application form included six probing questions for religious adherents to address, including the duration of time in which the employee held the belief that informed their objection and why the employee specifically objected to the Covid-19 vaccination, if they had received other vaccinations in the past.  JA8.  Though concerned by the nature of the questions, Mrs. Barnett dutifully and thoroughly answered all six questions.  *Id.*; JA18-23.

Mrs. Barnett is a devout Christian and member of a conservative protestant non-denominational Bible Church.  JA7.  In her exemption request, Mrs. Barnett acknowledged available scientific evidence appeared to show the vaccinations were medically safe, but she explained that she still had been led through the reading of holy Scripture and prayer to abstain from vaccination.  JA8.  She believed that it would be sinful for her to consume or engage with a product such as the vaccination after having been directly instructed by God to abstain from it.  *Id.*  She provided biblical references in support of her position detailing how participation in a sinful activity with her physical body, in disobedience of her

conscience, was an independent sin, and one that affected her body's role as the "temple" of God.  JA8-9.

She noted that, "[w]here Scripture does not expressly instruct on a particular matter," she was required to search the Bible for related truths, "and to seek personal guidance from the Holy Spirit."  *Id.*  Having done so, she was bound to follow the conviction of the Holy Spirit placed upon her conscience.  *Id.*  For these points, she cited four passages from the Biblical New Testament, which are authoritative for Christian doctrine.  JA9.  She added that by receiving the Covid-19 vaccination after having received contrary revelation to her conscience, she "would be violating a sacred trust to honor God with [her] body."  *Id.*

In March 2022, Inova denied Mrs. Barnett's application for a religious exemption, stating, formulaically, that "Your request did not meet the criteria for exemption, did not demonstrate a religious belief that conflicts with the vaccination requirement, or could not be accommodated in your role without posing an undue hardship to Inova's operations."  *Id.*  Inova provided Mrs. Barnett the opportunity to provide additional information if she wished to appeal the denial, which she did on 21 March 2022.  *Id.*; JA24-28.

In her second submission, Mrs. Barnett elaborated further on the religious reasons she was for abstaining from the Covid-19 vaccination; the basis for her objection remained her obedience to her conscience, which she believed had

received clear instruction from God after much prayer, coupled with her understanding of holy Scripture.  JA10, JA24-26.

Inova denied her application for a religious exemption a second time, and the decision was final.  JA10.  Inova placed Mrs. Barnett on administrative leave in May and June of 2022, and her termination was effective on 5 July 2022.  *Id.*

Mrs. Barnett received a "right to sue" letter from both the Virginia Office of Civil Rights and the federal EEOC on 15 November 2023 and 21 November 2023 respectively.  *Id.*  She then filed her civil complaint on 1 December 2023, alleging religious discrimination under 42 U.S.C. § 2000e *et seq.* and related state statutes.  JA2.

On 12 January 2024, Inova filed a motion to dismiss under F.R.C.P. 12(b)(6), primarily attacking the religiosity of Mrs. Barnett's objection to the Covid-19 vaccination.  *Id.*  After briefing, the district court heard oral argument in this case and five other related cases on 7 March 2024.  JA53-59.  Following the parties' arguments, the district court ruled from the bench, dismissing Mrs. Barnett's complaint.  JA60-62.  On 26 March 2024, the district court issued a final order of dismissal, and Mrs. Barnett filed this appeal on 27 March 2024.  JA86-88.

## SUMMARY OF THE ARGUMENT

Appellant asks this Court to reaffirm its prior jurisprudence regarding the proper analysis of religiosity of an employee's claim for religious discrimination

under 42 U.S.C. § 2000e *et seq.* Instead of following this Court's rulings in cases such as *United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131 (4th Cir. 2017), the district court took a narrow view of religiosity, based primarily on a strained reading of *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981).

The district court dismissed Mrs. Barnett's federal claims for failure to accommodate religious beliefs and disparate treatment. Likewise, it dismissed her state law claim for disparate treatment. To do so, the district court ruled that personal interpretation of scripture and divine revelation to individual conscience in prayer amount to no more than an insincere ploy to avoid following an undesirable employer policy, which "would amount to a blanket privilege." JA61. In denying that religious convictions derived from prayer to the Almighty are truly religious, the district court declared invalid the most fundamental and personal component of religious practice under the guise of a subsuming policy consideration. In this, the district court deviated from the precedents of this Court, and committed clear legal error.

