# NO. 24-1271

In The

# United States Court Of Appeals
## For The Fourth Circuit

### KRISTEN M. BARNETT,

*Plaintiff – Appellant,*

v.

### INOVA HEALTH CARE SERVICES,

*Defendant – Appellee,*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

―――――――

## JOINT APPENDIX
―――――――

**Timothy P. Bosson**
**Isaiah R. Kalinowski**
**BOSSON LEGAL GROUP PC**
**8300 Arlington Boulevard,
Suite B2**
**Fairfax, VA 22031**
**(571) 775-2529**
**tbosson@bossonlaw.com**
**ikalinowski@bossonlaw.com**

**Nancy N. Delogu**
**LITTLER MENDELSON P.C.**
**815 Connecticut Avenue, NW
Suite 400**
**Washington, DC 20006**
**(202) 842-3400**
**nndelogu@littler.com**

**Alexander P. Berg**
**Lauren Marie Bridenbaugh**
**LITTLER MENDELSON P.C.**
**1800 Tysons Boulevard
Suite 500**
**Tysons Corner, VA 22102**
**(703) 286-3138**
**aberg@littler.com**
**lbridenbaugh@littler.com**

*Counsel for Appellant*     *Counsel for Appellee*     *Counsel for Appellee*

# TABLE OF CONTENTS

Page

District Court Docket Sheet [1:23-cv-01638-MSN-WEF] ...........................JA1

Complaint,
With Exhibits
    filed December 1, 2023 ..........................................................................JA4

    Exhibits:

      1.    Barnett Vaccination Exemption Request Form
            dated December 19, 2021.....................................................JA18

      2.    Letter to INOVA Team Member Health
            dated March 21, 2022..........................................................JA24

Exhibits to
Memorandum in Support of
Motion to Dismiss for Failure to State a Claim
    filed January 12, 2024 [DE4]:

      1.    HIS Immunization Program Policy
            last revised July 8, 2021 ....................................................JA29

      2.    Vaccination Exemption Request Form
            dated July 15, 2021.............................................................JA35

      3.    Email from Barnett to Exemption Requests
            dated December 22, 2021.....................................................JA38

      4.  Email from Barnett to Exemption Request
            dated March 21, 2022..........................................................JA46

**Transcript of Motion Hearing**
**Before the Honorable Michael S. Nachmanoff**
　　　　on March 7, 2024......................................................................JA53

**Memorandum Opinion**
　　　　filed September 14, 2023..........................................................JA64

**Order**
**Granting Motion to Dismiss**
　　　　filed March 26, 2024................................................................JA86

**Notice of Appeal**
　　　　filed March 27, 2024................................................................JA87

APPEAL,CLOSED,JURY

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
## CIVIL DOCKET FOR CASE #: 1:23-cv-01638-MSN-WEF

| | |
|---|---|
| Barnett v. INOVA Health Care Services | Date Filed: 12/01/2023 |
| Assigned to: District Judge Michael S Nachmanoff | Date Terminated: 03/26/2024 |
| Referred to: Magistrate Judge William E. Fitzpatrick | Jury Demand: Plaintiff |
| Case in other court: Fourth Circuit, 24-01271 | Nature of Suit: 442 Civil Rights: Jobs |
| Cause: 42:2000e Job Discrimination (Employment) | Jurisdiction: Federal Question |

## Plaintiff

**Kristen M Barnett**                represented by   **Timothy Paul Bosson**
Bosson Legal Group PC
823 South King Street
Suite Unit C
Leesburg, VA 20175
571-438-9513
Fax: 202-380-0486
Email: tbosson@bossonlaw.com
*ATTORNEY TO BE NOTICED*

**Isaiah Kalinowski**
Bosson Legal Group
8300 Arlington Boulevard
Suite B2
Fairfax, VA 22031
571-771-3225
Fax: 571-775-2521
Email: ikalinowski@bossonlaw.com
*ATTORNEY TO BE NOTICED*

## Defendant

**INOVA Health Care Services**          represented by   **Alexander Paul Berg**
Littler Mendelson
Virginia
1800 Tysons Blvd.
Suite 500
Tysons Corner, VA 22102
703-286-3138
Email: aberg@littler.com
*ATTORNEY TO BE NOTICED*

**Lauren Marie Bridenbaugh**
Littler Mendelson
1800 Tysons Blvd.
Ste 500
Tysons Corner, VA 22102
703-286-3142
Fax: 703-991-5601

## JA1

Email: lbridenbaugh@littler.com
*ATTORNEY TO BE NOTICED*

**Nancy North Delogu**
Littler Mendelson PC (DC)
815 Connecticut Ave NW
Suite 400
Washington, DC 20006
(202) 842-3400
Email: nndelogu@littler.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/01/2023 | 1 | Complaint ( Filing fee $ 405, receipt number BVAEDC-9244345.), filed by Kristen M Barnett. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Exhibit 1 to Complaint, # 3 Exhibit Exhibit 2 to Complaint)(Kalinowski, Isaiah) (Entered: 12/01/2023) |
| 12/01/2023 | | Initial Case Assignment to District Judge Claude M. Hilton and Magistrate Judge William E. Fitzpatrick. (Sbro) (Entered: 12/05/2023) |
| 12/05/2023 | | No service issued at this time (Sbro) (Entered: 12/05/2023) |
| 12/15/2023 | 2 | NOTICE of Appearance by Timothy Paul Bosson on behalf of Kristen M Barnett (Bosson, Timothy) (Entered: 12/15/2023) |
| 01/12/2024 | 3 | MOTION to Dismiss for Failure to State a Claim by INOVA Health Care Services. (Attachments: # 1 Proposed Order)(Delogu, Nancy) (Entered: 01/12/2024) |
| 01/12/2024 | 4 | Memorandum in Support re 3 MOTION to Dismiss for Failure to State a Claim filed by INOVA Health Care Services. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Delogu, Nancy) (Entered: 01/12/2024) |
| 01/12/2024 | 5 | Notice of Hearing Date set for February 9, 2024 re 3 MOTION to Dismiss for Failure to State a Claim (Delogu, Nancy) (Entered: 01/12/2024) |
| 01/12/2024 | 6 | Corporate Disclosure Statement by INOVA Health Care Services. (Delogu, Nancy) (Entered: 01/12/2024) |
| 01/12/2024 | 7 | NOTICE of Appearance by Alexander Paul Berg on behalf of INOVA Health Care Services (Berg, Alexander) (Entered: 01/12/2024) |
| 01/12/2024 | 8 | NOTICE of Appearance by Lauren Marie Bridenbaugh on behalf of INOVA Health Care Services (Bridenbaugh, Lauren) (Entered: 01/12/2024) |
| 01/15/2024 | | Set Deadlines as to 3 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 2/9/2024 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (jlan) (Entered: 01/15/2024) |
| 01/22/2024 | | Case Reassigned to District Judge Michael S Nachmanoff. District Judge Claude M. Hilton no longer assigned to the case. (wgar, ) (Entered: 01/22/2024) |
| 01/26/2024 | 9 | Memorandum in Opposition re 3 MOTION to Dismiss for Failure to State a Claim filed by Kristen M Barnett. (Attachments: # 1 Exhibit 1 - Right to Sue Letter, # 2 Exhibit 2 - EEOC Correspondence, # 3 Exhibit 3 - EEOC Dual Filing Notice)(Bosson, Timothy) (Entered: 01/26/2024) |

JA2

| 01/31/2024 | | Reset Deadlines as to 3 MOTION to Dismiss for Failure to State a Claim : Motion Hearing reset for 3/7/2024 at 11:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. (lcre, ) (Entered: 01/31/2024) |
|---|---|---|
| 02/01/2024 | 10 | REPLY to Response to Motion re 3 MOTION to Dismiss for Failure to State a Claim filed by INOVA Health Care Services. (Delogu, Nancy) (Entered: 02/01/2024) |
| 03/07/2024 | 11 | Minute Entry for proceedings held before District Judge Michael S Nachmanoff:Motion Hearing held on 3/7/2024. MOTION to Dismiss for Failure to State a Claim re 3 argued and GRANTED. Counts 2 and 3 of the complaints re Stynchula, Birke, and Netko-DISMISSED. Motion to Dismiss re Barnett, Hoffman, and Biondi Austin -GRANTED AND DISMISSED IN ENTIRETY. Plaintiff's request to replead-GRANTED as to parties Biondi Austin and Hoffman (14 days). Order to follow. (Court Reporter D. Salters.)(lcre, ) (Entered: 03/07/2024) |
| 03/15/2024 | 12 | TRANSCRIPT of motion proceedings held on 3-7-24, before Judge Michael Nachmanoff, Court Reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/15/2024. Redacted Transcript Deadline set for 5/15/2024. Release of Transcript Restriction set for 6/13/2024.(Salters, Diane) (Main Document 12 replaced on 3/18/2024) (jlan, ). (Entered: 03/15/2024)** |
| 03/26/2024 | 13 | It is hereby ORDERED that the motion (ECF 3) is GRANTED; and it is further ORDERED that the complaint is DISMISSED. Signed by District Judge Michael S Nachmanoff on 3/11/2024. (Sbro, ) (Entered: 03/26/2024) |
| 03/27/2024 | 14 | NOTICE OF APPEAL as to 13 Order on Motion to Dismiss for Failure to State a Claim by Kristen M Barnett. Filing fee $ 605, receipt number AVAEDC-9438383. (Kalinowski, Isaiah) (Entered: 03/27/2024) |
| 03/29/2024 | 15 | Transmission of Notice of Appeal to US Court of Appeals re 14 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Sbro, ) (Entered: 03/29/2024) |
| 04/01/2024 | 16 | USCA Case Number 24-1271 Fourth Circuit, Case Manager Beverley A. Washington for 14 Notice of Appeal filed by Kristen M Barnett. (Sbro, ) (Entered: 04/01/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/27/2024 17:20:12 | | |
| **PACER Login:** | ikalinowski | **Client Code:** | KristenBarnett |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-01638-MSN-WEF |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

JA3

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **KRISTEN BARNETT** | ) | |
| 24577 Rosebay Terrace | ) | |
| Aldie, VA 20105 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| **INOVA HEALTH CARE SERVICES,** | ) | |
| **Serve**: C T Corporation System, R/A | ) | |
| 4701 Cox Rd Ste 285 | ) | |
| Glen Allen, VA 23060 | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |

### COMPLAINT

**COMES NOW** the Plaintiff Kristen Barnett ("Mrs. Barnett"), by Counsel, and moves this

Court for judgment against Defendant Inova Health Care Services T/A Inova Health System

("Defendant" and "Inova"), in the manner and for the reasons set forth below:

PARTIES

1.       Mrs. Barnett is and has been at all times during the actions raised in this Complaint

a resident of Aldie, Virginia, located in Loudoun County, and is over the age of eighteen (18).

2.       Defendant Inova is a nonstock corporation organized under the laws of the

Commonwealth of Virginia with a principal place of business at 8110 Gatehouse Rd Ste 200,

Falls Church, VA 22042-1252.  The Virginia registered agent for Inova is C T Corporation

System, 4701 Cox Rd Ste 285, Glen Allen, VA 23060-6808.

EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

**JA4**

3.      Plaintiff timely filed a discrimination claim(s) with the Virginia Office of Civil Rights ("OCR") on or about June 9, 2022.  On November 15, 2023, the OCR issued a notice of a right to file a civil action ("Notice of Right to Sue") in accordance with Va. Code § 2.2-3907.

4.      On or about the same date of its filing with Virginia, the claim was automatically cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC").  On November 21, 2023, the U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue for the cross-filed charge.

5.      Plaintiff is an aggrieved person who has been provided her Notice of Right to Sue by both the OCR and the EEOC, and this court has jurisdiction over the party which unlawfully discriminated against Plaintiff.  See, Va. Code § 2.2-3908; 42 USCS § 2000e, *et. seq*.

STATEMENT OF JURISDICTIONAL GROUNDS

6.      The Court has original subject matter jurisdiction over Plaintiff's lawsuit pursuant to 28 U.S.C. § 1331, as this action raises federal questions under 42 USCS § 2000e, *et. seq*.

7.      The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, as they arise from the same transactions or occurrences as the claims over which this Court has original jurisdiction.

VENUE

8.      Venue is proper in the United States District Court for the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1391(b) because Defendant's primary office is located in, and the events giving rise to the claims herein occurred in, Fairfax County, Virginia, which is within the Alexandria Division for the United States District Court for the Eastern District of Virginia.

JA5

<u>STATEMENT OF FACTS</u>

9.      Mrs. Barnett is registered nurse who was first hired by Inova on January 8, 2018, and worked her way up to the title of Pediatric Intensive Care Unit Supervisor, until Defendant terminated her employment on July 5, 2022.

10.      During her employment, Mrs. Barnett was a superlative employee.   She was recommended by her peers for her promotion in February 2020 to unit supervisor, where she was instrumental in developing a rounding tool to combat Central Line infections (still used today), and served on the System Central Line Associated Blood Stream Infection Committee.   Prior to that promotion, she was a bedside RN, and was active in that role; she started a committee for recognition, retention and recruitment of staff.

11.      Plaintiff was so trustworthy that Defendant included her in the system-wide "Covid Committee" (assembled to respond to the outbreak of Covid-19 in early 2020), in which capacity she served for 27 months as the liaison between the Children's Hospital and Defendant's central system headquarters to plan a coordinated response to the pandemic.

**I.      Inova Covid-19 Vaccine Policy History**

12.      In July 2021, Inova instituted its first Covid-19 vaccine policy, requiring all of its employees – even those who were remote and did not hold patient-facing roles – to be vaccinated against Covid-19 with either the Pfizer or Moderna two dose or the single dose Johnson & Johnson vaccines ("Covid-19 Policy").[1]

13.      However, Inova provided an exemption for any employee who asserted a valid medical or religious reason to avoid compliance with the otherwise mandatory Covid-19 Policy.

---

[1] Inova termed this policy its Immunization Program Policy.

With this first iteration of the policy, Inova basically granted exemptions, within a few days, to anyone who requested it.

14.     Despite this paradigm working fine, Inova ultimately decided to establish a new Exemption Review Committee ("Committee") and to reassess its handling of Covid-19 vaccines and exemptions.

15.     In the last two months of 2021 and the first two months of 2022, Inova notified all employees that it would be withdrawing all Covid-19 vaccination exemptions and requiring all employees to re-apply to the Committee for an exemption.

16.     This time the Committee decided to pick winners and losers from among the employees making exemption requests, based upon whether the Committee found an employee's religious beliefs were legitimate.

**II.     Mrs. Barnett's Religious Exemption Requests**

17.     Mrs. Barnett is a devout Christian and member of a conservative protestant non-denominational Bible Church in Loudoun County.

18.     When Inova instituted its first Covid-19 Policy in July of 2021, Mrs. Barnett originally submitted an exemption request on the basis of a medical concern related to lactation and nursing, though she also objected to the vaccination(s) on religious grounds.  That exemption was granted by Inova.

19.     In December 2021 Inova notified Mrs. Barnett that that it had revised its Covid-19 Policy and was requiring all employees to reapply for an exemption.  With her exemption cancelled, Mrs. Barnett applied for a religious exemption.

**JA7**

20.     This time, Inova's Committee had created specific questions for each employee to answer so that the Committee could scrutinize and determine, in its view, the validity of an employee's religious beliefs.

21.     The questions were as follows:

1. Describe the nature of your objection to the vaccination requirement.
2. How would complying with the vaccination requirement substantially burden your religious exercise?
3. How long have you held the religious belief underlying your objection?
4. Describe whether, as an adult, you have received any vaccines against any other diseases (such as influenza, Measles, Mumps and Rubella (MMR), and Tdap (pertussis)).
5. If you do not have religious objection to the use of all vaccines, explain why your objection is limited to the COVID-19 vaccine.
6. Describe if there are any other medicines or products that you do not use because of the religious belief underlying your objection.

22.     Though several of the questions are patently inappropriate or, at least, legally irrelevant, Mrs. Barnett complied with the request and submitted her religious exemption request on December 22, 2021.  *Exhibit 1.*

23.     Mrs. Barnett acknowledged that some scientific evidence available at that time indicated that the vaccinations were safe, but explained that she had been led by the word of God through her reading of holy scripture and prayer to abstain from the vaccination.  She explained further that it would be sinful for her to consume or engage with a product such as the vaccination after having been instructed by God to abstain from it.

24.     Mrs. Barnett was careful to note that she did not oppose all vaccinations, and that her family were generally vaccine-compliant, but that her religious objection was to this specific vaccine, due to the direct prohibition she had received in thoughtful prayer.

25.     In a separate letter, Mrs. Barnett further explained her religious reasons for declining the covid vaccinations, adding that they were based on her "study and understanding of the Bible and personally directed by the true and living God."  She restated historical Christian doctrine, that, "Where Scripture does not expressly instruct on a particular matter," she was

5

**JA8**

required to search the Bible for related truths, "and to seek personal guidance from the Holy Spirit."
Having done so, she was bound to follow the conviction of the Holy Spirit placed upon her
conscience.  For these points, she cited four passages from the New Testament Epistles, which are
authoritative for Christian doctrine.

26.     Mrs. Barnett supplemented this explanation with reference to the doctrine of
treating the physical body with deference to God's will as the entrusted temple of the Holy Spirit.
Without making any prudential or scientific arguments against the vaccination, but merely
accepting the received directive given to her in prayer, she explained that, "It would be dishonoring
to God for me to put something into my body for which I had a conscientious objection," and that
"on religious grounds I believe I would be violating a sacred trust to honor God with my body if I
were to allow the COVID vaccine to be injected into my body."

27.     Mrs. Barnett concluded her initial application for religious exemption by stating:

> I am required by the tenets of my faith to present my body as a holy and acceptable
> instrument of worship to God.  Allowing substances to be introduced into my body
> that I believe God has directed me not to receive and believe to be displeasing to
> God would be a violation of my sincerely held religious beliefs.

***Exhibit 1*** at 6.

(paragraphs 23-27, collectively "Religious Beliefs").

28.     Nevertheless, in March 2022, the Committee summarily denied Mrs. Barnett's
religious exemption, noting vaguely: "Your request did not meet the criteria for exemption, did
not demonstrate a religious belief that conflicts with the vaccination requirement, or could not be
accommodated in your role without posing an undue hardship to Inova's operations."