The district court likewise dismissed Mrs. Barnett's disparate treatment claims on the basis that she had not pled facts distinct from her reasonable accommodation claim and because she had failed to allege a comparator. Neither of these requirements are mandated by the law of this Circuit, and by so ruling the district court also erred.

# ARGUMENT

## I.    <u>STANDARD OF REVIEW.</u>

Mrs. Barnett appeals the dismissal of her complaint, made pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Court applies *de novo* review to dismissal of a complaint under these circumstances, "assuming as true the complaint's factual allegations and construing 'all reasonable inferences' in favor of the plaintiff."  *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).  This standard applies to all issues addressed in this appeal.

## II.    <u>THE DISTRICT COURT FAILED TO APPLY MANDATORY PRECEDENT REGARDING RELIGIOSITY OF SINCERELY-HELD BELIEFS.</u>

The district court's final order incorporated its bench ruling, which in turn incorporated its previous ruling in a similar case.  JA86 (granting dismissal "for the reasons stated in open court"); JA61 (ruling that the complaint must be dismissed "for the reasons that have been set out in the *Ellison* case and that apply with equal force here"); JA69-73.  In its oral ruling, the district court's only statement beyond the reference to *Ellison* was that recognizing Plaintiff's sincerely-held religious beliefs "would amount to a blanket privilege and that if permitted to go forward would undermine our system of ordered liberty."  JA61.

In the referenced *Ellison* ruling, the district court had ruled that plaintiffs' claims were "not rooted in concerns that are religious in nature."  JA70.  Among the plaintiffs in that case whose objections to vaccination were most similar to

Mrs. Barnett's, the district court ruled that the belief "fail[ed] to establish a sincere religious objection under the *Africa* standard," because a belief that God instructed an employee in the context of prayer not to receive the vaccination "amounts to the type of 'blanket privilege' that undermines our system of ordered liberty." JA73. The district court went on to say that, "if taken to its logical extreme, [this] claim would serve as a 'limitless excuse for avoiding all . . . obligations.'" *Id.*

A. THE DISTRICT COURT'S RULING DEPARTED FROM THIS COURT'S PRECEDENT REGARDING WHETHER A PARTICULAR BELIEF IS RELIGIOUS.

Historically, when this Court has considered the religiosity of an exemption request, it has uniformly recognized an individual's beliefs as religious, consistent with Supreme Court precedent. The prime exemplar is *United States EEOC v. Consol Energy, Inc.*, 860 F. 3d 131 (4th Cir. 2017). There, the employee objected to a policy imposed by an employer, on the basis that the employee's interpretation of scripture, informed by prayer, barred him from such compliance. *Id.* at 139.

The facts of that case involved a mandatory hand scanning procedure, which the employee objected to as tantamount to accepting the Antichrist's "mark of the beast" foretold in biblical prophecy. *Id.* at 137. While this concern was not shared by that employee's church leadership (*id.* at 142), the employee had derived this belief based on his interpretation of scripture (*id.* at 138), and confirmed in prayer.

*Id.* at 139 (employee referred to scriptures and "pray[ed] very hard about his dilemma") (internal marks omitted). The employee concluded that "in good conscience [he] could not go along with" the employer's requirement. *Id.*

In view of this record, this Court concluded "that there was a conflict between a bona fide religious belief" and the employer's mandate. *Id.* at 141. The Court ruled that the employer's contentions regarding the validity of the beliefs at issue were "beside the point." *Id.* at 142. "It is not Consol's place as an employer, nor ours as a court, to question the correctness or even the plausibility of Butcher's religious understandings." *Id.* The Court found it immaterial whether the beliefs at issue were espoused by his religious authority, or whether the employer concluded the employee "in seeking to protect his religious conscience, has drawn the line in the right place." *Id.* "So long as there is sufficient evidence that [the employee's] beliefs are sincerely held … and conflict with [the employer's] requirement, **that is the end of the matter**." *Id.* at 143 (emphasis added). This Court based that ruling on clear Supreme Court precedent (*see*, *e.g.*, *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim")) and on codified law (*see* 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may

not accept such belief will not determine whether the belief is a religious belief of the employee")). *Id.*; *id.* at n.3.