29.     But the Committee offered Mrs. Barnett the right to "submit additional information
for consideration," so on March 21, 2022, Mrs. Barnett submitted a further written statement,

**JA9**

further elaborating and expounding on these points. *Exhibit 2*. Her efforts were unavailing, and her application for religious exemption was denied.

30.    Then, in May and June 2022, Inova followed a bizarre pattern of threatening administrative leave and termination, placing Mrs. Barnett on administrative leave, then demanding that she return to work, only to place her on administrative leave again. This erratic behavior occurred throughout May and June, until Inova finally terminated her in early July.

31.    Inova initially refused to pay her for the time she worked when they demanded her return, but later relented. This pattern of erratic behavior seemed punitive and retaliatory—that Inova was maliciously toying with her to punish her for her noncompliance.

32.    Mrs. Barnett was ultimately terminated on July 5, 2022.

33.    Because she worked in such a specialized position, as a PICU unit supervisor at a level 1 trauma center, Mrs. Barnett has struggled terribly to find comparable employment in this region; she would have had to move her family to another geographic area, with a different hospital system, to continue her career. She looked for other positions she might be qualified for, but could find no other position with commensurate pay, and she could not afford childcare expenses were she to accept a lower paid position. As a consequence, she has remained home with her young children, and remains unemployed at this time. Accordingly, Mrs. Barnett has lost significant wages, will lose future wages, and has lost the significant benefits provided by her job at Inova (collectively, "Lost Wages").

34.    Furthermore, being fired for cause due to her Religious Beliefs was enormously stressful and embarrassing for Mrs. Barnett and has caused her inconvenience, significant emotional anguish and distress and damaged her reputation in her field ("Emotional Damages").

35.     Upon information and belief, Inova never considered any accommodation that might be appropriate to allow Mrs. Barnett to maintain her employment with Inova.

**COUNT I**
**FAILURE TO ACCOMODATE**
**42 U.S.C. § 2000e, *et seq.***

36.     Count I hereby incorporates the preceding and forthcoming paragraphs by reference.

37.     Inova is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

38.     Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion. . . ." or "to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a).

39.     "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's [] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

40.     Mrs. Barnett is a member of an independent Bible Church and has sincere Religious Beliefs that prohibit her from complying with Inova's Covid-19 Policy.

41.     Mrs. Barnett requested an accommodation for her Religious Beliefs, and despite being initially granted an exemption from the Covid-19 Policy in 2021, was denied such an accommodation in 2022.

**JA11**

42.     Mrs. Barnett was a superlative leader within Inova's system, and her job performance was exemplary at all times she was employed with Inova.

43.     Her Religious Beliefs, however, conflicted with Inova's Covid-19 Policy.

44.     Inova denied Mrs. Barnett's request for a reasonable religious accommodation without considering her particular circumstances or the needs of the organization, and without determining whether she could be accommodated without causing an undue hardship to Inova.

45.     Ultimately, Inova denied Mrs. Barnett's request for reasonable accommodation that would have allowed her to continue to perform her job, and disciplined her by suspending and then terminating her employment, simply because she would not agree to violate her sincerely-held Religious Beliefs.

46.     Inova did not fulfill its affirmative duty to reasonably accommodate Mrs. Barnett's sincere religious beliefs and practices, absent undue hardship, in contravention of 42 U.S.C. § 2000e(j).

47.     Mrs. Barnett was terminated from her employment and discriminated against by Inova with respect to her compensation, terms, conditions, or privileges of employment because of her sincerely held Religious Beliefs, in contravention of 42 U.S.C. § 2000e-2(a) and 2000e(j).

48.     Inova's actions were made willingly, intentionally, and with malice or reckless indifference to Mrs. Barnett's federally protected rights.

49.     As a direct and proximate result of Defendant's unlawful actions in this regard, Plaintiff was deprived of her right to an Accommodation; was suspended and then terminated; and has sustained and will continue to sustain lost wages and benefits and/or diminished earnings capacity, among other things.

9

**JA12**

**WHEREFORE**, Plaintiff Kristen Barnett, by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on **Count I**, and against Defendant as follows:

a) Lost Wages;

b) Compensatory damages, including Emotional Damages, and/or nominal damages;

c) Punitive Damages;

d) Equitable relief to address Defendant's actions, including an injunction of the Covid-19 Policy and similar vaccine policies; an order requiring Defendant to institute and follow reasonable accommodation policies; and reinstatement of employment;

e) Reasonable costs and expenses of this action, including court costs, expert fees and reasonable attorneys' fees as provided by 42 U.S.C. § 2000e-5(k) or 42 U.S.C. § 2000e-5(g), and/or all other applicable federal laws;

f) Pre- and post-judgment interest on the foregoing amounts; and

g) Any and all other relief that this Court deems just and proper.

**COUNT II**
**DISPARATE TREATMENT**
**42 U.S.C. § 2000e** *et seq.*

50.     Count II hereby incorporates the preceding and forthcoming paragraphs by reference.

51.     Mrs. Barnett performed her job for Inova in a more than satisfactory manner.

52.     While Inova granted accommodations to certain religious beliefs, it refused to accommodate the unique Religious Beliefs of Plaintiff, thereby treating her differently than other employees because of her beliefs.

53.     Upon information and belief, Inova's Committee chose to exempt employees who came from more prominent religions or held to more conventional beliefs related to religious

**JA13**

exemptions to vaccines, but denied exemptions to employees like Mrs. Barnett who held less well-known or respected religious beliefs.

54.    Ultimately, Inova, through its Committee, denied Mrs. Barnett an exemption to the Covid-19 Policy that would have allowed her to continue to perform her job and disciplined her by suspending and then terminating her employment simply because she would not agree to violate her Religious Beliefs.

55.    Accordingly, Mrs. Barnett was terminated from her employment and discriminated against by Inova with respect to her compensation, terms, conditions, or privileges of employment because of her sincerely-held Religious Beliefs, in contravention of 42 U.S.C. § 2000e-2(a) and 2000e(j).

56.    Inova's actions were made willingly, intentionally, and with malice or reckless indifference to Mrs. Barnett's federally protected rights.

57.    As a direct and proximate result of Defendant's unlawful actions in this regard, Plaintiff was deprived of her right to an Accommodation; was terminated; and has sustained and will continue to sustain lost wages and/or diminished earnings capacity, among other things.

**WHEREFORE**, Plaintiff Kristen Barnett, by Counsel, respectfully requests judgment in her favor on **Count II**, and an award against Defendant of the following:

a)  Lost Wages;

b)  Compensatory damages, including Emotional Damages, and/or nominal damages;

c)  Punitive Damages;

d)  Equitable relief to address Defendant's actions, including an injunction of the Covid-19 Policy and similar vaccine policies; an order requiring Defendant to institute and follow reasonable accommodation policies; and reinstatement of employment;

**JA14**

e)  Reasonable costs and expenses of this action, including court costs, expert fees and reasonable attorneys' fees as provided by 42 U.S.C. § 2000e-5(k) or 42 U.S.C. § 2000e-5(g), and/or all other applicable federal laws;

f)  Pre- and post-judgment interest on the foregoing amounts; and

g)  Any and all other relief that this Court deems just and proper.

**COUNT III**
**RELIGIOUS DISCRIMINATION**
**VA CODE § 2.2-3900 *et seq.***

58.     Count III hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference.

59.     The Virginia Human Rights Act prohibits employer discrimination on the basis of religious belief and practice.  Virginia Code §§ 2.2-3900(B)(2), 2.2-3905.[2]

60.     Specifically, an employer may not "discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's … religion …; or "segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect an individual's status as an employee, because of such individual's … religion."  Va. Code § 2.2-3905(B)(1)(a) and (b).

61.     Further, "[i]t is an unlawful discriminatory practice for: an employer to use … religion … as a motivating factor for any employment practice, even though other factors also motivate the practice."  *Id*. at B(6).

---

[2] Notably, the statute protects against **both** discriminating on the basis of sincerely held religious beliefs, and *also* "includes [protection for] any outward expression of religious faith."  Virginia Code § 2.2-3901(E).  The law clearly does not solely cover "outward expression of religious faith."

12

**JA15**

62.     Here, Inova, by its own admissions, found certain religious beliefs as sufficiently acceptable to qualify for a Covid-19 Policy exemption, while rejecting others.

63.     This determination was at least in part – if not in full – based upon the religion, and religious beliefs flowing from that religion, of the employees that were denied an exemption.

64.     Because of Inova's discrimination against Mrs. Barnett's sincerely held Religious Beliefs, she was segregated and classified as unqualified for an exemption, suspended from her job, and ultimately discharged from her employment.

65.     As a result of Defendant's discriminatory actions against her, Mrs. Barnett has suffered pecuniary losses and setbacks to her career, damage to her professional reputation, a loss in pay and benefits, emotional pain and suffering, inconvenience, injury, and damages, most notably lost earnings.

66.     Furthermore, Defendant's actions evince a willful and wanton disregard for the rights of others and punitive damages should therefore be awarded against Inova.

**WHEREFORE**, **on Count III**, pursuant to Virginia Code Ann. § 2.2-3908, the Plaintiff Kristen Barnett seeks a judgment against Defendant for the following:

a.  Lost Wages;

b.  Compensatory, including Emotional Damages, and/or nominal damages;

c.  Equitable relief to address Defendant's actions, including an injunction of the Covid-19 Policy and similar vaccine policies; an order requiring Defendant to institute and follow reasonable accommodation policies; and reinstatement of employment;

d.  Punitive damages;

e.  Reasonable attorney fees and costs, including expert fees, under VA Code § 2.2-3908;

f.  Court costs in bringing this action;

g.   Pre- and post-judgment interest at the judgment rate;

h.   Such other and further relief as this honorable Court deems proper.

<u>JURY DEMAND</u>

Plaintiff requests a trial by jury on all claims for which a jury is permitted.

Respectfully submitted,

KRISTEN BARNETT

By Counsel:   __/s/  Isaiah Kalinowski__
Timothy P. Bosson, Esq. (VSB: 72746)
Isaiah R. Kalinowski, Esq. (VSB: 71125)
Robert G. Rose, Esq. (VSB: 81240)
Arie M. Jones, Esq. (VSB: 98248)
Bosson Legal Group, PC
8300 Arlington Blvd., Suite B2
Fairfax, VA 22031
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com
rrose@bossonlaw.com
ajones@bossonlaw.com
Ph: (571) 775-2529
*Counsel for Plaintiff*

**JA17**

# Vaccination Exemption Request Form

I, __Kristen Barnett (Hadel)__, am requesting exemption for the following vaccination(s):

☑ *Influenza\**　☐ MMR (measles-mumps-rubella)　☐ Varicella (chicken pox)　☐ Tdap (pertussis)

☑ COVID-19\*　☐ Meningococcal　　　　　　☐ Hepatitis B

\*If I am approved for an exemption from the influenza or COVID-19 vaccination, I will be required to wear a surgical mask when I am at any Inova facility. If I am approved for an exemption from the COVID-19 vaccination, I may also be required to engage in physical distancing protocols and abide by such other requirements that Inova may now or in the future require.

I understand that by not receiving the influenza or COVID-19 vaccination, I may have an increased risk of contracting either virus or its related complications. Accordingly, if I contract either virus, I understand that there could be life-threatening consequences to my own health and the health of those with whom I have contact, including any patients, team members, or my family and community.

**Medical Exemption Request**

<u>I request a medical exemption for the following reason:</u>
☐ Documented allergy to the following component of the vaccine _____
☐ History of the following medical condition contraindicates vaccination _____
☐ Documented anaphylactic allergic reaction to the vaccine
☐ Documentation of the following severe adverse effect to the vaccine _____
☐ Current pregnancy or breast feeding.
A letter from your private physician or medical professional on his/her *professional letterhead* documenting your exact medical contraindication(s) is attached.　☐ Yes

*Religious Exemption Request*

<u>I request a religious exemption:</u>
☑ Reason for religious exemption __Sincerely held religious belief__
A letter from your clergy/religious leader on his/her *professional letterhead* affirming consistency with prior vaccination history is attached.　☑ Yes

I am a: ☐ Physician　☑ Inova-employed Team Member　☐ Student　☐ Contractor　☐ Vendor　☐ Volunteer

Signature: __Kristen Barnett__　Date: __12|19|21__
Printed Name: __Kristen Barnett__　Employee/Provider ID: __12068__
Email Address: __Kristen.Hadel@Inova.org__　Phone Number: __571-641-9440__
Manager's Name / Department (for employed Team Members): __Dan Green / PICU__
School/Company/Affiliation (for non-employees): _____

**Submit completed Vaccination Exemption Request Form and required documentation to (703) 698-2429 or scan and email all documentation to <u>exemptionrequests@inova.org</u>**

*July 2, 2021*

**JA18**

Complaint Exhibit 1
Page 1

# COVID-19 Vaccination <u>Religious</u> Exemption Request Form

Name: _Kristen Barnett (Hadel)_    Date of birth: _07, 11, 84_

Team Member /Provider ID: _12068_

Email Address: _Kristen.Hadel @ inova.org_    Phone Number: _571-641-9440_

I am a: ☐ Physician   ☐ New Hire   ☒ Inova Team Member   ☐ Student   ☐ Contractor   ☐ Vendor   ☐ Volunteer

In certain circumstances an Inova Team Member may request an exemption from Inova's vaccination requirements due to religious reasons. To be eligible for such an exemption, your request must be based on a sincerely held religious belief and will require you to provide supporting documentation that will be reviewed and either approved or declined by committee within a 14 day period.

I understand that by not receiving the COVID-19 vaccination, I may have an increased risk of contracting either virus or its related complications. Accordingly, if I contract either virus, I understand that there could be life-threatening consequences to my own health and the health of those with whom I have contact, including any patients, team members, or my family and community.

**Instructions:** You must answer <u>all</u> the following questions on separate attachment and submit with your form for consideration. Inova may ask for other information as needed to determine whether an exemption will be granted.

**Questions:**

1. Describe the nature of your objection to the vaccination requirement.

2. How would complying with the vaccination requirement substantially burden your religious exercise?

3. How long have you held the religious belief underlying your objection?

4. Please describe whether, as an adult, you have received any vaccines against any other diseases (such as flu, MMR (measles, mumps, rubella) and Tdap (pertussis).

5. If you do not have a religious objection to the use of all vaccines, please explain why your objection is limited to particular vaccines?

6. If there are any other medicines or products that you do not use because of the religious belief underlying your objection, please identify them.

_Nov 17, 2021_

Complaint Exhibit 1
Page 2

Please provide any additional information (including, if applicable, a letter from your clergy/religious leader on his/her professional letterhead affirming religious belief in vaccine exemption) that you think may be helpful in reviewing your request.

I attest that the above information is complete and accurate to the best of my knowledge. I understand that any deliberate misrepresentation contained in this request could result in disciplinary action, including suspension or termination from duties at the Inova Health System. I also understand that my request for an exemption may not be granted if it creates undue hardship for the Inova Health System.

Signature: _Kristen M Barnett_     Date: _12|19|21_

Printed Name: _Kristen Barnett (Hadel)_

Manager's Name / Department (for Team Members): _Gail Green / PICU_

School/Company/Affiliation (for non-Team Members): _____

Scan and email completed Vaccination Exemption Request Form and required documentation to exemptionrequests@inova.org for review.

*Nov 17, 2021*

Complaint Exhibit 1
Page 3

**Questions:**

1. Describe the nature of your objection to the vaccination requirement.

In May 2011, I accepted Christ as my Lord and Savior. I was not raised in a religious home, but as God called me, I answered. I was Baptized one month later and since then have made all life decisions after thoughtful prayer and Biblical guidance. I am not an anti-vaccine person, my older children are fully vaccinated, except for Covid, I am fully vaccinated except for Covid, and my husband is as well. Our baby is vaccinated for all diseases she has the opportunity to contract, with agreement from her Medical Provider. I believe there is a place in this world for both Science and Religion. Some major life changes through prayer have been leaving a previous lucrative career to become a nurse, as this is my second career. My Marriage. My children. My current position with INOVA. I was a bedside Nurse when I applied for Unit Supervisor position and had only been with INOVA for roughly two years. The two people who also applied for this position had been nurses in our specialty for 10+ years. I was the least experienced. Through prayer I applied, interviewed, and was offered the position and have worked very hard at this position for the last two years. I have started committees, participated in Magnet research, helped combat our HAIs and been on our COVID committee since its inception in March of 2020. I will continue to do so despite the personal decision to not receive the vaccination because in prayer I have not yet felt led to do so. I am not one to share personal medical information with my colleagues, but I do make safe choices for those around me, as it was my decision to not receive the vaccine. I do not eat around others, and I wear my mask 100% of the time.

I had originally submitted a medical exemption as I am breast-feeding my baby and plan on doing so for quite some time, just as I did for my other two children. I did this originally since it was offered as an exemption. I have continued to pray about receiving the vaccine and was going to continue to do so until my previous exemption was due. At that time, I was either going to receive the vaccine or submit a religious exemption. While the timetable has changed, it has brought me to the place where in thoughtful prayer and continuous seeking of the Lord's will, I still do not feel led to receive the vaccine at this time. My worldview is that of a Biblical Worldview. I believe in the infallible Word of God, and I will continue to make decisions based on scripture and prayer.

Due to my deeply, sincerely held religious beliefs, I cannot participate in the Covid-19 vaccine at this time. My beliefs are all-encompassing and to receive the shot at this time would put me in great spiritual distress. While I have shared personal information, my religious beliefs do not need to be consistent, agreeable or comprehensible to merit Title VII protection against religious discrimination. I am requesting a religious accommodation, under Title VII to be excused from receiving the COVID-19 vaccine which prohibits religious discrimination in all aspects of employment including retaliation, harassment creating a hostile work environment as a result of an employee requesting an accommodation, based on a sincerely held religious belief.

2. How would complying with the vaccination requirement substantially burden your religious exercise?

My religious exercise is through Scripture, prayer, mentorship, worship and discernment. In the current state of not understanding the long-term effects on the body Christ has provided on this Earth, God warns against this in His word. He warns against making rash and hasty decisions, He speaks of unbearable crushed spirits; He calls for us to focus our trust on Him, to walk in His wisdom and not our own foolish insight (Proverbs 18:13-14; 28:25-26) - vaccinating now would be going against my personal

guiding principles and would show that I am not trusting the Lord and will ultimately crush my spirit. These decisions are not based on personal philosophy or inconvenience.