Moreover, the Court's ruling followed the rationale set forth by the Supreme Court, to recognize the complexity of religious belief derived from interpretation of broader religious doctrines. "Courts should not undertake to dissect religious beliefs because the believer admits that he is 'struggling' with his position or because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981) (ruling that where the employee "drew a line" demarcating what employer requirements his religion would not allow him to accept, it was not the province of the courts "to say that the line he drew was an unreasonable one"). The "narrow function" of the courts is to assess whether an employee's objection to an employer's policy was rooted in "an honest conviction that [compliance with the policy] was forbidden by his religion." *Id.* at 716; see also *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014); *Hernandez v. Commissioner*, 490 U.S. 680 (1989) (ruling that, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds").

Notably, none of these employment cases contain an "ordered liberty" public policy exception, whereby religious beliefs are somehow rendered irreligious. Unlike

First Amendment religion cases, which implicate state action and police power,[1] employment discrimination cases account for "ordered liberty" with the "undue hardship" limitation to religious accommodations built into the statutory language. *See* 42 U.S.C. § 2000e(j) ("The term "religion" includes **all aspects** of **religious observance** and **practice**, as well as **belief**, **unless** an **employer demonstrates** that he is unable to reasonably accommodate … without **undue hardship**") (emphases added). However, the undue burden criterion does not render religious beliefs irreligious due to those practical considerations; it is a factual challenge to the discrimination claim as a whole. As a factual issue, proved as an affirmative defense, undue burden cannot form the basis for dismissal under F.R.C.P. 12(b)(6).

In other contexts, such as with prison inmates, where there exists a large "ordered liberty" concern related to prison safety, this Court has still applied a consistent approach to assessing religiosity of beliefs, even when those beliefs are then counterbalanced against safety concerns. One such ruling was *Mickle v. Moore (In re Long Term Admin. Segregation of Inmates Designated As Five Percenters)*, 174 F.3d 464, 468 (4th Cir. 1999). As in the employment context, this Court was loath to rule that the adherents' beliefs were irreligious simply because they were not rooted in an established religion's dogmatic text:

---

[1] *See*, *e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972) (addressing school mandate for Amish children).

> Although the parties vigorously dispute whether the Five Percenters
> even constitute a religious group … the court assumed -- as do we --
> that [they] are a religious group entitled to First Amendment
> protection. We thus avoid the "difficult and delicate task" of
> examining the nature and sincerity of the inmates' professed beliefs.

*Id.* at 468, citing *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981) and *Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984). This Court followed that deferential rule even in the context of weighing the accommodation requested against structural limitations imposed by state-controlled incarceration, in which "judicial deference" was required because "maintenance of prison order is at stake." *Id.* at 469.

Another inmate case that addresses religiosity of belief is *Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644 (4th Cir. Mar. 13, 1998)(unpub).[2] In *Doswell*, this Court reiterated that those seeking religious accommodation "may not be put to the proof of their religious doctrines or beliefs," as "[r]eligious experiences which are as real as life to some may be incomprehensible to others." *Doswell* at *8, quoting *United States v. Ballard*, 322 U.S. 78, 86 (1944). As with Mrs. Barnett in this case, the inmate in *Doswell* claimed adherence to an established religious tradition, which involved "practice[s that were] indisputably integral to that religious faith as traditionally practiced for millennia." *Id.* at *10. There, as here, there was no dispute that the employee ascribed to a religion as generally understood, although there was a dispute about the individual's

---

[2] Though unpublished, the district court referenced *Doswell* in the *Ellison* ruling, upon which it relied to dismiss Mrs. Barnett's complaint. JA70.

application of the religion's requirements.  Even so, this Court recognized the established rule that this individualized application did not render that religious belief somehow irreligious.  The Court stated: "[t]hat the practitioner's understanding of the origins, exact contours, or reasons for that particular practice may be mistaken, or incomplete, or at serious odds with the understanding of others holding the belief … is beside the point."  *Id.* at \*10-11; *see also Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (ruling that legal protection of religious beliefs is "not limited to beliefs which are shared by all of the members of a religious sect").

This Court recognized that it is the conviction of individual conscience and morality that render a belief religious, even where another person might hold the same view for secular concerns.  "[T]he same belief may be sincerely held by some as a religious belief and as sincerely held by others as a simple matter of secular preference," and thus "the proper free exercise inquiry is therefore whether a belief is sincerely held as a religious belief."  *Doswell* at \*13-14.  The Court continued:

> [T]the proper inquiry is narrowly whether Doswell's asserted belief … is sincerely held as a religious belief or only for purely secular reasons. That he may be ignorant or mistaken as to the true nature of this belief as it is understood by others is irrelevant to whether his particular belief is 'religious' or to whether he holds it 'sincerely.'  Such ignorance or mistake as might be found would be relevant only to the issue whether for him it was sincerely held as a religious belief.  And, on that issue, *an adverse determination could only be based on a mediate finding that in asserting the belief Doswell was deliberately misrepresenting its true basis in his belief system*."