Romans 14:23 states "But if you have doubts about whether or not you should eat something, you are sinning if you go ahead and do it. For you are not following your convictions. If you do anything you believe is not right, you are sinning." In this current moment, it is sinful for me to put something into my body that I have convictions against. These are my sincerely held religious beliefs. I plan on continuing to pray and allow the Lord to guide me. If that means He leads me to the vaccine next year, or the year after or in 5 years, I will follow His guidance. But for now, I am in deep spiritual contention at the thought of receiving this vaccine.

**3.** How long have you held the religious belief underlying your objection?

As stated in the first question, I was saved and baptized 10 years ago.

**4.** Please describe whether, as an adult, you have received any vaccines against any other diseases (such as flu, MMR (measles, mumps, rubella) and Tdap (pertussis).

Since accepting Christ I have not received any vaccines other than the Flu vaccine. As stated before, I am not anti-vaccine. I am pro medical care with understanding of Biblical guidance, foremost. However, my Biblical guidance will always override the understanding of science, if through prayer I am led.

5. If you do not have a religious objection to the use of all vaccines, please explain why your objection is limited to particular vaccines?

As previously stated, we make medical decisions as a family through Scripture guidance and prayer. The objection is to this specific vaccine due to the spiritual contention in which I have encountered in thoughtful prayer.

**6.** If there are any other medicines or products that you do not use because of the religious belief underlying your objection, please identify them.

Our family does not participate in any sort of substance abuse. As Corinthians 6:19-20 states "Don't you realize that your body is the temple of the Holy Spirit, who lives in you and was given to you by God? You do not belong to yourself. You must honor God with your body." Taking medicine does not mean you aren't trusting God to heal you. God can heal through use of medicine, but we are called to live by faith. By trust and His word that He made each and every one of us. God calls us to not harm that which was made in His image. Through prayer, medicine and medical care is sought when led, and always in conjunction with prayer, never as a sole healer.

Complaint Exhibit 1
Page 5

To whom it may concern:

I choose to exercise my right to demand a religious exemption to the requirement that I receive a COVID-19 vaccine. This demand for an exemption is based on my deeply held religious beliefs pursuant to my reliance on teachings in the Holy Bible.

The Bible says, "Therefore, to him that knows to do good, and does not do it, to him it is sin" (James 4:17, NKJV). My personal convictions are inspired by my study and understanding of the Bible, and personally directed by the true and living God. I am personally convicted that I should not receive any of the three COVID-19 vaccines presently available. Where Scripture does not expressly instruct on a particular matter, I believe that I am required to search the Scripture myself for related truths (Romans 15:4) and to seek personal guidance from the Holy Spirit (Acts 2:38-39; Romans 8).

Though church doctrine does not impact the personal decision of whether an individual receives most vaccines, the following teaching of the church demonstrates a principled religious basis on which I assert a conscientious religious objection to the current COVID-19 vaccines:

**1 Corinthians 6:19-20** (ESV) says, "…Your body is a temple of the Holy Spirit within you, whom you have from God. You are not your own, for you were bought with a price. So glorify God in your body."

I am responsible to God for my body—how I treat it, how I use it, how I take care of it, and what I put into it. My body is considered a "sacred temple" that is devoted to God for sacred purposes. I am to honor God with my body. It would be dishonoring to God for me to put something into my body for which I had a conscientious objection. Therefore, on religious grounds I believe I would be violating a sacred trust to honor God with my body if I were to allow the COVID vaccine to be injected into my body.

The Bible states in Romans 12:1 (ESV): "I appeal to you therefore, brothers, by the mercies of God, to present your bodies as a living sacrifice, holy and acceptable to God, which is your spiritual worship."

I am required by the tenets of my faith to present my body as a holy and acceptable instrument of worship to God. Allowing substances to be introduced into my body that I believe God has directed me not to receive and believe to be displeasing to God would be a violation of my sincerely held religious beliefs.

Signed _____Kristen Barnett_____ Date __12/1/21__

Name (print) __Kristen Barnett__

**Optional Pastoral Signature**

I acknowledge that ____Kristen Barnett____ objects to the COVID-19 vaccine on religious grounds.

Signed ____Michael C Frick____ Date ____12/1/21____

Name (print) ____Michael Frick____

Complaint Exhibit 1
Page 6

March 21, 2022

To: INOVA Team Member Health,

Thank you for allowing me the opportunity to appeal my denied Religious Exemption. This has been a very difficult process for my family and I, but I will count it a blessing because it is drawing me closer to my Savior. It is written in Hebrews 4:16 "Let us then with confidence draw near to the throne of grace, that we may receive mercy and find grace to help in time of need." Even though the process of having my Medical Exemption approved and then revoked and being required to submit a Religious Exemption and having it then declined is not all for naught because I know that even through this, God can use it for His glory and bless me. As it is written in Romans 8:28, "And we know that in all things God works for the good of those who love him, who have been called according to his purpose." I claim this promise even through this trial. And I perceive that this very process puts my faith to a test and a trial.

It is important to understand, and I have tried to adequately explain, that I originally did not submit a Religious Exemption package with my Medical Exemption package because I was still seeking the will of God at the time of the deadline for our exemptions. I knew since I was breastfeeding at that time that I would be able to quickly obtain a letter from my medical provider that would qualify me for a Medical Exemption. Admittedly, I took the easy way out and in doing so, I was in error. As it is written in James 2:10, "For whoever keeps the whole law but fails in one point has become accountable for all of it." I have tried my best to follow the requirements for exemption properly but I should have known that I needed to do better and submit both a Religious and a Medical Exemption package at the same time.

In November however, I did take the focused time in fervent prayer as is required by my faith. It took over a month to really pray and focus on God's will over receiving the vaccine. I knew that I would be breastfeeding my child for about another year but I also knew that I would need to address my continued concerns regarding these vaccines. It says in Philippians 4:6 "do not be anxious about anything, but in every situation, by prayer and petition, with thanksgiving, present your requests to God." I did just that and through that devoted prayer time, God has brought me peace of heart, mind and soul. I have continued to pray and seek God's will in my life. While I am not receiving commandments from Him to refuse all vaccines at this time, I am receiving commandments to refuse Covid 19 vaccines. He has also given me clear guidance that I am commanded to continue to refuse these vaccines.

In my original submission, I was in error by mentioning my concern about possible long term side effects for myself and my baby. I understand that these vaccines have been determined to be safe and my medical concerns are of no importance on a religious exemption without applying those concerns to 1 Corinthians 3:16-17 that says "Do you not know that you are God's temple and that God's Spirit dwells in you? If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple." Since I have expressed concerns that conflict with the trusted experts, I felt compelled to bring my cares and concerns to God for His guidance and direction, as I am instructed to do based on the scripture above. I am commanded

Complaint Exhibit 2
Page 1

JA24

to guard my body in the spiritual, emotional, mental as well as the physical. Failure to do this is punishable by God. While it is true, medical concerns have no application to a Religious Exemption, you must understand that Christians are not mindless drones who mindlessly follow a god, but rather when we have real life concerns, that serves to draw us to the ever-present God who saves, leads and directs.

It also says in 1 Corinthians 6:19-20 states "Don't you realize that your body is the temple of the Holy Spirit, who lives in you and was given to you by God? You do not belong to yourself. You must honor God with your body." This verse does not require the Holy Spirit's help to translate. However, let me reiterate, my body is not my own, but rather, my body belongs to God. As such, I must submit my body to Him for my direction in life for all things including medical decisions. I am also commanded to seek His direction for my baby's body as well as all my children since He has entrusted me with them. As it says in Deuteronomy 5:29, "Oh, that their hearts would be inclined to fear me and keep all my commands always, so that it might go well with them and their children forever!" As a mother of a young infant that has not been weaned from the breast, I must pay particular regard to my body and listen to all of His commands. As it is stated above, I am commanded by God to do so to ensure all will go well for her now and into her future. Since November of 2021, I have sought the Lord's counsel through prayer. Before that, I admit that I was caught up in the business of life and took comfort in my previously granted exemption. I do seek the wisdom of God in all things however, sometimes life gets in the way and some issues are more pressing and take the emphasis away from others. Since the revoking of my exemption, this issue has not left the forefront of my mind, sadly. Even as I write this appeal, I am asking God to confirm His will and even still, He commands complete abstinence from these vaccines. If I were to refuse His command, I would be removing Him from the place of authority over my life. That would be a sin and a huge mistake.

My approach may not have suited your needs upon review of my initial Religious Exemption request and it appears to not have immediately suited mine. However, my approach is in alignment with the Holy Scripture. As Christians, our spiritual process is an ongoing and constantly developing process. It is not magic and the answers to our prayers are not received at the moment of our initial request. Actually, God warns against making rash decisions. It says in Proverbs 18:15," The simple believe anything, but the prudent give thought to their steps" and also in Proverbs 18;18, "The simple inherit folly, but the prudent are crowned with knowledge." These verses teach me to move slowly and with precision when making decisions. It says that I am unwise to do otherwise. I have done that with regards to making a decision that could bring spiritual harm to myself. Even spiritual harm has a ripple effect to those around me including my family, my coworkers and my employer. I know that I could have done things differently and in retrospect, I wish that I had prioritized differently but I believe that I and others with similar circumstances were either intentionally or unintentionally set up for failure through this very turbulent process.

God calls for us to focus our trust on Him. Vaccination now would be going against my religiously guided principles and would show that I am not trusting the Lord and failure in this end will ultimately crush my spirit because it would cause me to sin. Romans 14:23 says "But if

Complaint Exhibit 2
Page 2

you have doubts about whether or not you should eat something, you are sinning if you go ahead and do it. For you are not following your convictions." This verse instructs me that if you do anything you believe is not right, you are sinning. I do not know how much clearer that I can be throughout this entire process. I sincerely believe that my heart, mind and spirit are all in alignment and have conviction to refuse these vaccines. As this verse instructs, I am forbidden and it would be a sin to do anything that I know that my consciousness instructs that I ought not do.

My opposition is not medical, scientific, political, philosophical, ethical, or otherwise secular in nature. Also, my sincerely held religious beliefs are not new and have been practiced, developed and strengthened over a long period of time since 2011 specifically. Your denial letter asked me to "consider complying with the INOVA policy", and therefore in fact outwardly asking me to sin. I cannot and will not sin against my God and my faith, to uphold a vaccine policy that my sincerely held religious beliefs has convicted me not to receive. It is unfortunate that I was not given a specific reason for my denial. I can only assume that the error was on my part. However, in the case that it was determined that my exemption could not be processed because it would cause an undue hardship on the hospital, I would like to address that issue as well.

Furthermore, we have received guidance that there are some inconsistencies in the way INOVA has approved exemption requests in addition to their assertion that we might be a direct threat to others. It appears that INOVA continues to grant accommodations for medical exemptions while denying all religious exemptions. These approvals appear to use the same protective measures we have been practicing for many months now with our current medical and religious exemptions granted by INOVA. The fact that we applied for a medical exemption at one point should not automatically preclude us from applying for a religious exemption. I sincerely held both religious beliefs and medical concerns that prompted my application of both. Having one concern does not automatically disqualify the other. If INOVA is capable of accommodating those with medical exemptions through additional protective measures such as masking and daily self-symptom checks and others, then we would request the same accommodations based on our sincerely held religious beliefs. Since we first received medical exemptions over eight months ago, we have successfully protected patients and co-workers through the use of masks and symptom checks. According to the Virginia Department of Health, we are at our lowest case rate since July after hitting an all-time high in January. Similarly, hospitalizations are at an all-time low since August after reaching a peak in January. If we were a threat to patients then, INOVA should have reviewed my submission in January when case rates were high and we were caring for patients with an understaffed hospital. Instead, we posed no threat at that time? Nor any of the other times in the last seven months? But suddenly masking, symptom checks, and additional accommodations are not sufficient to protect others? If INOVA has been able to protect the public and other employees with provisions such as masking and symptom checks for the last six months, why are we suddenly an undue burden moving forward? If INOVA will continue to offer those with medical conditions an accommodation, then why can they not continue to offer the same accommodation for those who hold sincerely held religious beliefs as well? Accommodating those with medical exemptions is not an undue burden on INOVA in the

Complaint Exhibit 2
Page 3

same way that accommodating those with sincerely held religious beliefs is also not an undue burden. Under the law, INOVA is required to offer accommodations to both sets of protected individuals to the greatest of their ability and we would argue that the last eight months have proven that we can be accommodated with no undue burden to INOVA.

In addition, there is no basis for INOVA to deny our request for accommodation based on an undue hardship to the organization. We are not sure if you are aware because information changes very quickly however, we feel that it is important to note that there has been an update to the CDC website regarding the Covid 19 vaccines. Omicron now represents 99.9% of all cases in the United States. Specifically, the CDC has added this language to the Omicron page. "Scientists are still learning how effective the COVID-19 vaccines are at preventing infection from Omicron. Current vaccines are expected to protect against severe illness, hospitalizations, and deaths from infection with the Omicron variant. However, breakthrough infections in people who are vaccinated are likely to occur. People who are up to date with their COVID-19 vaccines and get COVID-19 are less likely to develop serious illness than those who are unvaccinated and get COVID-19." The CDC is clear in this guidance that the only KNOWN protection that the vaccine offers is the possible reduction of serious illness in an individual at this time. While we would all be willingly get a COVID-19 vaccine if it were not forbidden by our sincerely held religious beliefs, this shows that scientists do not even fully know how effective the vaccine is at preventing infection against the predominant strain in the United States at this time. If we are being refused accommodation and essentially fired, due to an undue hardship for INOVA because of "perceived" direct threat to other employees, then it would be required by law for you to prove that we are a direct threat. Since the CDC is clear that we may NOT be any more of a threat than other fully vaccinated persons at catching and transmitting Covid, the argument that termination is the only alternative has been removed. While we all agree that receiving the vaccine reduces serious illness, scientists do not any longer know if it also reduces infection or transmission or to what degree. This means that it is hypothetical that we are in fact no more of a direct threat to others than as a fully vaccinated individual.  Therefore, all vaccinated persons working for INOVA would pose a similar threat to others, as transmission might not be reduced with vaccination. Please know that we love our jobs at INOVA and while it would break our hearts to do so, we are fully prepared to seek all legal remedies against INOVA if they are unable to provide a reasonable accommodation as required under the EEOC or prove the undue hardship. With other acceptable protection methods, we believe that this standard would be hard to prove. We would therefore urge you to reconsider and allow us to continue our work and allow for reasonable accommodation.

To meet its burden of proof on this issue, an employer must establish that the hardship is "real rather than speculative, merely conceivable, or hypothetical."    Undue hardship "cannot be proved by assumptions nor by opinions based on hypothetical facts."   Brown v. Polk County, 61 F.3d 650, 655 (8th Cir.1995) (en banc) (quotation omitted), cert. denied, 516 U.S. 1158, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996).(8th circuit of appeals). The law is clear that if the threat we pose is not a "real" threat as determined by law, we must be accommodated. Likewise, the EEOC has used similar language. In section 12 of their guidance under undue hardship the EEOC is clear to prove undue hardship "An employer cannot rely on hypothetical hardship when

faced with an employee's religious obligation that conflicts with scheduled work, but rather should rely on objective information." The fact that the CDC no longer knows if the vaccine can prevent infection means that excluding the unvaccinated who hold sincerely held religious beliefs based on hypothetical criteria that they pose more of a threat now defies the guidance of the EEOC.

The EEOC is also clear that an interactive process must take place before denying workers for the content of their exemptions. INOVA failed to implement an interactive process for reviewing exemptions which requires follow up questions and seeking additional information if the exemption submission was unclear. Therefore, we would ask that our exemptions be reviewed under this required EEOC policy. Since we were never asked additional follow up questions or called in for any formal interviews to further explain our sincerely held religious beliefs in greater detail we must, in order to preserve our rights under the law to be free from religious discrimination, we have filed an initial EEOC inquiry (my personal inquiry #570-2022-01510). We all hope that this was just a misunderstanding and any of us can drop the inquiry as we all love working for INOVA and the patients we are able to help there.

Furthermore, the CDC has been clear on steps that an employer can take that do in fact prevent infection such as masking and shielding, more frequent hand washing and sanitizing, appropriate social distancing, self-symptom monitoring, temperature checks, attending meetings virtually, and participation in weekly testing showing proof that we are virus free. We are more than willing to do all the above to protect our fellow co-workers from exposure. It is unreasonable to view our accommodations as an undue burden on INOVA. We believe that the accommodations we have suggested in our personal statement portion within this letter would cause no undue burden on INOVA and each of us personally would ask that some measure of these accommodations be offered as many other employers have done. These measures would limit the spread of all communicable diseases, including Covid 19.

I sincerely hope that based on the new information and further explanation of my sincerely held religious beliefs that you will reconsider your denial of my Religious Exemption request. I hope also that I have put any concerns you may have in approving my request to rest. I respect your efforts to keep me, my coworkers, and my patients safe during this pandemic. I partner with you in this regard. However, I must not lose myself and my faith in this end. In lieu of vaccination, I will honor all reasonable accommodations including but not limited to masking and shielding, appropriate social distancing, self-symptom monitoring and regular testing. All these measures work together to meet the same goal as detailed above.


Sincerely,

Kristen Barnett

Complaint Exhibit 2
Page 5

# Exhibit 1

Status ( Old ) PolicyStat ID ( 10081666 )

| | | | |
|---|---|---|---|
| Origination | 1/1/2018 | Owner | Laura Luca: Dir Team Member Health |
| Last Approved | 7/8/2021 | | |
| Effective | 7/8/2021 | Area | Team Member Health |
| Last Revised | 7/8/2021 | | |
| Next Review | 7/7/2024 | Applicability | Inova Health System |

# IHS Immunization Program Policy

**Inova policies and procedures are confidential and should not be shared outside Inova, including with any third party vendor or organization, unless authorized by leadership.**

**Purpose:**

The purpose of this policy is to protect the health and safety of Inova's team members, patients and community. Inova will continue to rely on the most current scientific information to make informed decisions about vaccinations.

**Applies to:**

For purposes of the Inova's vaccine requirement, "team member" means anyone issued an Inova badge. This includes all Inova-employed team members, employed and affiliated physicians, contractors, students, interns, and volunteers. You are considered a team member regardless if you are classified as full-time, part-time, temporary or PRN status, and regardless whether you work on-site at any Inova location or remotely. "team members" who are also "Medical and Allied Health Professional staff" should refer to Mandatory Immunization Documentation for Medical Staff and Allied Health Professionals (MMR, Varicella, Tdap, Hepatitis B, COVID-19, and TB Screening).