*Id.* at \*15-16 (emphasis added); see also *id.* at \*18 (J. Widener, concurring).

These rulings demonstrate this Court's consistent deference to religious beliefs, and the wide berth afforded to the individual's interpretation of religious requirements according to their individualized conscience. As such, this Court has followed the Supreme Court's guidance in cases such as *Seeger* and *Welsh*. Both of those cases addressed religious exemptions to the military draft, and the analysis applied in those cases formed the foundation for EEOC regulations on religiosity of belief:

> In most cases whether or not a practice or belief is religious is not at issue. However, in those cases in which the issue does exist, the Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. This standard was developed in *United States v. Seeger*, 380 U.S. 163 (1965) and *Welsh v. United States*, 398 U.S. 333 (1970).

29 C.F.R. § 1605.1.

Sincerely-held beliefs are accounted religious when they are "based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent." *United States v. Seeger*, 380 U.S. 163, 176 (1965). "[I]n resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." *Id.* at 184. In fact, a belief is religious "when its devotees regard it as an essential tenet of their religious faith,"

14

and the validity of that belief "cannot be questioned." *Id.* at 184. Courts "are not free to reject beliefs because they consider them 'incomprehensible,'" but are limited to ascertaining "whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious." *Id.* at 185; *see also Patrick v. Le Fevre*, 745 F.2d 153, 158 (2d Cir. 1984). Regarding the sincerity requirement, that is a factually intensive question that cannot be addressed merely on the face of pleadings. *Id.* at 185 (explaining that "the significant question" whether a belief is sincere remains "a question of fact").

*Welsh* was similar to *Seeger*, in that, for both draftees, "their consciences forbade them" from participating in warfare. *Welsh v. United States*, 398 U.S. 333, 337 (1970). "Their objection to participating in war in any form could not be said to come from a 'still, small voice of conscience'; rather, for them that voice was so loud and insistent that both men preferred to go to jail rather than serve." *Id.* Similarly, in this case, Mrs. Barnett preferred to lose her successful career rather than receive a vaccination that God had prohibited her conscience from receiving. As in *Seeger*, the Court in *Welsh* ruled that, to be accounted religious, beliefs "need not be confined in either source or content to traditional or parochial concepts of religion," and therefore "intensely personal convictions which some might find incomprehensible or incorrect come within the meaning of religious belief." *Id.* at 339 (internal marks omitted). Indeed, all that is necessary for a belief to be

religious is that the belief must "stem from … moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." *Id.* at 339-40.

Moreover, even though wartime participation was important to public interests, the Supreme Court did not interpose a counterbalancing factor of "ordered liberty" as a policy consideration to invalidate those religious convictions as too broad for comprehension or protection. Addressing perfectly the critical facts of the instant case, the Supreme Court reasoned:

> Most of the great religions of today and of the past have embodied the idea of a Supreme Being or a Supreme Reality -- a God -- who **communicates to man in some way a consciousness of what is right and should be done, of what is wrong and therefore should be shunned**. If an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him **a duty of conscience to refrain from participating** in any war at any time, those beliefs certainly occupy in the life of that individual "a place parallel to that filled by . . . God" in traditionally religious persons.

*Id.* at 340 (emphasis added). Therefore, under directly applicable precedent of the Supreme Court, divine revelation to an individual's conscience about the morality of a requirement or policy is a religious belief that must be protected.

### B. THE DISTRICT COURT BASED ITS RULING ON AN INCORRECT LEGAL STANDARD.

Instead of following the well-established law appertaining to this Circuit, the district court relied in significant part on a ruling from another Circuit. JA70-71,

relying on *Africa v. Pennsylvania*, 662 F.2d 1025, 1027 (3d Cir. 1981), and related Third Circuit district court cases. *Africa* did not involve employment discrimination in the Title VII context, and does not even address what *beliefs* are to be qualified as religious. Instead, the case addressed only whether a novel belief system espoused by certain prison inmates qualified as a religion. *Africa* at 1032-36.