**Definitions:**

**Medical and Allied Health Professional Staff:** Members of the Medical Staff, holders of Clinical Privileges, or applicants for Medical Staff membership or Clinical Privileges

**Policy Description:**

A. **General Information**

1. As a condition of employment, all Inova-employed team members are required to obtain certain vaccinations as outlined in this policy within the timeframes provided.

JA30

2. As a condition of working at an Inova location or on behalf of Inova, all non-employed team members are required to obtain certain vaccinations as outlined in this policy within the timeframes provided.

3. Immunizations and/or boosters will be offered to Inova team members when clinically appropriate and in accordance with the Centers for Disease Control and Prevention (CDC), the Advisory Committee on Immunization Practices (ACIP) and Occupational Safety and Health Association (OSHA) standards when applicable.

4. Exemptions may be requested and will be evaluated individually (see policy section E – Vaccine Exemption Request Form).

A. **Required Immunization**

1. **Measles, Mumps, Rubella (MMR), Varicella (chickenpox), and Tdap for Pertussis**

a. Immunity for MMR will be demonstrated through documentation of 2 MMR immunizations, laboratory evidence of disease or a positive IgG titer (per lab reference range).

b. Immunity for Varicella will be demonstrated through documentation of 2 Varicella immunizations, laboratory evidence of disease or a positive IgG titer (per lab reference range). (Zostavax is not approved for varicella immunization requirement).

c. Immunity for Pertussis will be demonstrated through documentation of Tdap vaccination for persons aged 11 years or older.

1. **Seasonal Influenza**

a. Team members are required to receive the designated immunization for each flu season when it becomes available or before the annual deadline of each year.

b. Team members who obtain approval for an immunization exemption (refer to section E – Exemption Request as needed) will be required to wear a surgical mask when within 10 feet of a patient or when entering a patient room for the duration of the flu season.

c. Immunity will be demonstrated through documentation of annual Influenza vaccination.

1. **Meningococcal for Microbiology team members (to include employed Med Tech Students at IFMC)**

a. Immunity for meningococcal disease will be demonstrated through documentation of appropriate adult meningococcal vaccination(s) per CDC and ACIP guidelines.

b. Team members with prolonged, increased risk for meningococcal disease will be required to get the appropriate booster(s) per CDC and ACIP guidelines.

1. **Hepatitis B Immunization**

a. Hepatitis B immunization series is offered to team members who perform tasks that may involve exposure to blood and/or body fluids. Team members who decline vaccination must sign the Hepatitis B Vaccination Declination form which states that a team member who initially declines to receive the vaccine, but at a later date decides to accept it, will be given the vaccine series at no cost, provided the team member is still occupationally exposed to blood and/or body fluids.

b. Medical and Allied Health Professional Staff who are exposed to blood and/or body fluids may receive the Hepatitis B series at no cost through Team Member Health.

1. **COVID-19 - See addendum D**

A. **Accepted Proof of Immunization Outside of Inova**

1. If immunization is provided through services other than Inova, required written proof includes:

a. Receipt containing the complete immunization administration information, or

b. A signed and current immunization consent form on official letterhead showing the vaccination was administered.

c. Official documentation from a government health agency.

d. Military immunization record.

e. Documentation of positive IGG titers for MMR-V

A. **Required Timeframes To Obtain Vaccinations**

1. Prospective team members:

    a. Will be screened for immunity to Measles, Mumps, Rubella, Varicella, and Pertussis during the pre-employment screening process by way of laboratory testing or validation of documentation provided by the candidate of either laboratory results or vaccination history.

    b. Immunity to COVID-19 and meningococcal disease is by documentation of vaccination(s).

2. New or rehired team members:

    a. If titers or immunization status determine that a new team member requires additional immunizations, team members must either return to Team Member Health to complete the vaccine(s) or provide proof of vaccination within 60 days of Inova employment start date ***unless***

    b. Proof of immunity, proof of vaccination, or valid medical or religious exemption must be received within 60 days of Inova employment start date.

3. Team members on an approved leave of absence, short term disability, or long term disability:

    a. Proof of immunity, proof of vaccination, or valid medical or religious exemption must be received within 60 days of returning to work

A. **Exemption Request**

1. Medical exemption request will be accompanied by a letter from the team member's private physician, on the physician's letterhead, documenting the medical contraindication.

2. Religious exemption request will be accompanied by a letter from the team member's clergy, on the clergy's professional letterhead, supporting exemption. The request must be consistent with prior immunization history.

A. **Immunization Record Keeping**

1. Documentation for Inova-employed team members will be maintained by Team Member Health.

2. Documentation for non-employed team members, such as contracted personnel, vendors, volunteers, and students will be maintained by the appropriate non-Inova entity (e.g. contracting company, Academic Institution).

A. **Vaccine Shortage**

1. In the event of a vaccine shortage, immunization requirements may be temporarily delayed or suspended.

2. Immunization will be administered in a tiered fashion with priority typically given to OB/GYN, Pediatrics, and ED healthcare workers.

**Non-compliance:**

**Team Members Who Do Not Comply With This Policy:**

1. A team member who has not complied with Inova's immunization requirements prior to their Inova start date will have 60 days to provide proof of immunity or an approved exemption request. After 60 days the team member will not be permitted to work or practice at an Inova facility nor perform their duties remotely.

2. Contracted personnel, vendors, volunteers, and students will not be permitted to perform their duties for Inova at an Inova facility or remotely

3. All current team members who have not complied with the vaccine requirements or have not been granted an approved exemption will not be permitted to come to work, practice, or perform their usual duties whether at any Inova facility or remotely until proof of vaccination or exemption is received.

4. Team members will be placed on an unpaid administrative leave for seven (7) calendar days to meet the requirements outlined in this policy. During this unpaid administrative leave, team members are not be permitted to use PTO or any other paid time away program. If a team member does not provide necessary documentation of vaccination within seven (7) calendar days, their employment will end.

5. Team members who leave Inova's employment because the required vaccines were not obtained within the stated timeframe will be eligible for rehire provided the pre-employment requirements are met.

**Addenda:**

- Addendum A - Distribution Sheet
- Addendum B - Exemption Request Form
- Addendum C-2019 Seasonal Influenza Immunization Deadlines
- Addendum D-Mandatory COVID-19 Vaccine
- Addendum E-Hepatitis B Vaccine Declination Form
- Pre-placement Health Screen Policy
- Mandatory Immunization Documentation for Medical Staff and Allied Health Professionals (MMR, Varicella, Tdap, Hepatitis B and TB Screening

**Inova policies and procedures are confidential and should not be shared outside Inova, including with any third party vendor or organization, unless authorized by leadership.**

## Attachments

Addendum A: Distribution Sheet

Addendum B: Vaccine Exemption Request Form

Addendum C: 2021 Seasonal Influenza Immunization Deadlines

Addendum D: Mandatory COVID Vaccine

Addendum E: Hepatitis B Declination Form

## Approval Signatures

| Step Description | Approver | Date |
|---|---|---|
| IHS CNE/EVP Appoval | Maureen Sintich: Evp Chief Nursing Officer | 7/8/2021 |
| IHS Chief, Clinical Enterprise Approval | Steve Motew: Chief Clinical Enterprise [LR] | 7/8/2021 |
| | Laura Luca: Dir Team Member Health | 7/7/2021 |

JA34

# Exhibit 2

# Vaccination Exemption Request Form

I, _Kristen Barnett_, am requesting exemption for the following vaccination(s):

☐ Influenza*     ☐ MMR (measles-mumps-rubella)     ☐ Varicella (chicken pox)   ☐ Tdap (pertussis)

☑ COVID-19*     ☐ Meningococcal     ☐ Hepatitis B

*If I am approved for an exemption from the influenza or COVID-19 vaccination, I will be required to wear a surgical mask when I am at any Inova facility. If I am approved for an exemption from the COVID-19 vaccination, I may also be required to engage in physical distancing protocols and abide by such other requirements that Inova may now or in the future require.

I understand that by not receiving the influenza or COVID-19 vaccination, I may have an increased risk of contracting either virus or its related complications. Accordingly, if I contract either virus, I understand that there could be life-threatening consequences to my own health and the health of those with whom I have contact, including any patients, team members, or my family and community.

**Medical Exemption Request**

I request a medical exemption for the following reason:
☐ Documented allergy to the following component of the vaccine _____
☐ History of the following medical condition contraindicates vaccination _____
☐ Documented anaphylactic allergic reaction to the vaccine
☐ Documentation of the following severe adverse effect to the vaccine _____
☑ Current pregnancy or breast feeding.
A letter from your private physician or medical professional on his/her professional letterhead
documenting your exact medical contraindication(s) is attached.      ☑ Yes

**Religious Exemption Request**

I request a religious exemption:
☐ Reason for religious exemption _____
A letter from your clergy/religious leader on his/her professional letterhead affirming consistency with
prior vaccination history is attached.     ☐ Yes

I am a:  ☐ Physician  ☑ Inova-employed Team Member  ☐ Student   ☐ Contractor   ☐ Vendor   ☐ Volunteer

Signature: _Kristen Barnett RN_          Date: _7/15/21_
Printed Name: _Kristen Barnett_          Employee/Provider ID: _79340_
Email Address: _Kristin.Hadel@inova.org_ Phone Number: _571 041 9440_
Manager's Name / Department (for employed Team Members): _Bill Green_
School/Company/Affiliation (for non-employees): _____

Submit completed Vaccination Exemption Request Form and required documentation to
(703) 698-2429 or scan and email all documentation to exemptionrequests@inova.org

JA36

P: 703.421.7000 | F: 703.430.4830
SterlingFamilyPractice.com

Sterling Family Practice

DATE: 07/14/2021

RE: KRISTEN BARNETT

DOB: ███1984

To Whom It May Concern:

Kristen Barnett is under my care at Sterling Family Practice. Pt is currently breastfeding and has other underlying conditions, the COVID-19 vaccine series is medically contraindicated at this time.

Sincerely,

*Sjennings* NP-C

Stefanie Jennings, FNP-C

Aprox date for ends Breastfeedy
12/30/22

**JA37**

# Exhibit 3



**From:** Kristen Barnett <khadel0711@gmail.com>
**Sent:** Wednesday, December 22, 2021 5:50 AM
**To:** ExemptionRequests <ExemptionRequests@inova.org>
**Subject:** Barnett, Kristen- Exemption Request

***ATTENTION: This email originated from outside of Inova. Please proceed with caution if asked to click links or open attachments.***

Please see attached documents for my exemption request.
Thank you,
Kristen Barnett (Hadel)

1

**JA39**

**Questions:**

1.  Describe the nature of your objection to the vaccination requirement.

    In May 2011, I accepted Christ as my Lord and Savior. I was not raised in a religious home, but as God called me, I answered. I was Baptized one month later and since then have made all life decisions after thoughtful prayer and Biblical guidance. I am not an anti-vaccine person, my older children are fully vaccinated, except for Covid, I am fully vaccinated except for Covid, and my husband is as well. Our baby is vaccinated for all diseases she has the opportunity to contract, with agreement from her Medical Provider. I believe there is a place in this world for both Science and Religion. Some major life changes through prayer have been leaving a previous lucrative career to become a nurse, as this is my second career. My Marriage. My children. My current position with INOVA. I was a bedside Nurse when I applied for Unit Supervisor position and had only been with INOVA for roughly two years. The two people who also applied for this position had been nurses in our specialty for 10+ years. I was the least experienced. Through prayer I applied, interviewed, and was offered the position and have worked very hard at this position for the last two years. I have started committees, participated in Magnet research, helped combat our HAIs and been on our COVID committee since its inception in March of 2020. I will continue to do so despite the personal decision to not receive the vaccination because in prayer I have not yet felt led to do so. I am not one to share personal medical information with my colleagues, but I do make safe choices for those around me, as it was my decision to not receive the vaccine. I do not eat around others, and I wear my mask 100% of the time.

    I had originally submitted a medical exemption as I am breast-feeding my baby and plan on doing so for quite some time, just as I did for my other two children. I did this originally since it was offered as an exemption. I have continued to pray about receiving the vaccine and was going to continue to do so until my previous exemption was due. At that time, I was either going to receive the vaccine or submit a religious exemption. While the timetable has changed, it has brought me to the place where in thoughtful prayer and continuous seeking of the Lord's will, I still do not feel led to receive the vaccine at this time. My worldview is that of a Biblical Worldview. I believe in the infallible Word of God, and I will continue to make decisions based on scripture and prayer.

    Due to my deeply, sincerely held religious beliefs, I cannot participate in the Covid-19 vaccine at this time. My beliefs are all-encompassing and to receive the shot at this time would put me in great spiritual distress. While I have shared personal information, my religious beliefs do not need to be consistent, agreeable or comprehensible to merit Title VII protection against religious discrimination. I am requesting a religious accommodation, under Title VII to be excused from receiving the COVID-19 vaccine which prohibits religious discrimination in all aspects of employment including retaliation, harassment creating a hostile work environment as a result of an employee requesting an accommodation, based on a sincerely held religious belief.

2.  How would complying with the vaccination requirement substantially burden your religious exercise?

    My religious exercise is through Scripture, prayer, mentorship, worship and discernment. In the current state of not understanding the long-term effects on the body Christ has provided on this Earth, God warns against this in His word. He warns against making rash and hasty decisions, He speaks of unbearable crushed spirits; He calls for us to focus our trust on Him, to walk in His wisdom and not our own foolish insight (Proverbs 18:13-14; 28:25-26) - vaccinating now would be going against my personal

guiding principles and would show that I am not trusting the Lord and will ultimately crush my spirit. These decisions are not based on personal philosophy or inconvenience.

Romans 14:23 states "But if you have doubts about whether or not you should eat something, you are sinning if you go ahead and do it. For you are not following your convictions. If you do anything you believe is not right, you are sinning." In this current moment, it is sinful for me to put something into my body that I have convictions against. These are my sincerely held religious beliefs. I plan on continuing to pray and allow the Lord to guide me. If that means He leads me to the vaccine next year, or the year after or in 5 years, I will follow His guidance. But for now, I am in deep spiritual contention at the thought of receiving this vaccine.

**3.** How long have you held the religious belief underlying your objection?

As stated in the first question, I was saved and baptized 10 years ago.

**4.** Please describe whether, as an adult, you have received any vaccines against any other diseases (such as flu, MMR (measles, mumps, rubella) and Tdap (pertussis).

Since accepting Christ I have not received any vaccines other than the Flu vaccine. As stated before, I am not anti-vaccine. I am pro medical care with understanding of Biblical guidance, foremost. However, my Biblical guidance will always override the understanding of science, if through prayer I am led.

5.  If you do not have a religious objection to the use of all vaccines, please explain why your objection is limited to particular vaccines?

As previously stated, we make medical decisions as a family through Scripture guidance and prayer. The objection is to this specific vaccine due to the spiritual contention in which I have encountered in thoughtful prayer.

**6.** If there are any other medicines or products that you do not use because of the religious belief underlying your objection, please identify them.

Our family does not participate in any sort of substance abuse. As Corinthians 6:19-20 states "Don't you realize that your body is the temple of the Holy Spirit, who lives in you and was given to you by God? You do not belong to yourself. You must honor God with your body." Taking medicine does not mean you aren't trusting God to heal you. God can heal through use of medicine, but we are called to live by faith. By trust and His word that He made each and every one of us. God calls us to not harm that which was made in His image. Through prayer, medicine and medical care is sought when led, and always in conjunction with prayer, never as a sole healer.

To whom it may concern:

I choose to exercise my right to demand a religious exemption to the requirement that I receive a COVID-19 vaccine. This demand for an exemption is based on my deeply held religious beliefs pursuant to my reliance on teachings in the Holy Bible.

The Bible says, "Therefore, to him that knows to do good, and does not do it, to him it is sin" (James 4:17, NKJV). My personal convictions are inspired by my study and understanding of the Bible, and personally directed by the true and living God. I am personally convicted that I should not receive any of the three COVID-19 vaccines presently available. Where Scripture does not expressly instruct on a particular matter, I believe that I am required to search the Scripture myself for related truths (Romans 15:4) and to seek personal guidance from the Holy Spirit (Acts 2:38-39; Romans 8).

Though church doctrine does not impact the personal decision of whether an individual receives most vaccines, the following teaching of the church demonstrates a principled religious basis on which I assert a conscientious religious objection to the current COVID-19 vaccines:

**1 Corinthians 6:19-20** (ESV) says, "...Your body is a temple of the Holy Spirit within you, whom you have from God. You are not your own, for you were bought with a price. So glorify God in your body."

I am responsible to God for my body—how I treat it, how I use it, how I take care of it, and what I put into it. My body is considered a "sacred temple" that is devoted to God for sacred purposes. I am to honor God with my body. It would be dishonoring to God for me to put something into my body for which I had a conscientious objection. Therefore, on religious grounds I believe I would be violating a sacred trust to honor God with my body if I were to allow the COVID vaccine to be injected into my body.

The Bible states in Romans 12:1 (ESV): "I appeal to you therefore, brothers, by the mercies of God, to present your bodies as a living sacrifice, holy and acceptable to God, which is your spiritual worship."

I am required by the tenets of my faith to present my body as a holy and acceptable instrument of worship to God. Allowing substances to be introduced into my body that I believe God has directed me not to receive and believe to be displeasing to God would be a violation of my sincerely held religious beliefs.

Signed _Kristen Barnett_ Date _12/1/21_

Name (print) _Kristen Barnett_

**Optional Pastoral Signature**

I acknowledge that _____ objects to the COVID-19 vaccine on religious grounds.

Signed _Michael C Fried_ Date _____

Name (print) _____

**JA42**

Please provide any additional information (including, if applicable, a letter from your clergy/religious leader on his/her professional letterhead affirming religious belief in vaccine exemption) that you think may be helpful in reviewing your request.

I attest that the above information is complete and accurate to the best of my knowledge. I understand that any deliberate misrepresentation contained in this request could result in disciplinary action, including suspension or termination from duties at the Inova Health System. I also understand that my request for an exemption may not be granted if it creates undue hardship for the Inova Health System.