Importantly, the "*Africa* test" aims to categorize an entire belief system as a religion and is, therefore, orthogonal to the question of whether individual beliefs are religious. Whereas particular religious beliefs will apply to certain contexts (e.g., whether God allows a certain vaccination), a religion is not particularized, but a broad belief system. *Id.* at 1035 (ruling that "a religion must consist of something more than a number of isolated, unconnected ideas [and] is not generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth'"). Since there is no dispute in this case that Protestant Christianity is a religion, *Africa* is entirely immaterial to the issue presented in this case: whether Mrs. Barnett's specific beliefs that opposed the vaccination requirement were religious in nature.

Furthermore, this Court has never adopted the restrictive analysis employed in *Africa* for defining either religion or religious belief, not in the prison inmate context, and certainly not in the employment discrimination context. *See Dettmer*

*v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986) (accepting as correct the analysis of *Seeger*, *supra*, regarding "whether the Church occupies a place in the lives of its members 'parallel to that filled by the orthodox belief in God' in religions more widely accepted"); *see also Mickle v. Moore*, 174 F.3d at 468 (presuming that a proposed novel religion was "a religious group entitled to First Amendment protection" without "attempt[ing] to resolve the question," so as to avoid the "'difficult and delicate task' of examining the nature and sincerity of the inmates' professed beliefs"), relying on *Thomas v. Review Bd.*, 450 U.S. 707, 714, (1981) and *Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984). The only reference to *Africa* by this Court was in an unpublished decision acknowledging that the Third Circuit "assess[ed] whether a locally practiced belief system called MOVE was religious in nature." *Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644, at *10 (4th Cir. Mar. 13, 1998).

While some other Circuits have endorsed the more restrictive *Africa* test for assessing whether a belief system can be accounted as a religion, others have followed the more expansive test from the Second Circuit in *Patrick*, which tracks the Supreme Court's ruling in *Seeger* and similar cases:

> Properly cognizant of the judiciary's incapacity to judge the religious nature of an adherent's beliefs, courts have jettisoned the objective, content-based approach previously employed to define religious belief, in favor of a more subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system."

*Patrick*, 745 F.2d at 157 (citations omitted).  Without having endorsed either approach explicitly, the cases from this Circuit demonstrate this Court's acceptance of a broader, more deferential approach to individuals' religious beliefs and practice.  The district court failed to apply the law of this Circuit to this case.

**III.**  **THE DISTRICT COURT ERRED BY DISMISSING MRS. BARNETT'S ACCOMMODATION CLAIM.**

As explained, *supra*, the district court ruled that Mrs. Barnett was not entitled to accommodation because of the ruling that her beliefs were not religious in nature.  If that error is corrected, it is clear that her complaint made sufficient allegations to proceed, as she alleged facts to make out a religious accommodation claim.

A. MRS. BARNETT WAS ENTITLED TO ACCOMMODATION OF HER SINCERELY-HELD RELIGIOUS BELIEFS.

"Title VII makes it an unlawful employment practice 'to discharge any individual . . . because of such individual's . . . religion.'"  *United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017), quoting 42 U.S.C. § 2000e-2(a)(1).  "Under that provision, an employer must 'make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'"  *Id.*  "To establish a prima facie religious accommodation claim, a plaintiff must establish that: '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the

employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996). In this context, an employee is required to provide "only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Id.* at 1020.

When an employer "fails to make available to a sincere religious objector the same reasonable accommodation it offered other employees," that constitutes a "clear violation of Title VII." *Consol Energy* at 137. However, religious accommodation claims are distinct from disparate treatment claims in that, even if the plaintiff does not plead "that other (unprotected) employees were treated more favorably," an accommodation claim may still proceed on the employer's refusal to accommodate her sincerely-held religious belief. *Chalmers* at 1018. "This is because an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge." *Id.*

To be entitled to accommodation, however, the belief that conflicts with the employer's requirement must be primarily religious in nature, not based solely on secular concerns. "While an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an

employee's preferences." *Dachman v. Shalala*, 9 Fed. Appx. 186, 192 (4th Cir.

2001). Where a plaintiff pleads specific beliefs rooted in their religion, they have

met their burden of a well-pled complaint. *See Ringhofer v. Mayo Clinic,*

*Ambulance*, Nos. 23-2994, 23-2995, 23-2996, 23-2997, 23-2999, 2024 U.S. App.