Signature: _Kristin M Barnett_ Date: _12/19/21_

Printed Name: _Kristen Barnett (Haddl)_

Manager's Name / Department (for Team Members): _Gail Green / PICU_

School/Company/Affiliation (for non-Team Members): _____

Scan and email completed Vaccination Exemption Request Form and required documentation to exemptionrequests@inova.org for review.

Nov 17, 2021

JA43

## COVID-19 Vaccination Religious Exemption Request Form

Name: _Kristen Barnett (Hadel)_   Date of birth: _████ 84_

Team Member /Provider ID: _12068_

Email Address: _Kristen.Hadel@inova.org_   Phone Number: _571-641-9440_

I am a: ☐ Physician  ☐ New Hire  ☒ Inova Team Member  ☐ Student  ☐ Contractor  ☐ Vendor  ☐ Volunteer

In certain circumstances an Inova Team Member may request an exemption from Inova's vaccination requirements due to religious reasons. To be eligible for such an exemption, your request must be based on a sincerely held religious belief and will require you to provide supporting documentation that will be reviewed and either approved or declined by committee within a 14 day period.

I understand that by not receiving the COVID-19 vaccination, I may have an increased risk of contracting either virus or its related complications. Accordingly, if I contract either virus, I understand that there could be life-threatening consequences to my own health and the health of those with whom I have contact, including any patients, team members, or my family and community.

**Instructions:** You must answer <u>all</u> the following questions on separate attachment and submit with your form for consideration. Inova may ask for other information as needed to determine whether an exemption will be granted.

Questions:

1. Describe the nature of your objection to the vaccination requirement.

2. How would complying with the vaccination requirement substantially burden your religious exercise?

3. How long have you held the religious belief underlying your objection?

4. Please describe whether, as an adult, you have received any vaccines against any other diseases (such as flu, MMR (measles, mumps, rubella) and Tdap (pertussis).

5. If you do not have a religious objection to the use of all vaccines, please explain why your objection is limited to particular vaccines?

6. If there are any other medicines or products that you do not use because of the religious belief underlying your objection, please identify them.

_Nov 17, 2021_

**JA44**

## Vaccination Exemption Request Form

I, _Kristen Barnett (Hadel)_____, am requesting exemption for the following vaccination(s):

☐ Influenza*   ☐ MMR (measles-mumps-rubella)   ☐ Varicella (chicken pox)   ☐ Tdap (pertussis)

☑ COVID-19*   ☐ Meningococcal   ☐ Hepatitis B

*If I am approved for an exemption from the influenza or COVID-19 vaccination, I will be required to wear a surgical mask when I am at any Inova facility. If I am approved for an exemption from the COVID-19 vaccination, I may also be required to engage in physical distancing protocols and abide by such other requirements that Inova may now or in the future require.

I understand that by not receiving the influenza or COVID-19 vaccination, I may have an increased risk of contracting either virus or its related complications.  Accordingly, if I contract either virus, I understand that there could be life-threatening consequences to my own health and the health of those with whom I have contact, including any patients, team members, or my family and community.

**Medical Exemption Request**

| I request a medical exemption for the following reason: |
| --- |
| ☐ Documented allergy to the following component of the vaccine _____ |
| ☐ History of the following medical condition contraindicates vaccination _____ |
| ☐ Documented anaphylactic allergic reaction to the vaccine |
| ☐ Documentation of the following severe adverse effect to the vaccine _____ |
| ☐ Current pregnancy or breast feeding. |
| A letter from your private physician or medical professional on his/her professional letterhead documenting your exact medical contraindication(s) is attached.   ☐ Yes |

**Religious Exemption Request**

I request a religious exemption:
☑ Reason for religious exemption ___sincerely held religious belief___
A letter from your clergy/religious leader on his/her professional letterhead affirming consistency with prior vaccination history is attached.   ☑ Yes

I am a:   ☐ Physician   ☑ Inova-employed Team Member   ☐ Student   ☐ Contractor   ☐ Vendor   ☐ Volunteer

Signature: _Kristen Barnett_   Date: _12|19|21_

Printed Name: _Kristen Barnett_   Employee/Provider ID: _12068_

Email Address: _Kristen.Hadel@inova.org_   Phone Number: _571-641-9440_

Manager's Name / Department (for employed Team Members): _ball green / PICU_

School/Company/Affiliation (for non-employees): _____

Submit completed Vaccination Exemption Request Form and required documentation to (703) 698-2429 or scan and email all documentation to exemptionrequests@inova.org

July 2, 2021

**JA45**

# Exhibit 4



**From:** Kristen Barnett <khadel0711@gmail.com>
**Sent:** Monday, March 21, 2022 9:08 PM
**To:** ExemptionRequests <ExemptionRequests@inova.org>
**Cc:** Luca, Laura S. <Laura.Luca@inova.org>
**Subject:** Religious Exemption Appeal- Barnett

***ATTENTION: This email originated from outside of Inova. Please proceed with caution if asked to click links or open attachments.***

Good evening,
Please see below my Religious Exemption Appeal. Does this continue my employment until a time that you have to review or am I still placed on Administrative Leave as of April 1, 2022 if I do not comply with INOVA's vaccine mandate?
Thank you,
Kristen Barnett

March 21, 2022

To: INOVA Team Member Health,

Thank you for allowing me the opportunity to appeal my denied Religious Exemption. This has been a very difficult process for my family and I, but I will count it a blessing because it is drawing me closer to my Savior. It is written in Hebrews 4:16 "Let us then with confidence draw near to the throne of grace, that we may receive mercy and find grace to help in time of need." Even though the process of having my Medical Exemption approved and then revoked and being required to submit a Religious Exemption and having it then declined is not all for naught because I know that even through this, God can use it for His glory and bless me. As it is written in Romans 8:28, "And we know that in all things God works for the good of those who love him, who have been called according to his purpose."  I claim this promise even through this trial. And I perceive that this very process puts my faith to a test and a trial.

It is important to understand, and I have tried to adequately explain, that I originally did not submit a Religious Exemption package with my Medical Exemption package because I was still seeking the will of God at the time of the deadline for our exemptions.  I knew since I was breastfeeding at that time that I would be able to quickly obtain a letter from my medical provider that would qualify me for a Medical Exemption. Admittedly, I took the easy way out and in doing so, I was in error. As it is written in James 2:10, "For whoever keeps the whole law but fails in one point has become accountable for all of it." I have tried my best to follow the requirements for exemption properly but I should have known that I needed to do better and submit both a Religious and a Medical Exemption package at the same time.

In November however, I did take the focused time in fervent prayer as is required by my faith. It took over a month to really pray and focus on God's will over receiving the vaccine. I knew that I would be breastfeeding my child for about another year but I also knew that I would need to address my continued concerns regarding these vaccines. It says in Philippians 4:6 "do not be anxious about anything, but in every situation, by prayer and petition, with thanksgiving, present your requests to God."  I did just that and through that devoted prayer time, God has brought me peace of heart, mind and soul. I have continued to pray and seek God's will in my life. While I am not receiving commandments from Him to refuse all vaccines at this time, I am receiving commandments to refuse Covid 19 vaccines. He has also given me clear guidance that I am commanded to continue to refuse these vaccines.

In my original submission, I was in error by mentioning my concern about possible long term side effects for myself and my baby. I understand that these vaccines have been determined to be safe and my medical concerns are of no importance on a religious exemption without applying those concerns to 1 Corinthians 3:16-17 that says "Do you not know that you are God's temple and that God's Spirit dwells in you? If anyone destroys God's temple, God will destroy him. For God's temple is holy, and you are that temple." Since I have expressed concerns that conflict with the trusted experts, I felt compelled to bring my cares and concerns to God for His guidance and direction, as I am instructed to do based on the scripture above. I am commanded

to guard my body in the spiritual, emotional, mental as well as the physical. Failure to do this is punishable by God. While it is true, medical concerns have no application to a Religious Exemption, you must understand that Christians are not mindless drones who mindlessly follow a god, but rather when we have real life concerns, that serves to draw us to the ever-present God who saves, leads and directs.

It also says in 1 Corinthians 6:19-20 states "Don't you realize that your body is the temple of the Holy Spirit, who lives in you and was given to you by God? You do not belong to yourself. You must honor God with your body." This verse does not require the Holy Spirit's help to translate. However, let me reiterate, my body is not my own, but rather, my body belongs to God. As such, I must submit my body to Him for my direction in life for all things including medical decisions.  I am also commanded to seek His direction for my baby's body as well as all my children since He has entrusted me with them. As it says in Deuteronomy 5:29, "Oh, that their hearts would be inclined to fear me and keep all my commands always, so that it might go well with them and their children forever!" As a mother of a young infant that has not been weaned from the breast, I must pay particular regard to my body and listen to all of His commands. As it is stated above, I am commanded by God to do so to ensure all will go well for her now and into her future. Since November of 2021, I have sought the Lord's counsel through prayer. Before that, I admit that I was caught up in the business of life and took comfort in my previously granted exemption. I do seek the wisdom of God in all things however, sometimes life gets in the way and some issues are more pressing and take the emphasis away from others. Since the revoking of my exemption, this issue has not left the forefront of my mind, sadly. Even as I write this appeal, I am asking God to confirm His will and even still, He commands complete abstinence from these vaccines. If I were to refuse His command, I would be removing Him from the place of authority over my life. That would be a sin and a huge mistake.

My approach may not have suited your needs upon review of my initial Religious Exemption request and it appears to not have immediately suited mine. However, my approach is in alignment with the Holy Scripture.  As Christians, our spiritual process is an ongoing and constantly developing process. It is not magic and the answers to our prayers are not received at the moment of our initial request.  Actually, God warns against making rash decisions.  It says in Proverbs 18:15," The simple believe anything, but the prudent give thought to their steps" and also in Proverbs 18;18, "The simple inherit folly, but the prudent are crowned with knowledge." These verses teach me to move slowly and with precision when making decisions. It says that I am unwise to do otherwise. I have done that with regards to making a decision that could bring spiritual harm to myself. Even spiritual harm has a ripple effect to those around me including my family, my coworkers and my employer. I know that I could have done things differently and in retrospect, I wish that I had prioritized differently but I believe that I and others with similar circumstances were either intentionally or unintentionally set up for failure through this very turbulent process.

God calls for us to focus our trust on Him. Vaccination now would be going against my religiously guided principles and would show that I am not trusting the Lord and failure in this end will ultimately crush my spirit because it would cause me to sin. Romans 14:23 says "But if

you have doubts about whether or not you should eat something, you are sinning if you go ahead and do it. For you are not following your convictions." This verse instructs me that if you do anything you believe is not right, you are sinning.  I do not know how much clearer that I can be throughout this entire process. I sincerely believe that my heart, mind and spirit are all in alignment and have conviction to refuse these vaccines. As this verse instructs, I am forbidden and it would be a sin to do anything that I know that my consciousness instructs that I ought not do.

My opposition is not medical, scientific, political, philosophical, ethical, or otherwise secular in nature.  Also, my sincerely held religious beliefs are not new and have been practiced, developed and strengthened over a long period of time since 2011 specifically. Your denial letter asked me to "consider complying with the INOVA policy", and therefore in fact outwardly asking me to sin. I cannot and will not sin against my God and my faith, to uphold a vaccine policy that my sincerely held religious beliefs has convicted me not to receive. It is unfortunate that I was not given a specific reason for my denial. I can only assume that the error was on my part. However, in the case that it was determined that my exemption could not be processed because it would cause an undue hardship on the hospital, I would like to address that issue as well.

Furthermore, we have received guidance that there are some inconsistencies in the way INOVA has approved exemption requests in addition to their assertion that we might be a direct threat to others. It appears that INOVA continues to grant accommodations for medical exemptions while denying all religious exemptions. These approvals appear to use the same protective measures we have been practicing for many months now with our current medical and religious exemptions granted by INOVA. The fact that we applied for a medical exemption at one point should not automatically preclude us from applying for a religious exemption. I sincerely held both religious beliefs and medical concerns that prompted my application of both. Having one concern does not automatically disqualify the other. If INOVA is capable of accommodating those with medical exemptions through additional protective measures such as masking and daily self-symptom checks and others, then we would request the same accommodations based on our sincerely held religious beliefs. Since we first received medical exemptions over eight months ago, we have successfully protected patients and co-workers through the use of masks and symptom checks. According to the Virginia Department of Health, we are at our lowest case rate since July after hitting an all-time high in January. Similarly, hospitalizations are at an all-time low since August after reaching a peak in January. If we were a threat to patients then, INOVA should have reviewed my submission in January when case rates were high and we were caring for patients with an understaffed hospital. Instead, we posed no threat at that time? Nor any of the other times in the last seven months? But suddenly masking, symptom checks, and additional accommodations are not sufficient to protect others? If INOVA has been able to protect the public and other employees with provisions such as masking and symptom checks for the last six months, why are we suddenly an undue burden moving forward? If INOVA will continue to offer those with medical conditions an accommodation, then why can they not continue to offer the same accommodation for those who hold sincerely held religious beliefs as well? Accommodating those with medical exemptions is not an undue burden on INOVA in the

same way that accommodating those with sincerely held religious beliefs is also not an undue burden. Under the law, INOVA is required to offer accommodations to both sets of protected individuals to the greatest of their ability and we would argue that the last eight months have proven that we can be accommodated with no undue burden to INOVA.

In addition, there is no basis for INOVA to deny our request for accommodation based on an undue hardship to the organization. We are not sure if you are aware because information changes very quickly however, we feel that it is important to note that there has been an update to the CDC website regarding the Covid 19 vaccines. Omicron now represents 99.9% of all cases in the United States. Specifically, the CDC has added this language to the Omicron page. "Scientists are still learning how effective the COVID-19 vaccines are at preventing infection from Omicron. Current vaccines are expected to protect against severe illness, hospitalizations, and deaths from infection with the Omicron variant. However, breakthrough infections in people who are vaccinated are likely to occur. People who are up to date with their COVID-19 vaccines and get COVID-19 are less likely to develop serious illness than those who are unvaccinated and get COVID-19." The CDC is clear in this guidance that the only KNOWN protection that the vaccine offers is the possible reduction of serious illness in an individual at this time. While we would all be willingly get a COVID-19 vaccine if it were not forbidden by our sincerely held religious beliefs, this shows that scientists do not even fully know how effective the vaccine is at preventing infection against the predominant strain in the United States at this time. If we are being refused accommodation and essentially fired, due to an undue hardship for INOVA because of "perceived" direct threat to other employees, then it would be required by law for you to prove that we are a direct threat. Since the CDC is clear that we may NOT be any more of a threat than other fully vaccinated persons at catching and transmitting Covid, the argument that termination is the only alternative has been removed. While we all agree that receiving the vaccine reduces serious illness, scientists do not any longer know if it also reduces infection or transmission or to what degree. This means that it is hypothetical that we are in fact no more of a direct threat to others than as a fully vaccinated individual.  Therefore, all vaccinated persons working for INOVA would pose a similar threat to others, as transmission might not be reduced with vaccination. Please know that we love our jobs at INOVA and while it would break our hearts to do so, we are fully prepared to seek all legal remedies against INOVA if they are unable to provide a reasonable accommodation as required under the EEOC or prove the undue hardship. With other acceptable protection methods, we believe that this standard would be hard to prove. We would therefore urge you to reconsider and allow us to continue our work and allow for reasonable accommodation.

To meet its burden of proof on this issue, an employer must establish that the hardship is "real rather than speculative, merely conceivable, or hypothetical."   Undue hardship "cannot be proved by assumptions nor by opinions based on hypothetical facts."   Brown v. Polk County, 61 F.3d 650, 655 (8th Cir.1995) (en banc) (quotation omitted), cert. denied, 516 U.S. 1158, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996).(8th circuit of appeals). The law is clear that if the threat we pose is not a "real" threat as determined by law, we must be accommodated. Likewise, the EEOC has used similar language. In section 12 of their guidance under undue hardship the EEOC is clear to prove undue hardship "An employer cannot rely on hypothetical hardship when

**JA51**

faced with an employee's religious obligation that conflicts with scheduled work, but rather should rely on objective information." The fact that the CDC no longer knows if the vaccine can prevent infection means that excluding the unvaccinated who hold sincerely held religious beliefs based on hypothetical criteria that they pose more of a threat now defies the guidance of the EEOC.

The EEOC is also clear that an interactive process must take place before denying workers for the content of their exemptions. INOVA failed to implement an interactive process for reviewing exemptions which requires follow up questions and seeking additional information if the exemption submission was unclear. Therefore, we would ask that our exemptions be reviewed under this required EEOC policy. Since we were never asked additional follow up questions or called in for any formal interviews to further explain our sincerely held religious beliefs in greater detail we must, in order to preserve our rights under the law to be free from religious discrimination, we have filed an initial EEOC inquiry (my personal inquiry #570-2022-01510). We all hope that this was just a misunderstanding and any of us can drop the inquiry as we all love working for INOVA and the patients we are able to help there.

Furthermore, the CDC has been clear on steps that an employer can take that do in fact prevent infection such as masking and shielding, more frequent hand washing and sanitizing, appropriate social distancing, self-symptom monitoring, temperature checks, attending meetings virtually, and participation in weekly testing showing proof that we are virus free. We are more than willing to do all the above to protect our fellow co-workers from exposure.  It is unreasonable to view our accommodations as an undue burden on INOVA.  We believe that the accommodations we have suggested in our personal statement portion within this letter would cause no undue burden on INOVA and each of us personally would ask that some measure of these accommodations be offered as many other employers have done.  These measures would limit the spread of all communicable diseases, including Covid 19.

I sincerely hope that based on the new information and further explanation of my sincerely held religious beliefs that you will reconsider your denial of my Religious Exemption request. I hope also that I have put any concerns you may have in approving my request to rest. I respect your efforts to keep me, my coworkers, and my patients safe during this pandemic. I partner with you in this regard. However, I must not lose myself and my faith in this end. In lieu of vaccination, I will honor all reasonable accommodations including but not limited to masking and shielding, appropriate social distancing, self-symptom monitoring and regular testing. All these measures work together to meet the same goal as detailed above.