LEXIS 12522, at *14 (8th Cir. May 24, 2024) ("By connecting their objection to

testing to specific religious principles … [the employees] have satisfied their

burden at this stage").

B. MRS. BARNETT PLED THE ELEMENTS OF AN ACCOMMODATION
CLAIM.

The complaint pled that Mrs. Barnett held bona fide religious beliefs that

conflicted with Inova's vaccination requirement. She pled that "she had been led

by the word of God through her reading of holy Scripture and prayer to abstain

from the vaccination," and that "it would be sinful for her to consume or engage

with a product such as the vaccination after having been instructed by God to

abstain from it." JA8. She added that her beliefs were based on her "study and

understanding of the Bible and personally directed by the true and living God." *Id.*

She clarified that where a particular question is not explicitly addressed by

Scripture, her religious beliefs required her to "search the Bible for related truths,

'and to seek personal guidance from the Holy Spirit.'" JA8-9. She further

clarified that her objection to Inova's policy was not based on secular reasons, but

that, having received instruction in prayer, she would be "violating a sacred trust to

honor God with [her] body if [she] were to allow the COVID vaccine to be injected into [her] body." JA9. As discussed *supra*, these objections to Inova's policy are religious in nature and directly relate to the employer policy at issue.

The complaint pled that Mrs. Barnett informed Inova of the specific religious beliefs that conflicted with Inova's vaccination requirement. She alleged that she "submitted her religious exemption request on December 22, 2021," including a letter, explaining her religious objections to the policy. JA8; JA18-23. She likewise alleged that "on March 21, 2022, Mrs. Barnett submitted a further written statement further elaborating and expounding on these points." JA9-10; JA24-28. As part of the notice given to Inova, Mrs. Barnett provided a statement from her pastor regarding her need for religious accommodation. JA23; *accord Consol Energy*, 860 F.3d at 138.

Finally, the complaint pled that Mrs. Barnett was disciplined, and ultimately terminated, for her refusal to comply with Inova's vaccination requirement. She alleged that "her application for religious exemption was denied," and that she was "ultimately terminated on July 5, 2022." JA10.

The complaint satisfied all elements of a failure to accommodate claim. The district court's grant of dismissal on F.R.C.P. 12(b)(6) grounds was erroneous, and must be reversed.

**IV.** **THE DISTRICT COURT ERRED BY DISMISSING MRS. BARNETT'S DISPARATE TREATMENT CLAIMS.**

In dismissing Count II (Disparate Treatment - 42 U.S.C. § 2000e *et seq*.) and Count III (Religious Discrimination - VA Code § 2.2-3900, *et seq*.), the lower court erred by holding that Counts II and III[3] failed because they "rel[ied] on the same facts that are alleged with regard to Count I" and "as a matter of pleading, [they did not] address a comparator or comparators." JA61-62. Both of these holdings contradict the law in this Circuit, and should be reversed.

A. THE PLEADING STANDARD IS NOT ONEROUS.

Because the "burden of establishing a prima facie case of disparate treatment is not onerous," the pleading standard is low. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981). Though a plaintiff is "'required to allege facts to satisfy the elements of a cause of action…' in compliance with *Iqbal* [and *Twombly*]," she need not "plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (quoting *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582 (4th Cir. 2015). To comply with the *Iqbal*/*Twombly* pleading requirements in the employment discrimination context, a plaintiff merely needs to "allege facts that plausibly state a violation of Title VII

---

[3] Except where expressly noted below, the state and federal claims presented in Counts II and III are coextensive, so Appellant addresses them together herein.

'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

      B. <u>THE LAW DOES NOT PRECLUDE A PARTY FROM PLEADING REASONABLE ACCOMMODATION AND DISPARATE TREATMENT CLAIMS THAT RELY UPON SIMILAR FACTS.</u>

In the Fourth Circuit, "employees may utilize two theories in asserting religious discrimination claims, 'disparate treatment' and 'failure to accommodate[.]'" *Chalmers v. Tulon Co.,* 101 F.3d 1012, 1017 (4th Cir. 1996). To plead disparate treatment, "an employee must demonstrate that the employer treated her differently than other employees because of her religious beliefs." *Id*. Generally, nothing stops a plaintiff from "pleading multiple or alternative claims based on the same facts." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 696 (4th Cir. 2018) (referencing F.R.C. P. 8(d)(2) (a party may "set out two or more statements of a claim [] alternatively or hypothetically [in] separate [counts].")