Sincerely,

Kristen Barnett


JA52

```
1                UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
2                    ALEXANDRIA DIVISION

3                              :   Civil Action
     LEANNE M. STYNCHULA,      :   No. 1:23-cv-1629-MSN-LRV
4    KRISTEN M. BARNETT,       :   No. 1:23-cv-1638-MSN-WEF
     ADAM NETKO,               :   No. 1:23-cv-1630-MSN-WEF
5    TIGIST BIRKE,             :   No. 1:23-cv-1643-MSN-LRV
     LORRAINE BIONDI AUSTIN,   :   No. 1:23-cv-1698-MSN-JFA
6                              :
                Plaintiffs,    :
7                              :
           v.                  :
8                              :   March 7, 2024
     INOVA HEALTH CARE SERVICES, : 11:18 a.m. to 1:47 p.m.
9                              :
                               :
10              Defendant.     :
                               :
11   ...........................:

12                             :   Civil Action
     KELLY M. HOFFMAN,         :   No. 1:23-cv-1696-MSN-IDD
13                             :
                Plaintiff,     :
14                             :
           v.                  :
15                             :   March 7, 2024
     INOVA HEALTH CARE SERVICES, : 11:18 a.m. to 1:47 p.m.
16   NORTH AMERICAN PARTNERS IN :
     ANESTHESIA (VIRGINIA) LLC, :
17                             :
                               :
18              Defendants.    :
                               :
19   ...........................:

20              TRANSCRIPT OF MOTIONS HEARING
         BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
21              UNITED STATES DISTRICT JUDGE

22   APPEARANCES:

23   For the Plaintiffs:   BOSSON LEGAL GROUP, PC
                           Timothy Paul Bosson, Esquire
24                         823 South King Street
                           Suite Unit C
25   (Continued)          Leesburg, VA 20175
```

```
 1    (Continued)

 2    For the Plaintiffs:        Isaiah Kalinowski, Esquire
                                 Arie Jones, Esquire
 3                               8300 Arlington Boulevard
                                 Suite B2
 4                               Fairfax, VA 22031

 5    For Defendant INOVA        LITTLER MENDELSON, PC (DC)
      Health Care Services:      Nancy North Delogu, Esquire
 6                               815 Connecticut Ave NW
                                 Suite 400
 7                               Washington, DC 20006

 8                               Alexander Paul Berg, Esquire
                                 Lauren Marie Bridenbaugh, Esquire
 9                               1800 Tysons Boulevard
                                 Suite 500
10                               Tysons Corner, VA 22102

11    For Defendant North        OGLETREE DEAKINS NASH SMOAK &
      American Partners in       STEWART, PC (Richmond)
12    Anesthesia (Virginia)      Scott Andrew Siegner, Esquire
      LLC:                       Riverfront Plaza - West Tower
13                               901 East Byrd Street
                                 Suite 1300
14                               Richmond, VA 23219

15    Court Reporter:            Diane Salters, B.S., CSR, RPR, RCR
                                 Official Court Reporter
16                               United States District Court
                                 401 Courthouse Square
17                               Alexandria, VA 22314
                                 Email: Dianesalters.edva@gmail.com
18                               Telephone: (301) 338-8033

19

20

21

22

23

24
      Proceedings reported by machine shorthand.  Transcript produced
25    by computer-aided transcription.
```

1          THE COURTROOM DEPUTY:  *Stynchula v. INOVA*, Case

2    Number 23-cv-1629; Barnett v. INOVA, Case Number 23-cv-1638;

3    Netko v. INOVA, Case Number 23-cv-1630; Birke v. INOVA, Case

4    Number 23-cv-1643; Hoffman v. INOVA, Case Number 23-cv-1696;

5    and Biondi v. INOVA, Case Number 23-cv-1698.  Will the parties

6    please note their appearances for the record?

7          MR. BOSSON:  Good morning, Your Honor.  I'm Tim Bosson

8    for the plaintiffs.

9          MR. JONES:  My name is Arie Jones.

10          MR. KALINOWSKI:  Isaiah Kalinowski for the plaintiffs.

11          THE COURT:  Good morning to you all.

12          MR. BOSSON:  Your Honor, would you like us to identify

13    which -- we're prepared to argue the different cases.  We split

14    them up.  Would you like us to identify that now or --

15          THE COURT:  We can talk about that in a minute, but

16    each of you have taken different plaintiffs?

17          MR. BOSSON:  Yes, Your Honor.

18          THE COURT:  Well, we'll see how that goes.  I've got

19    some other ideas, but I will hear any proposals you might have.

20          MS. DELOGU:  Good morning, Your Honor.  I'm Nancy

21    Delogu for the defendant INOVA.  With me are my colleagues

22    Lauren Bridenbaugh and Alex Berg.

23          THE COURT:  Good morning.

24          MR. BERG:  Good morning.

25          THE COURT:  Good morning.

1    MR. SIEGNER:  Good morning, Your Honor.  Scott Siegner

2    on behalf of the codefendant in the Hoffman matter only, North

3    American Anesthesia -- American Partners in Anesthesia, NAPA,

4    Your Honor.

5    THE COURT:  Good morning to you.

6    MR. SIEGNER:  Good morning.

7    THE COURT:  These matters come before the Court on

8    Defendants' motions to dismiss, and these cases are not

9    consolidated, but they certainly share some similar legal

10   issues and some similar factual issues.  I would like to hear

11   this argument in a way that is most efficient, but I absolutely

12   want to make sure that to the extent there are unique facts or

13   legal issues that relate to a particular plaintiff, that nobody

14   is shortchanged.  Certainly, the briefs -- the voluminous

15   briefs -- have put those arguments before the Court, and the

16   Court has considered them individually.  So I want to be clear

17   that we're doing this for the sake of judicial economy and

18   efficiency to hear this now.  And, of course, the plaintiffs

19   are all represented by the same law firm, and INOVA is the

20   defendant in all six cases and is represented by the same law

21   firm.  With regard to Ms. Hoffman, there's an additional

22   defendant, and we'll make sure that NAPA is heard separately on

23   their issues.

24   Before we begin or discuss who will argue or what

25   order we do this in, let me just make sure what we're talking

1    about here.  With regard to the failure to accommodate, what is

2    Count I in all of the lawsuits, let me make sure, from the

3    defense perspective, that I am correct that you are not seeking

4    dismissal with regard to the issue of the religious objection

5    based on the fetal cell or abortion-related claims.  That is

6    made clear in at least one of the cases, but I want to make

7    sure that I'm understanding the scope of the motion to dismiss

8    with regard to that limited issue.

9         MS. DELOGU:  Yes, Your Honor.  Thank you.

10         So with respect to Mr. Netko, I believe that is the

11    case that we stated that we were not making that argument.

12    With respect to the others, for the most part, we have argued

13    that those claims should be dismissed because at the time of

14    the alleged adverse action, the Novavax vaccine was available

15    to them, approved by INOVA either through INOVA's Immunization

16    Program Policy, which was for the employees, or through its

17    medical staff immunization policy, which was for the contract

18    workers.

19         THE COURT:  I understand with that clarification.

20         Let me also clarify, then, with regard to the issue of

21    exhaustion, there were arguments made, but then, I believe,

22    abandoned in light of the oppositions filed.  And, again, none

23    of this is to the detriment of any party to raise an argument

24    on summary judgment, but with regard to the exhaustion, I don't

25    want to waste time talking about it if it's not being pursued

1    with regard to, as I understand it, the first four plaintiffs

2    because there are separate issues with regard to Ms. Hoffman

3    and Ms. Biondi Austin regarding exhaustion.  But am I correct

4    that the defendant with regard to Stynchula, Netko, Barnett,

5    and Birke are not making an exhaustion argument at this time.

6          MS. DELOGU:  I believe that is correct, Your Honor.

7    Ms. Hoffman, as you noted, has some different issues, and also

8    there's an exhaustion argument still absent with respect to her

9    state law disability claim.  But with respect to the others, we

10   agree -- we're not quite sure why, but INOVA was not provided

11   with some of the information that the plaintiffs were able to

12   obtain from the agency showing that at least there's some

13   disputes as to, you know, what their clients told the agency

14   and what the agency did with it and whether INOVA had that.  So

15   we agree that that's something that, if these matters move

16   forward, we would want to delve into further, and are not

17   asking the Court to dismiss them on that basis at this time.

18         THE COURT:  I'm just trying to get issues out there so

19   that we focus on what's in dispute and don't waste time on

20   things that are not in dispute.

21         Let me clarify with regard to the plaintiff

22   Ms. Barnett.  Can you confirm that with regard to Ms. Barnett,

23   there is no abortion-related or fetal cell-related objection

24   that is part of the complaint; is that correct?

25         MR. KALINOWSKI:  That's correct, Your Honor.

1           THE COURT:  Thank you.

2           In that case, I think we're ready to delve into the

3      argument.  And I have read these matters.  I'm familiar with

4      the issues.  I'm familiar with them with regard to each

5      separate plaintiff, so you should not feel like you need to go

6      back over the basic facts or even your arguments.  You should

7      focus only on what you think is essential to resolve the matter

8      at this time.

9           So let me first hear from INOVA.  And I'm inclined to

10     hear all of your arguments with regard to the first four

11     plaintiffs, which would be Stynchula, Netko, Barnett, and

12     Birke.  I feel like Hoffman and Biondi Austin are a slightly

13     different category because we have the argument about who the

14     employer is, the joint employer issue, and we can deal with

15     that, I think, second.  So I'll hear from you first.

16           MS. DELOGU:  So, Your Honor, thank you.  And I would

17     just like to add we tried to do some coordinating with the

18     plaintiffs in terms of the arguing -- sort of two things.  One

19     was we think that the arguments with respect to religious

20     discrimination, disparate treatment, which is Counts II and III

21     in most of the complaints -- not the religious failure to

22     accommodate, but the disparate treatment -- are essentially the

23     same arguments across the board, and so my suggestion would be

24     I can address that issue generally now and, perhaps, the Bosson

25     Group can then respond to that, and then if the Court is

1          THE COURT:  I've had an opportunity to reflect on the

2     oral argument, and as I said at the outset, we've carefully

3     read the pleadings in this case and thought about this matter.

4     And as the parties are aware, the Court is familiar with the

5     issues and previously issued an opinion in the matter of

6     *Ellison*, which both sides have cited to here this morning and

7     this afternoon.

8          I think that it is appropriate and beneficial to rule

9     from the bench at this time.  We're in the Eastern District of

10    Virginia.  This matter needs to move forward.  It is better for

11    you to have the answer now than to take the matter under

12    advisement, and the Court is prepared to rule, having heard

13    argument and reviewed the pleadings.  And, accordingly, the

14    Court will rule as follows.  Listen carefully.  It's

15    complicated.  There are six individual cases, and they've been

16    considered individually, but I'm going to rule on them

17    collectively here so that you can keep track of them.

18          With regard to Plaintiffs Stynchula, Netko, and Birke,

19    the motion will be granted in part and denied in part.  The

20    Court finds that with regard to Count I, the failure to

21    accommodate, that those claims must be dismissed with the

22    exception of the claims as they relate to fetal cell or the

23    abortion objections, and so those apply with regard to the

24    exemption sought by Plaintiffs Stynchula, Netko, and Birke.

25    They otherwise must be dismissed, however, for the same reasons

1    that were articulated in *Ellison*.  And whether the terms "body

2    is a temple" or "self-determinism" or the various other

3    language that's used by the individual plaintiffs is taken into

4    account, they all run into the same challenge, which is that

5    they would amount to a blanket privilege and that if permitted

6    to go forward would undermine our system of ordered liberty for

7    the reasons that have been set out in the *Ellison* case and that

8    apply with equal force here.  And so, as such, these claims

9    cannot survive a motion to dismiss and are, accordingly,

10   dismissed, with the exception as I have carved out with regard

11   to the fetal cell or abortion issue.

12          With regard to Plaintiff Barnett, her claim under

13   Count I must also be dismissed, but there is no surviving part

14   of that claim because she did not raise abortion or fetal cells

15   as a basis for her objection, and I believe counsel conceded

16   that at oral argument, and our review of the complaint reflects

17   that as well, and so Count I will be dismissed in its entirety

18   as to Plaintiff Barnett.

19          With regards to Counts II and III, they must also be

20   dismissed as to all four plaintiffs -- Stynchula, Netko, Birke,

21   and Barnett.  There really is no argument that the disparate

22   treatment claim and the VHRA claim are coextensive or rely on

23   the same facts that are alleged with regard to Count I.  There

24   are no new or additional facts alleged.  They are, therefore,

25   duplicative.  They also fail, as a matter of pleading, to

1    address a comparator or comparators that can survive *Twombly*

2    and *Iqbal*; and, accordingly, those claims will be dismissed.

3    So, in sum, with regard to the four plaintiffs I've just

4    listed, the case is dismissed entirely with regard to

5    Plaintiff Barnett and dismissed with everything with the

6    exception of Count I as to the fetal tissue or abortion claims

7    on the failure to accommodate with regard to Stynchula, Netko,

8    and Birke.

9          With regard to Hoffman and Biondi Austin, these must

10    be addressed separately.

11          With regard to Plaintiff Hoffman, she is the one

12    plaintiff who sued NAPA in addition to INOVA.  The Court finds

13    that with regard to NAPA, the case must be dismissed for

14    failure to exhaust.  The record is clear that NAPA is not named

15    in the EEOC charge.  It is also equally clear that a private

16    post-charge letter is insufficient.  There was no formal

17    amendment of the EEOC claim, and that the case law, including

18    *Shannon v. City of Richmond* and *Sloop*, reflects that a letter

19    sent privately to the EEOC, of course, does not give notice to

20    the potential defendant, and, therefore, the charge was not

21    properly made, and so the case is dismissed with regard to

22    NAPA.  I also find that the case of *Moore v. Copper River* from

23    Fairfax is not persuasive and is in conflict with the weight of

24    authority and, therefore, exhaustion is required for the VHRA

25    claim as well.  And so the case is dismissed in its entirety

1      <u>CERTIFICATE OF REPORTER</u>

2          I, Diane Salters, hereby certify that the foregoing

3   transcript is a true and accurate record of the stenographic

4   proceedings in this matter.

5

6                              /s/ Diane Salters

7                              _____

8                              Diane Salters, CSR, RCR, RPR
                               Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MICHAEL ELLISON, *et al.*,
                    *Plaintiffs*,

v.                                    No. 1:23-cv-00132 (MSN/LRV)

INOVA HEALTH CARE SERVICES, *et al.*,
                    *Defendants.*

## AMENDED MEMORANDUM OPINION[1]

This matter comes before the Court on Defendants' Motion to Dismiss or, in the alternative, Motion to Strike Class Claims (Dkt. No. 37). For the reasons stated below, that motion will be granted in part and denied in part.

## I.    BACKGROUND

Stemming from the COVID-19 pandemic, this case involves a hospital's efforts to respond to the rapidly changing circumstances of this public health crisis and how those efforts allegedly impacted its employees' exercise of their religious beliefs.

### A.  Factual Background

In July 2021, Defendant Inova Health announced that it would require all hospital employees to receive the COVID-19 vaccine. Dkt. No. 23 ¶ 24 ("Am. Compl."). However, that mandate was not absolute: employees unable to be vaccinated for medical reasons or unwilling to be vaccinated for religious reasons could request either a permanent or temporary exemption from the otherwise mandatory policy. *Id.* ¶ 26. And, by and large, when an employee requested an exemption, it was granted within a few days. *Id.* ¶ 29.

---

[1] The order docketed at ECF No. 48 remains unchanged.

1

**JA64**

But, in November 2021 (and in response to continuing pandemic-related concerns), the United States Centers for Medicare and Medicaid ("CMS") issued a mandate requiring all medical care providers and their employees to be vaccinated. Dkt. No. 38 at 3–4. The CMS mandate also outlined procedures for how covered healthcare providers were to evaluate exemption requests—procedures that were far more robust than the ones Inova implemented during the initial phases of its vaccination policy. *Id.* at 4. Inova was therefore required to update its policy, meaning that previously granted exemption requests needed to be re-evaluated. *Id.*

In February 2022, Inova announced that any employee who had previously been granted an exemption from the vaccine policy needed to reapply so that their request could be evaluated in light of the new policy. *Id.* at 4–5. Inova admitted that it was "going back on its word" but explained that it was obligated to do so under the CMS mandate, which required exemption requests to be scrutinized more closely. *Id.*; Am. Compl. ¶ 37.

After the implementation of the new policy, Plaintiffs Michael Ellison, Arin Jenkins, and Andrea Graham all reapplied for religious exemptions, asserting that various tenets of their Christian faith prevented them from receiving the vaccine. Am. Compl. at 13–14, 17–18, 22–23. Specifically, Ellison (a data-analyst) claimed that he could not receive the vaccine because he was required to treat his body as a temple of the Holy Spirit and was not to ingest anything that could potentially harm it. *Id.* ¶ 81. Ellison also holds a religious objection to abortion and, by extension, objected to the COVID-19 vaccines because they were developed using fetal cell lines. *Id.* ¶ 83. Next, Jenkins (a staff nurse) also stated that his faith required that he treat his body as a temple of God and that, as a result, he could take the vaccine only if, after prayer, he received approval from God. *Id.* ¶¶ 148, 152. Finally, after originally requesting a medical exemption based on her intention to become pregnant, Graham (an emergency room nurse) also asserted that her body was

a temple, that her healthcare decisions were guided by prayer, and that she had not received authorization from God to take the vaccine. *Id.* ¶¶ 116, 119, 121. Graham also claimed that she was unable to comply with the policy because she had a religious objection to the use of fetal cell lines in the development of the vaccine. *Id.* ¶ 117. Each of the Plaintiffs' requests were denied. *Id.* ¶¶ 95, 128, 165.

### B. Procedural History

Between March 2022 and December 2022, each of the Plaintiffs either resigned or were terminated for failure to comply with the hospital-wide vaccination policy. Am. Compl. ¶¶ 100, 134, 169. Each also filed their charges with the EEOC. *Id.* ¶¶ 101, 135, 171. And each received a right-to-sue letter. *Id.* ¶¶ 103, 137, 172.[2]

Then, in January 2023, Plaintiffs filed a class-action complaint (Dkt. No. 1), which was later amended on April 4, 2023. *See generally* Dkt. No. 23 (Amended Complaint). That operative Complaint divides the claims between two proposed classes, the "Religious Discrimination Class" and the "Permanent Exemption Class." Am. Compl. ¶ 179.

The Religious Discrimination Class—represented by all Plaintiffs—alleges that Inova violated both Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act ("VHRA") by, among other things, firing employees or refusing to hire applicants based on their religious exercise. *See id.* ¶¶ 201–56.