Despite the clarity of the law on this point, the district court found dispositive - without citation to legal authority – that "[t]here are no new or additional facts alleged" between the reasonable accommodation claim (Count I) and the disparate treatment claims (Counts II and III), and "[t]hey are, therefore, duplicative." JA61. This is not a sufficient legal basis for dismissal. *See*, *e.g.*, *Woods v. Astrazeneca Pharms., L.P*., 659 F. Supp. 3d 512, 536 (M.D. Pa. 2023)

(noting no "authority which precludes [p]laintiff from proceeding under [two]

theories" with duplicative facts).

Inova had relied upon one unpublished case from Arizona to argue that the

facts of Mrs. Barnett's case "'fit[] more naturally under the failure to accommodate

rubric and it would be superfluous if the same facts supported liability under Title

VII for both failure to accommodate and disparate treatment.'" ECF 4, p. 22

(quoting *Enriquez v. Gemini Motor Transport LP*, No. CV-19-04759-PHX-GMS,

2021 WL 5908208, at *10 (D. Ariz. Dec. 14, 2021))[4].  On its face, however,

*Enriquez* was limited to its facts, the court noting that the plaintiff was "welcome

to establish disparate treatment on different facts [than] done so here." *Id*.  So, the

case merely stands for the proposition that failure to plead the facts necessary to

meet the elements of a disparate treatment claim is fatal. *Id*.

The holding of this lone Arizona case is unremarkable and does not bear

upon this case.  No court in Virginia, least of all this honorable Court, has adopted

a rule that disallows pleading both a reasonable accommodation and disparate

treatment claim, on the same or different facts.  The law laid out in *Chalmers* – that

this Circuit permits two types of "religious discrimination claims, 'disparate

---

[4] Ironically, this language was taken from a California District Court case, where
the court permitted the plaintiff to go forward on her disparate treatment claim,
even after noting the court's view of which claim made more sense to pursue.
*Dykzeul v. Charter Communs., Inc*., No. CV 18-05826 DSF (GJSx), 2019 U.S.
Dist. LEXIS 228981, at *27 (C.D. Cal. 2019).

treatment' and 'failure to accommodate'" – has been reiterated in every case to address the issue, published or unpublished, and no case has required the pleading of non-overlapping facts. *See Chalmers*, 101 F.3d at 1017; *see also*, *e.g.*, *Walker v. Novo Nordisk Pharm. Indus.*, No. 99-2015, 2000 U.S. App. LEXIS 17848, at *6 (4th Cir. 2000); *Abeles v. Metro. Wash. Airports Auth.*, 676 Fed. Appx. 170, 174 (4th Cir. 2017); and *Rayyan v. Va. DOT*, 719 Fed. Appx. 198, 205 (4th Cir. 2018).

The district court's error was compounded in dismissing Count III; the use of the same facts provides no basis to dismiss a *state* disparate treatment claim with a *federal* reasonable accommodation claim.  Federal law should only preempt "claims under state law that either interfere with or are contrary to federal law." *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328 (2023).  When there is no conflict between the state and federal law the "state law claims are not preempted," and should be permitted alongside the federal claims.  *Id*. at 342.  The district court never analyzed whether the Virginia statute conflicted with the reasonable accommodation claim.  *See* JA61-62.  Moreover, the existence of overlapping state and federal claims is typical in the exercise of supplemental jurisdiction, and is certainly not a bar to bringing a state claim in federal court.  28 U.S.C. § 1367.

Even assuming *Enriquez* applied here, Mrs. Barnett's case is still distinguishable, as she pled numerous facts distinct to her disparate treatment claims, and disparate treatment is primarily focused on the differential treatment

received "because of [one's] religious beliefs." *Chalmers*, 101 F.3d at 1017. In this regard, the complaint alleged that Inova: "decided to pick winners and losers from among the employees making exemption requests, based upon whether the Committee found an employee's religious beliefs were legitimate" (JA7, ¶ 16); "created specific questions for each employee to answer so that the Committee could scrutinize and determine, in its view, the validity of an employee's religious beliefs" (JA8, ¶ 20); "chose to exempt employees who came from more prominent religions or held to more conventional beliefs related to religious exemptions to vaccines, but denied exemptions to employees like Mrs. Barnett who held less well-known or respected religious beliefs" (JA13-14, ¶ 53); "found certain religious beliefs as sufficiently acceptable to qualify for a Covid-19 Policy exemption, while rejecting others" (JA16, ¶ 62); and "determine[d] based upon the religion, and religious beliefs flowing from that religion, [which] of the employees [would be] denied an exemption" (JA16, ¶ 63).