The Permanent Exemption Class—represented by Ellison and Jenkins—alleges that Inova created a binding contract when it granted "permanent" exemptions to induce each class member to continue working at Inova. *See id.* ¶¶ 257–64. In the alternative, the Permanent Exemption Class

---

[2] There is a dispute about Graham's exhaustion of her claims concerning the termination of her employment. *See* Dkt. No. 38 at 11. However—because exhaustion is not a jurisdictional bar under Title VII, *see* *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), and because, for the reasons below, the Court will dismiss those claims on their merits—the Court need not address Defendants' exhaustion arguments.

argues that Inova's promise of permanent exemptions is nonetheless enforceable because the promise created a quasi-contract that blocks the hospital's attempt to change course. *Id.* ¶ 262.

On April 18, 2023, Inova filed a motion to dismiss Plaintiffs' claims or strike the class allegations. *See* Dkt. No. 37. Plaintiffs responded on May 2. Dkt. No. 40. Inova replied. Dkt. No. 41. The Court held oral argument on May 26. Dkt. No. 43. And today, the Court will grant Defendant's motion in part and deny it in part.

## II.   LEGAL STANDARDS

***Motion to Dismiss.*** The Federal Rules of Civil Procedure provide that a court may dismiss a complaint when the plaintiff has failed to state a claim for which the court may grant relief. Fed. R. Civ. P. 12(b)(6). Thus, to state a viable claim, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face" and "nudge [the] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). A plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Instead, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff's failure to allege an essential element of their claim warrants dismissal. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

***Motion to Strike.*** A court may strike class allegations from a pleading. *See* Fed. R. Civ. P. 12(f)(2), 23(d)(1)(D). A court should do so before discovery only "if the allegations are facially and inherently deficient." *Knapp v. Zoetis Inc.*, No. 3:20-cv-191, 2021 WL 1225970, at *10 (E.D. Va. March 31, 2021).

## JA67

## III.    DISCUSSION

### A.  Plaintiffs' Religious-Discrimination Claims

#### 1.   Title VII

Plaintiffs' principal argument is that Defendants, by rejecting requests for religious exemptions from the vaccine requirement, violated Title VII's requirement that an employee's religious beliefs be accommodated.  Am. Compl. ¶¶ 201–28. With one exception, the Court disagrees.

Title VII makes it unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion." 42 U. S. C. §2000e-2(a)(1) (1964 ed.). And although, as originally enacted, the statute did not spell out what it meant by discrimination "because of . . . religion," the EEOC has interpreted that provision to mean that employers were obligated "to make reasonable accommodations to the religious needs of employees" whenever that would not work an "undue hardship on the conduct of the employer's business." *See Groff v. DeJoy*, 600 U.S. ___ (2023) (slip. op., at 4–5) (citing 29 CFR § 1605.1).[3] Thus, to make out a plausible failure-to-accommodate claim under Title VII, a plaintiff must plead, and ultimately show, that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the

---

[3] On June 30, 2023, Plaintiffs submitted a Notice of Supplemental Authority, bringing *Groff* to the Court's attention. *See* Dkt. No. 46. While the Court  recognizes that the case represents the Supreme Court's most recent decision on the issue of Title VII religious discrimination, the Court concludes that *Groff* does not have any bearing on the resolution of the instant motion. That decision, however, may become relevant at the summary judgment stage, when the Court will evaluate whether accommodating Ellison's request would have placed an undue burden on Defendants. *See generally Groff*, 600 U.S. ___ (slip op.) (evaluating the "undue burden" standard that is triggered only after a plaintiff makes a *prima facie* showing of discrimination).

conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (citations omitted); *see also EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (same) ("*Firestone Fibers*").[4]

The issue before the Court is whether Plaintiffs have adequately pleaded their *prima facie* case. Defendants move to dismiss Plaintiffs' claims on the ground that Plaintiffs have not alleged the first element—that they hold a religious belief that conflicts with the vaccination requirement. Specifically, Defendants contend that Plaintiffs have failed to show that their objections to the vaccine requirement are based on a "sincerely held" religious belief or practice. *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 142–43 (4th Cir. 2017).

As Defendants point out, Title VII does not protect just any belief. To be protected, an employee's belief must be religious in nature. *McManus v. Bass*, No. 2:05-cv-117, 2006 WL 753017, at *4 (E.D. Va. Mar. 21, 2006) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972) ("*Yoder*"); *see also Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015) (noting, in the First Amendment context, that a "request for an accommodation must be sincerely based on a religious belief and not some other motivation"). Of course, courts are in no position to "question the centrality of particular beliefs or practices of faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). Indeed, the determination of whether a plaintiff's beliefs are religious must not turn upon a judicial perception of the belief or practice in question. *See Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981); *see also United States v. Seeger*, 380 U.S. 163, 185 (noting that courts are not free to reject beliefs because

---

[4] The second and third prongs of this test are not at issue in this case. There is no dispute that Plaintiffs brought their objections to the vaccination requirement to the hospital's attention by submitting exemption requests. It is undisputed that Plaintiffs faced adverse employment action because of their decisions to remain out-of-compliance with the policy after their exemption requests were denied. The Court's analysis will focus only on the first question: whether Plaintiffs had a bona fide religious belief that conflicted with Inova's vaccination requirement.

they consider them "incomprehensible"). The Court must therefore determine whether the Plaintiffs' purported beliefs are both (1) "sincerely held" and (2) "religious" in nature. *Welsch v. United States*, 398 U.S. 333, 339 (1970).

### i.   Sincerity

To start, the Court finds that each Plaintiffs' beliefs are sincerely held as there is no evidence introduced at this stage of the proceedings that suggests that the beliefs have been concocted for litigation or are otherwise disingenuous.[5] For that reason, the Court will direct its focus to the question of religiosity.

### ii.   Religiosity

However, the Court will nonetheless reject all but one of Plaintiffs' claims as it finds that they are not rooted in concerns that are religious in nature.

Whether one's beliefs and practices are religiously motivated is of course a difficult question for courts of law to decide. *Doswell v. Smith*, 139 F.3d 888 (4th Cir. 1998). For that reason, courts must be sure to avoid any "predisposition toward conventional religions" as to ensure that unfamiliar or unconventional beliefs are not incorrectly labeled as "secular." *Id.* (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981)). Still, "the very concept of ordered liberty precludes allowing every person to make his [or her] own standards on matters of conduct in which society as a whole has important interests." *Yoder*, 406 U.S. at 215–16. Indeed, "[a] system of religious beliefs, however, is distinct from a way of life, even if that way of life is inspired by philosophical beliefs or other secular concerns." *Versatile v. Johnson*, No. 3:09-cv-

---

[5] In their papers, Defendants point out that, when the vaccine requirement was first implemented, Graham requested a temporary *medical* exemption based on her intention to get pregnant in the immediate future. *See* Am Compl. ¶ 119. In their view, that alone is reason to doubt the sincerity of her present assertion that she objects to the hospital's policy on religious grounds. *See* Dkt. No. 38 at 16–17. However—considering both the procedural posture of this case and its rejection of Graham's claims under the "religiosity" prong—the Court will take Graham at her word.

120, 2011 WL 5119259, at *4 (E.D. Va. Oct. 27, 2011) (internal quotation omitted). Thus, in determining whether an employee's beliefs are religious in nature, courts have analyzed whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Africa*, 662 F.2d at 1032.[6] It is also worth noting that the religiosity inquiry is a necessarily individualized one. *Cf.* EEOC Compliance Manual at § (a)(1) (explaining that deciding whether a belief or practice is religious requires a "case-by-case inquiry"); *see also Dachman v. Shalala*, 9 F. App'x 186, 191-93 (4th Cir. 2003) (holding that an employee was required to accommodate a plaintiff who requested time off to observe the sabbath but noting that the same would not be true if the plaintiff's request was spurred by secular obligations like household chores). Therefore, the Court will separately evaluate the claims raised by each of the three Plaintiffs.

### a.  Body-as-a-Temple Claims

*Ellison.* In Ellison's request for exception, he claims that, as a Christian, he has a right to refuse the vaccine. Specifically, he claims that the Bible requires Christians to treat their bodies as "temple[s] of the Holy Spirit," meaning that he is "compel[led]" to care for his mind and body. Dkt. No. 40-3 at 3.[7] And because, in his view, taking the COVID-19 vaccine would "introduce to

---

[6] *Africa* is a non-binding decision from the Third Circuit. However, although the Fourth Circuit has not formally adopted the standard, both this Court and the appellate court have cited *Africa* with approval when describing the "useful indicia" for evaluating whether beliefs are religious rather than secular. *See, e.g.*, *Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986); *Versatile v. Johnson*, No. 3:09-cv-120, 2011 WL 5119259, at *5 (E.D. Va. Oct. 27, 2011), *aff'd*, 474 F. App'x 385 (4th Cir. 2012). The Court also notes that neither party objects to the use of the standard laid out in *Africa*. *See* Dkt. No. 44 at 18:11–15 (Defendants agreeing that *Africa* sets out the appropriate test at oral argument); *id.* at 53:13–15 (Plaintiffs acquiescing).

[7] Generally, at the motion to dismiss stage, court are limited to considering only the allegations contained in the plaintiff's complaint. However, because the Amended Complaint expressly refers (and thus incorporates) to Plaintiffs' exemption requests, the Court is free to consider them at this stage. *See A.C. v. Henrico Cnty. Sch. Bd.*, 610 F. Supp. 3d 857, 860 (E.D. Va. 2022) (noting that courts may consider documents that are either explicitly incorporated into the complaint by reference or those attached to the complaint as exhibits).

[his] body a medication that could induce harm," he claims that complying with the hospital's policy would be "antithetical to [his] desire to honor God." *Id.* Notably, Ellison supports his claim through references to his "personal analyses" of CDC and FDA databases that he believes prove that "there is a 28 times more likely chance of adverse reactions from the COVID-19 vaccines in the last 15 months, than from any of the other 50+ vaccinations." *Id.* Ellison also provided "supplemental information" four months after submitting his initial request to be exempted from the new policy. Dkt. No. 40-4 at 2.[8] In his renewed request Ellison first re-asserted the argument about his body being a temple and the need to keep it "protected and undefiled." *Id.* at 3. He also stated (for the first time) that he prayed about the vaccine and that "the answer that [God] revealed was that [he] must protect [his] temple from the vaccine and refuse it." *Id.*

Based on Ellison's own stated reason, the Court finds that, though couched in religious terms, Ellison refused the vaccines based on concerns of vaccine safety. District courts have routinely rejected similar claims. *See, e.g.*, *Passarella v. Aspirus, Inc.*, Nos. 22-cv-287, 22-cv-342, 22-cv-392, 2023 WL 2455681, at *2-7 (W.D. Wis. Mar. 10, 2023) (finding that exemption requests "predicated fundamentally on [] concerns with the safety of the vaccine and [plaintiffs'] right to bodily integrity"—even if based on the "belief that [plaintiff's] body is a temple" and "ratified by prayer"—are fundamentally "medical judgments . . . , not matters of religious belief").

Accordingly, Ellison's body-as-a-temple claims will therefore be dismissed.

***Jenkins.*** Jenkins also claims that the Christian Bible requires him to treat his body as a "temple of the Holy Spirit." Dkt. No. 40-2 at 2. In his words, Jenkins believes that "it is a God-given responsibility and requirement for [him] to protect the physical integrity of his Body." *Id.*

---

[8] Ellison claims that felt compelled to submit a new letter after concluding that the medical and scientific concerns in his earlier request "may have overshadowed [his] primary religious convictions." Dkt. No. 40-4 at 2.

And he further explained that he does so by "pray[ing] over every decision [he] make[s] concerning his body or [his] health" Dkt. No. 40-2 at 2.

That statement fails to establish a sincere religious objection under the *Africa* standard laid out above. Jenkins's belief that if, after his prayer, "God answers and interdicts [his] participation" (*id.*), amounts to the type of "blanket privilege" that undermines our system of ordered liberty. *Africa*, 663 F.2d at 1031. Certainly, if taken to its logical extreme, Jenkins's claim would serve as a "limitless excuse for avoiding all  . . . obligations." *See Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Penn. 2022) (applying *Africa* and rejecting religious-discrimination claims concerning COVID-19 requirements because holding otherwise would "count everything [the plaintiff] believes about healthy living as religious practice").

Accordingly, Jenkins's body-as-a-temple claims will therefore be dismissed.

***Graham.*** Like Jenkins, Graham claims that "her faith requires her to refuse any particular form of medical treatment . . . unless and until she has sought and received God's permission to accept it, through prayer." Am. Compl. ¶ 110.[9] However, like Jenkins's, that would confer the same sort of blanket privilege that courts must reject. *See Finkbeiner*, 623 F. Supp. 3d at 465.

Accordingly, for the reasons discussed above, Graham's claims will also be dismissed.

### b.  Abortion-Based Claims

***Ellison.*** Ellison's supplemental letter also included a paragraph concerning the use of "aborted fetal cell lines" in the development and testing of some of the vaccines. Dkt. 40-4 at 2. In that letter, he stated that he had a "sincerely held religious belief in the sanctity of human life" and

---

[9] Graham's exemption request is not a part of the record. For that reason, the Court will evaluate the reasons given solely in the Amended Complaint.

that—because he "sincerely believe[d] that the use of these bodily remains renders these vaccines unclean,"—he could not comply with the policy for that reason. *Id.*[10]

With respect to this claim, the Court finds that Ellison has adequately linked his objection to a sincerely held religious belief. In his request, he refers to verses in the Christian Bible that, in his view, support the notion that "life begins at conception," and he goes on to explain that, because "every life is sacred," "[a]ny action that would . . . generate a future demand for fetal cell tissue, violates the core religious beliefs that [he] hold[s] dear." *Id.* Ellison continues that he believes his faith did not allow him to "benefit from a human being whose life was taken by the hands of another," and thus, in his view, receiving the vaccine would amount to sin. *Id.* Based on these statements, Ellison's exemption request provides sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of his objection to the COVID-19 vaccination.

For that reason, that claim is adequate to survive a motion to dismiss. *See Aliano v. Twp. of Maplewood*, No. 22-cv-5598, 2023 WL 4398493, at *7 (D.N.J. July 7, 2023) (denying a motion to dismiss when the plaintiff identified the textual source of the anti-abortion belief and explained how their understanding of the verse led them to conclude that receiving the COVID-19 vaccine conflicted with their faith).[11]

---

[10] In support of this contention, Ellison cites Romans 14:14 of the Christian Bible which states that: "I know, and am persuaded by the Lord Jesus, that there is nothing unclean of itself: but to him that esteemeth anything to be unclean, to him is unclean."

[11] The Court notes the similarity between abortion-based objections to the contents of the most accessible COVID-19 vaccines and other faith-based objections to other vaccines or other medicines that contain ingredients derived from pork, beef, or other animal products. *See* Tara M. Hoesli, et al., *Effects of Religious and Personal Beliefs on Medication Regimen Design*, 34 Orthopedics 292, 292 (2011) (noting that "[m]ore than 1000 medications contain inactive ingredients derived from pork or beef, the consumption of which is prohibited by several religions"). For that reason, courts faced with those questions have held that faith-based objections to medications based on their ingredients are a proper basis for Title VII relief. *See, e.g.*, *Haley v. Cmty. Hosp.*, No. 2:21-cv-141, 2023 WL 403722, at *6 (N.D. Ind. Jan. 25, 2023) (finding that a plaintiff stated a *prima facie* case for religious discrimination when he refused to take

*Graham.* Graham also claims that her religious aversion to abortion prevents her from getting the COVID-19 vaccine. Am. Compl. ¶ 117. However, except for a single conclusory statement, Plaintiff has not shown how that aversion is based on Graham's religious beliefs. As explained above, plaintiffs must provide more than conclusory allegations that a belief is religious; they must allege facts explaining how a subjective belief is religious in nature and connect their objection to that belief.

Graham has not done so. The only information before the Court concerning her abortion-based objection to the vaccine is found in a single numbered paragraph of the Plaintiffs' Amended Complaint. *See* Am. Compl. ¶ 117 ("Ms. Graham also has religious objections to abortion, and to receiving vaccines that were testing [sic] or produced using materials derived from abortion."). That conclusory statement fails to provide a sufficient connection between Graham's objection to the COVID-19 vaccines—that they were "tested or developed using cell lines derived from aborted fetuses," *id.* ¶ 118—and her subjective religious beliefs. Graham did not provide any additional information regarding the nature of *her* Christian beliefs, including how receiving the COVID-19 vaccine would violate those beliefs. Again, before treating a belief as "religious," the Court must assess whether Graham's belief is based on her "own scheme of things"—regardless of what is widely accepted in her stated religion. *See Ambrose v. Gabay Ent & Assocs., P.C.*, No. 12-cv-

---

the influenza vaccine due to concerns that it contained pork products or other unclean ingredients that conflicted with his religious beliefs).

That said, the Court also notes that—just as non-porcine and non-bovine alternatives are being made available to avoid the problems with religious-based objections to pork and beef—COVID-19 vaccines that were not developed using fetal cell lines have been available for more than a year. *See* U.S. Food and Drug Administration, FDA Authorizes Emergency Use of Novavax COVID-19 Vaccine, located at: *https://tinyurl.com/yu85kdmk* (July 13, 2022). However—although an employer would need only widen its list of accepted vaccinations to include the non-objectionable vaccines in order to accommodate an employee's abortion-based aversion to the COVID-19 vaccine today—Defendants' policy in this case required that hospital employees receive a vaccine manufactured by Pfizer, Moderna, or Johnson & Johnson. Am. Compl. ¶ 25. For that reason, the Court concludes, at this stage in the proceedings, that Ellison has adequately alleged the policy at issue conflicted with his sincerely held religious beliefs.

5453, 2013 WL 4195387, at *3–5 (E.D. Pa. Aug. 15, 2013). It is Graham's *subjective* religious belief that is protected; and, for that reason, she must provide information concerning the religious nature of that belief and how it is connected to her objection to the COVID-19 vaccine. *See Blackwell v. Lehigh Valley Health Network*, No. 22-cv-03360, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) (dismissing a plaintiff's claims because the plaintiff "fail[ed] to plead any additional information about the religious nature of her beliefs" beyond identifying an organized religion she belonged to and claiming her objection arose from that organized religion).

Because Graham has failed to do so, her abortion-based claim will be dismissed. *See Aliano*, 2023 WL 4398493, at *10 (granting a motion to dismiss when a plaintiff alleged only that the vaccine contained fetal cell lines, that the plaintiff was a Roman Catholic, that abortion conflicted with Roman Catholic teachings, and that the COVID-19 vaccine therefore conflicted with their religious beliefs).