These allegations have little to no relevance to a reasonable accommodation inquiry and were included in the complaint solely to support the disparate treatment claims. *See Consol Energy,* 860 F.3d at 141. The district court therefore erred in finding that there were "no new or additional facts alleged" for the disparate treatment claims. JA61. To the contrary, the allegations of the complaint sufficiently pled the elements of the disparate treatment claims.

## C. A PARTY NEED NOT PLEAD A COMPARATOR.

To conclude his ruling on Mrs. Barnett's latter two counts, the lower court erroneously ruled they "failed [] to address a comparator or comparators that can survive *Twombly* and *Iqbal*." JA61-62. Pleading a comparator is not required in this Circuit, and that ruling was therefore erroneous.

While potentially "helpful," "[pleading] a [] comparator…is not a necessary element of [an employment discrimination] claim." *Bryant v. Aiken Reg'l Med. Ctrs., Inc*., 333 F.3d 536, 546 (4th Cir. 2003). It is actually error to hold a plaintiff to a "heightened pleading standard by requiring him to plead a proper comparator." *Tutt v. Wormuth*, No. 19-2480, 2021 U.S. App. LEXIS 26986, at *3 (4th Cir. Sep. 8, 2021) (affirmed on other grounds).

Specifically, this Circuit has recognized that a plaintiff need not plead an "appropriate comparator" unless she "lacks direct evidence of discrimination." *Tinsley v. City of Charlotte*, 854 F. App'x 495, 510 (4th Cir. 2021) (J. Gregory, dissenting). The use of a comparator originated with the advent of the *McDonnell-Douglas* burden-shifting framework, which only applies when direct evidence is lacking. *Laing v. Fed. Express Corp*., 703 F.3d 713, 719-720 (4th Cir. 2013) (comparator generally used to rebut an employer's proffered "nondiscriminatory reason for discharging the plaintiff"). And, as the *Bryant* court emphasized, this Court "would never hold, for example, that an employer who categorically refused to hire black applicants would be

insulated from judicial review because no white applicant had happened to apply for a position during the time frame in question." 333 F.3d at 545-546.

Here, Mrs. Barnett has not alleged, nor does she seek to prove her case by relation to a comparator. *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (lack of proper comparator can be fatal if plaintiff "based their allegations completely upon a comparison to an employee from a non-protected class"). Instead, she has pled direct evidence that Inova, in determining vaccine exemptions, knowingly discredited and rejected her religious beliefs, while finding other "more conventional beliefs" acceptable. JA13-14. As pled, this case presents a unique fact situation of an employer organizing a committee to "scrutinize" (JA8) and determine whether an employee's "religious beliefs were legitimate" or not. JA7.

This act of "segregating," "classifying" and then ultimately denying a religious exemption to Mrs. Barnett based upon her religious beliefs patently violates Title VII's dictates and suffices for well-pled disparate treatment claims. 42 USCS § 2000e-2(a)(1) and (2). As such, it was error for the lower court to have dismissed these Counts.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court REVERSE the Order granting dismissal, and REMAND the case to the district Court for further proceedings as appropriate.

## REQUEST FOR ORAL ARGUMENT

Appellant believes an oral argument would be helpful to further elucidate the novel claims raised by this appeal, and therefore requests a hearing on this matter.

Respectfully submitted, June 12, 2024:

/s/ Timothy P. Bosson
Timothy P. Bosson (VSB: 72746)
Isaiah R. Kalinowski (VSB: 71125)
**Bosson Legal Group, PC**
8300 Arlington Blvd., Suite B2
Fairfax, VA 22031
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com
Ph: (571) 775-2529
*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

I, Timothy P. Bosson, as counsel of record in this matter, certify that this Brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

This document contains <u>7,016 words.</u>

This document complies with the typeface requirements because it has been prepared in a proportional spaced typeface using Microsoft Word in <u>14-point Times New Roman</u>.

<u>/s/ Timothy P. Bosson    </u>
Timothy P. Bosson, Esq.