### 2. Virginia Human Rights Act

Plaintiffs also bring claims under the VHRA, claiming that Defendants violated the statute by not accommodating Plaintiffs' religious beliefs. Am. Compl. ¶¶ 229–56. However, as explained below, that statute does not require employers to provide such accommodations.

Unlike Title VII—which expressly allows plaintiffs to bring failure-to-accommodate claims against their employer—the VHRA does not contain any such language. *Compare* Va. Code § 2.2-3901(E) (VHRA's definition of religious discrimination); *with* 42 U.S.C. § 2000e(j) (Title VII's definition of religious discrimination); *see also* Dkt. No. 40 at 13 (Plaintiffs conceding that "the VHRA's definition of religion does not include the words 'reasonable accommodation'"). Instead, the statute prohibits employers only from taking adverse action against an employee based on their "outward expression of their religious faith." *See* Va. Code § 2.2-3901(E).

13

**JA76**

Despite the law's silence on the issue, Plaintiffs contend that this prohibition necessarily requires employers to accommodate religious exercise. Dkt. No. 40 at 12. However, reading such a requirement into the statute would run counter to the traditional methods of statutory construction. *Cf. Bates v. United States*, 522 U.S. 23, 29 (1997) (noting that courts should "resist reading words or elements into a statute that do not appear on its face"). Moreover, in addition to noting what the Virginia General Assembly did not say, the Court acknowledges what it did. Before amending the section pertaining to religious discrimination (in 2022), the state legislature added language that unambiguously gave pregnant employees (in 2020) and disabled employees (in 2021) the right to bring failure-to-accommodate claims against their employers. *See* Va. Code § 2.2-3909 (pregnancy); Va. Code § 2.2-3905.1 (disability).   And—as the Fourth Circuit has explained—"where [the legislature] includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that [the legislature] acts intentionally and purposefully in the disparate inclusion or exclusion." *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)). With that guidance, the Court is not free to adopt Plaintiffs' construction of the law at issue. Not only is the burden to accommodate Plaintiffs' religious beliefs not apparent on the face of the statute, but Virginia's legislature has made the deliberate decision not to create such a requirement—despite having done so in other sections of the same statute.

Therefore, Plaintiffs' VHRA claims will be dismissed.[12]

---

[12] This decision is also consistent with those of other federal district courts that have faced similar claims brought under similar anti-discrimination laws:

As discussed in the parties' briefing and at the May 26 hearing, the District of Minnesota has held that—because "[i]n contrast [to Title VII], the [Minnesota statute] . . . does not include any language requiring an employer to provide any religious accommodation" and because of "the [Minnesota statute]'s explicit requirement to provide one type of accommodation (disability) but not the other (religion)"—the plaintiff's failure-to-accommodate claims were not

14

**JA77**

**B. Plaintiffs' Contract Claims**

The Permanent Exemption Class's claims fail as well. Ellison, Jenkins, and the putative members of their class allege that Defendants were contractually obligated to honor the "permanent" exemptions that the employees were given under the original vaccination policy and that Defendants breached that contract when they revoked those exemptions. Am. Compl. ¶¶ 257–64. Alternatively, Plaintiffs contend that, even if granting the exemptions did not create an enforceable contract, Defendants are nonetheless liable under equitable promissory estoppel principles. Am. Compl. ¶ 262. Neither theory holds up under scrutiny.

**1. Breach-of-Contract**

To support a breach-of-contract claim under Virginia law, a plaintiff must sufficiently plead that (1) the defendant had a legally enforceable obligation, (2) the defendant failed to perform that obligation, and (3) the plaintiff was harmed as a result. *See Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016). However, because the Court finds that Plaintiffs fail to satisfy the first element, it will not reach the second or third.

Forming a contract (*i.e.*, the "legally enforceable obligation") requires three basic ingredients: offer, acceptance, and consideration. *See Jones v. Peacock*, 591 S.E.2d 83, 87 (Va. 2004). And although the Court notes that Plaintiffs have not adequately alleged any of the three requirements, today's opinion will address only Plaintiffs' failure to show that they provided valuable consideration.

---

cognizable. *See Aronson v. Olmsted Med. Ctr.*, No. 22-cv-1594, 2023 WL 2776095, at *3–5 (D. Minn. Apr. 4, 2023) (COVID-19 vaccination case).

And as pointed out in Defendants' Notice of Supplemental Authority (Dkt. No 47), the Western District of Tennessee has also held that—because the "language of the [Tennessee law] differed from that found in Title VII" and "there is no explicit language in the [Tennessee law] imposing a duty to accommodate religious beliefs"—the court would not read such a requirement into the statute. *Johnson v. Tyson Foods, Inc.*, No. 21-cv-1161, 2023 WL 3901485, at *3–4 (W.D. Tenn. June 8, 2023) (COVID-19 vaccination case).

Plaintiffs assert that a contract was formed when Defendants offered "permanent" exemptions from the vaccine requirement and employees accepted that offer by continuing to work for the hospital. Am. Compl. ¶ 32. However, even accepting those allegations as true, the very essence of a contract is that it places bilateral obligations on the parties to that agreement. *C.G. Blake Co. v. W.R. Smith & Son*, 133 S.E. 685, 688 (Va. 1926) ("[A] contract implies mutual obligations."). In other words, the consideration element generally requires a finding that each party agreed to take on a legal obligation (*i.e.*, do something that they were not already required to do). *See* Restatement (Second) of Contracts § 71 ("To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."); *see also Hamer v. Sidway*, 27 N.E. 256 (N.Y. 1891) (foundational case on the consideration requirement). As such, the Court must determine what obligations (if any) Plaintiffs took on in exchange for Defendants' alleged promise to permanently exempt the employees from the hospital's vaccination requirement. Having carefully reviewed the allegations in the Amended Complaint, the Court finds that there were none.

Plaintiffs suggest that there was consideration because they implicitly agreed to continue working for Inova and not to pursue employment elsewhere. Dkt. No. 40 at 17–19. However, even if that was enough to establish consideration, it is difficult to reconcile that legal theory with the facts of this case. Again, parties must take on *new* obligations. Plaintiffs here have not.

Under Plaintiffs' theory of consideration, they provided consideration by continuing to work for the hospital. *Id.* However, before the exemptions were provided, Plaintiffs were under no obligation to continue reporting to work and Inova could likewise terminate their employment at any point and for any reason. *See Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001) ("In Virginia,

an employment relationship is presumed to be at-will . . . and may be terminated by the employer or employee for any reason upon reasonable notice."). And, Plaintiffs concede that, after the exemptions were provided, "[t]here would be no remedy [if employees stopped reporting to work after receiving an exemption] because [exempted employees] were not obligated to do that." Dkt. No. 44 at 46:19–20.[13] Thus, because Plaintiffs remained free to unilaterally sever the employment relationship both before and after the alleged agreement, the Court finds that they did not provide the consideration necessary to create a binding agreement.[14] And because the Court finds that any agreement between the parties was not supported by valuable consideration, it must also conclude that Plaintiffs' breach-of-contract claims fail to provide a basis for relief.

Plaintiffs' breach-of-contract claims will therefore be dismissed.

### 2. Promissory Estoppel

Pleading in the alterative, Plaintiffs also argue that Defendants were nonetheless obligated to honor the "permanent" exemptions under the doctrine of promissory estoppel. Generally, that common law doctrine is rooted in equitable principles and prevents a defendant from backing out of promises—even though that promise did not create a binding contract. And in Virginia, "[t]he

---

[13] This fatal concession came when Plaintiffs' counsel was pressed on the issue at the Court's May 26 hearing.

[14] Fighting this conclusion, Plaintiffs cite a string of cases that purportedly support a finding that Plaintiffs' decision to continue working at Inova was enough consideration to support the contract. However, contrary to Plaintiffs' strained readings of those cases, they are distinguishable or otherwise unpersuasive.

For example, Plaintiffs erroneously rely upon *Larkman v. Dynalectron Corp.* for the assertion that "[a]n employee's continued employment" is sufficient consideration to rebut a presumption of at-will employment. 831 F.2d 291, 291 (4th Cir. 1987). However, *Larkman* stands for the proposition that, when the promise of a *certain, fixed period* of employment is in dispute, the employee may present evidence of an implied contract where their continued employment serves as consideration. *See id.* That makes *Larkman* different than this case, where it would be irrational to presume that both parties understood use of the word "permanent" as transforming the nature of employment by creating a promise to employ Plaintiffs "permanently."

Plaintiffs similarly mischaracterize *Barger v. Gen. Elec. Co.*, 599 F. Supp. 1154 (W.D. Va. 1984). *Barger* and the cases it cites focus on *explicit* promises where an employee *expressly* agreed that they would continue working in exchange for the benefit. *Id.* at 1160 (citing *Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 585 (1938) *and Sea-Land Serv., Inc. v. O'Neal*, 224 Va. 343 (1982)). Here, Plaintiffs made no such promise.

cause of action based on promissory estoppel consists of four elements, recently defined as: (1) a promise, (2) which the promisor should reasonably expect to cause action by the promisee, (3) which does cause such action, and (4) which should be enforced to prevent injustice to the promisee." *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009).

On this front, Plaintiffs argue that, by issuing "permanent" exemptions, Defendants created the expectation that Plaintiffs' employment relationship with the hospital would be terminated only for cause in exchange for the employees not seeking jobs elsewhere. Am. Compl. ¶ 262. However, under Virginia law, there is a strong presumption against such for-cause relationships and in favor of at-will employment. *See Norfolk S.R. Co. v. Harris*, 59 S.E.2d 110, 114 (Va. 1950) ("It is settled doctrine in [Virginia] that where no specific time is fixed for the duration of an employment, there is a rebuttable presumption that it is an employment at will, terminable at any time by either party."). Thus, in the absence of a clear agreement to the contrary, courts are to presume that all employment is terminable at the will of either party. *See Norfolk*, 59 S.E.2d at 114; *see also Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 917–18 (Va. 1987) ("[A] pleading seeking to recover damages for the termination of a contract of employment, the terms of which give rise to no fair inference of a specific period for its intended duration, and which is not supported by any substantial additional consideration . . . is demurrable.").

Plaintiffs do not provide any evidence of such an agreement in this case. Instead, they suggest that the agreement was "understood" as Defendants' attempt to induce the employees to keep working for the hospital. *See* Am. Compl. ¶ 261; Dkt. No. 40 at 17. However, that is not enough. Considering the presumption that must be applied, Plaintiffs fail to establish that Defendants could *reasonably* expect the employees to believe not only that their employment conditions were substantially altered, but that the hospital would do so implicitly.

Because the doctrine of promissory estoppel requires such a showing, Plaintiffs' promissory estoppel claims must therefore be dismissed.

### C.  Class Claims

Finally, Plaintiffs' class allegations will be stricken. Under Rule 23, one or more members of a putative class may sue as representative parties on behalf of all if they satisfy the following threshold requirements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation, and (5) ascertainability. *See Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021) (citing Fed. R. Civ. P 23(a)).  Once those threshold requirements are met, putative class members must also satisfy Rule 23(b) by showing that either: (a) individual actions would risk inconsistent or non-dispositive judgments, (b) that they are seeking class-wide injunctive or declaratory relief, or (c) that there are common legal or factual questions that predominate over any other concerns affecting individual members. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(b)).

Moreover, the Supreme Court has made clear that it is "quite obvious[]" that "the mere claim by employees of the same company that they have suffered a Title VII injury . . . gives no cause to believe that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350; *see also Adams v. Bethlehem Steel Corp.*, 736 F.2d 992, 995 (4th Cir. 1984) ("In a very broad and loose sense, any member of any [protected] class who [allegedly] suffers discrimination has the same interest as other members of the class who suffered discrimination in very different circumstances and by very different means, but clearly that is not [grounds to permit a matter to

proceed as a class action].").[15] And most relevant to this case, The Fourth Circuit has explained that:

> As the statutory language of [Title VII] makes clear, this is not an area for absolutes. Religion does not exist in a vacuum in the workplace. Rather, it coexists, both with intensely secular arrangements such as collective bargaining agreements and with the intensely secular pressures of the marketplace. Hence the import of the statutory term "accommodate." The provision's use of the terms "reasonably" and "undue hardship" likewise indicates that this is a field of degrees, not a matter for extremes. Both terms are "variable ones," dependent on the extent of the employee's religious obligations and the nature of the employer's work requirements.

*Firestone Fibers*, 515 F.3d at 312.

With that in mind, the Court finds that—because it is clear that Plaintiffs cannot satisfy Rule 23's "commonality" element—Plaintiffs cannot pursue their lone remaining claim (failure to accommodate abortion-based objections to the vaccine policy, *see supra* pp. 10–11) on a class basis.

To establish commonality, a plaintiff must show their claims depend upon a common contention that makes class-wide resolution possible—*i.e.*, the putative class must share a question whose answer will resolve an issue that is central to the validity of each employees' claims in one stroke. *See Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) (citing *Wal-Mart*, 564 U.S. at 350). However, the Court notes that, given the personal nature of religious beliefs, Plaintiffs' claims do not lend themselves to common resolution. *See* EEOC Compliance Manual § 12(A)(1) (explaining that determining whether a belief or practice is religious "is [] a situational, case-by-

---

[15] The current stage of the proceedings is not lost on the Court. Although the Court does not have the benefit of the discovery, there are times that the issues are clear enough at the pleading-stage to determine that a case is not appropriate for class relief. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting that "[s]ometimes the issues are plain enough from the pleadings" to make class determinations); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 109–10, 116 (4th Cir. 2013) (affirming dismissal of class allegations in complaint that were "insufficient to satisfy the commonality standard set forth in *Wal-Mart*"); *Knapp v. Zoetis, Inc.*, No. 3:20-cv-191, 2021 WL 1225970, at *10 (E.D. Va. Mar. 31, 2021) (noting that a court may grant a motion to strike class certification before discovery if the "allegations are facially and inherently deficient")

case inquiry"); *id.* ("The same [belief or practice] in one case might be subject to reasonable accommodation under Title VII because an employee engages in the [belief or] practice for religious reasons, and in another case might not be subject to reasonable accommodation because the practice is engaged in for secular reasons."); *see also* EEOC Compliance Manual § 12(A)(3) (explaining that "where an alleged religious observance, practice, or belief is at issue, a case-by-case analysis is required"). Specifically, Plaintiffs' failure-to-accommodate theory would require the Court to ask whether each putative class member's abortion-based objection to the COVID-19 vaccine was based on *their own* religious beliefs. *See Yoder*, 406 U.S. 205, 215–16. As exemplified both above and in the caselaw, the answer to that question may vary from person to person. *See supra* Part III(A)(1)(ii)(b) (finding that, while Ellison's abortion-based objections to the COVID-19 vaccine were religiously based, Graham's facially identical objections were not); *see also Aliano*, 2023 WL 4398493, at *7–10 (finding that one plaintiff's abortion-based objections to the COVID-19 vaccine were based on their religion but another plaintiff's abortion-based objections to the COVID-19 vaccine were not).

Given that these critical questions must be answered on an individualized basis, the Court concludes that it is apparent from the Amended Complaint that the purported class cannot be certified. Plaintiffs' class allegation will therefore be stricken from the Amended Complaint. *See Wal-Mart*, 564 U.S. at 350 ("Dissimilarities within the proposed class" often "impede the generation of common answers.").

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss or, in the alternative, Motion to Strike Class Claims (Dkt. No. 37) is **GRANTED IN PART** and **DENIED IN PART**; it is further

**JA84**

**ORDERED** that Count I is **DISMISSED** only as to Plaintiffs Jenkins and Graham; it is further

**ORDERED** that Count II is **DISMISSED** as to all Plaintiffs; it is further

**ORDERED** that Count III is **DISMISSED** as to all Plaintiffs; and it is further

**ORDERED** that Plaintiffs' class allegations (¶¶ 179–200) are **STRICKEN** from Plaintiffs' Amended Complaint.

**SO ORDERED.**

_____
/s/
Hon. Michael S. Nachmanoff
United States District Judge

September 14, 2023
Alexandria, Virginia

22

**JA85**

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KRISTEN BARNETT,
*Plaintiff,*

v.

Case Number 1:23-cv-1638 (MSN/WEF)

INOVA HEALTH CARE SERVICES,
*Defendant.*

## ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (ECF 3). After considering the motion, opposition, reply, and arguments of counsel, and for the reasons stated in open court, it is hereby

**ORDERED** that the motion (ECF 3) is **GRANTED**; and it is further

**ORDERED** that the complaint is **DISMISSED**.

The Clerk is directed to close this civil action

SO ORDERED.

/s/

Michael S. Nachmanoff
United States District Judge

Michael S. Nachmanoff
United States District Judge

March 11, 2024
Alexandria, Virginia

1

**JA86**

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **KRISTEN BARNETT**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:23-cv-01638 |
| | ) |
| **INOVA HEALTH CARE SERVICES**, | ) |
| | ) |
| Defendant. | ) |

## <u>NOTICE OF APPEAL</u>

COMES NOW the Plaintiff, Kristen Barnett, by counsel, pursuant to Rule 3(a)(1) of the

Federal Rules of Appellate Procedure, and hereby provides notice of her appeal to the United

States Court of Appeals for the Fourth Circuit from the Final Order of Dismissal entered in this

action on 26 March 2024 (Dkt No. 13).


Respectfully submitted,

KRISTEN BARNETT


By Counsel:    /s/ Isaiah Kalinowski
                      Timothy P. Bosson, Esq. (VSB: 72746)
                      Arie M. Jones, Esq. (VSB: 98248)
                      Isaiah R. Kalinowski, Esq. (VSB: 71125)
                      Robert G. Rose, Esq. (VSB: 81240)
                      Bosson Legal Group, PC
                      8300 Arlington Blvd., Suite B2
                      Fairfax, VA 22031
                      tbosson@bossonlaw.com
                      ajones@bossonlaw.com
                      ikalinowski@bossonlaw.com
                      rrose@bossonlaw.com
                      Ph: (571) 775-2529
                      *Counsel for Plaintiff*

**JA87**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on 27 March 2024, I caused the foregoing to be filed on the Court's CM/ECF system, which served a notification of such filing to the designated counsel of record for all parties to this matter.


<u>/s/ Isaiah Kalinowski</u>

2

**JA88**