In The

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

**Kristen Barnett,**

**Appellant,**

v.

**Inova Health Care Services,**

**Appellee.**

On Appeal from the United States District Court
for the Eastern District of Virginia, Case No. 1:23-cv-01638-MSN-WEF

## BRIEF OF APPELLEE
## INOVA HEALTH CARE SERVICES

Alexander P. Berg
Lauren M. Bridenbaugh
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard
Suite 500
Tysons Corner, VA 22102
Telephone: 703.442.8425
Facsimile: 703.442.8428
aberg@littler.com
lbridenbaugh@littler.com

Nancy N. Delogu
LITTLER MENDELSON, P.C.
815 Connecticut Avenue NW
Suite 400
Washington, DC 20006.4046
Telephone: 202.842.3400
Facsimile:  202.842.0011
nndelogu@littler.com

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1271        Caption: Kristen M. Barnett v. Inova Health Care Services

Pursuant to FRAP 26.1 and Local Rule 26.1,

Inova Health Care Services
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Inova Health System Foundation is the parent corporation of Inova Health Care Services.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                              ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                              ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Nancy North Delogu                        Date:      04/15/2024

Counsel for: Inova Health Care Services/Appellee

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

PAGE

ISSUES PRESENTED FOR REVIEW ...................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2

STATEMENT OF THE CASE.................................................................................6

    A.    Appellant is Hired by Inova to Provide Bedside Care for
           Children and Trauma Victims in an Inova Pediatric Intensive
           Care Unit (PICU).....................................................................................6

    B.    After the Onset of the COVID-19 Pandemic and the
           Development and Approval of Several Vaccines, Inova
           Requires Team Members to Be Vaccinated Against COVID-19,
           Subject to Qualifying Medical and Religious Exemptions.................6

    C.    In Response to a Mandate From the U.S. Center for Medicare
           and Medicaid Services (CMS) Requiring Staff To Be
           Vaccinated Against COVID-19, Inova Bolsters its Exemption
           Process........................................................................................................7

    D.    In December 2021, Appellant Submits a Religious Exemption
           Request Expressing Concerns About the Long-Term Health
           Effects of the COVID-19 Vaccine. .....................................................10

    E.    After Her December 2021 Request is Denied, Appellant
           Submits Additional Information, Including Public Health Data
           and Case Law, In Support of Her Religious Exemption Request......12

    F.    After Her Exemption Request is Denied, and She Declines to
           Receive the COVID-19 Vaccine, Appellant's Employment
           Ends. .......................................................................................................14

    G.    Appellant Sues Inova, Alleging a Failure to Accommodate Her
           Religious Beliefs and Disparate Treatment Religious
           Discrimination Under Both Title VII and the Virginia Human
           Rights Act...............................................................................................14

    H.    The Eastern District of Virginia Grants Inova's Motion to
           Dismiss the Complaint. ........................................................................15

i

ARGUMENT ...................................................................................17

I.   STANDARD OF REVIEW ..............................................17

II.  The District Court Properly Dismissed Appellant's Title VII
     Religious Accommodation Claim in Count I of the Complaint
     Because Appellant Failed to Allege That She Informed Inova of
     a Religious Conflict With Inova's COVID-19 Vaccine
     Requirement. ...................................................................18

     A.   The Concerns Appellant Raised Reflected Her Personal
          Preferences or Fears, Not Religious Beliefs. ...........................20

     B.   Appellant's  Communications to Inova Did Not
          Demonstrate a Conflict Between Her Beliefs and Inova's
          COVID-19 Vaccine Requirement...........................................28

III. Appellant's Disparate Treatment Claims in Counts II and III of
     the Complaint Failed To State A Plausible Claim of Intentional
     Discrimination. .................................................................35

     A.   Appellant's Complaint Lacks Sufficient Facts To Create
          a Plausible Inference That Inova Intentionally Treated
          Her Differently Because of Her Religion. ...............................36

     B.   Count II of the Complaint Was Also Properly Dismissed
          as Duplicative of Her Title VII Religious
          Accommodation Claim. .........................................................42

CONCLUSION ...............................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abeles v. Metro. Washington Airports Auth.*,
  676 F. App'x 170 (4th Cir. 2017) ....................................................37

*Abreu v. N. Am. Partners in Anesthesia, LLP*,
  No. 1:22-cv-759 (RDA/WEF), 2023 WL 5959430 (E.D. Va. Sept.
  12, 2023) .............................................................................................35

*Africa v. Com. of Pa.*,
  662 F.2d 1025 (3d Cir. 1981) ................................................22, 24, 25

*Alvarado v. City of San Jose*,
  94 F.3d 1223 (9th Cir. 1996) ............................................................24

*Ansonia Bd. of Educ. v. Philbrook*,
  479 U.S. 60 (1986)...............................................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................passim

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................passim

*Biden v. Missouri*,
  595 U.S. 87 (2022).............................................................2, 3, 8, 32

*Bing v. Brivo Sys., LLC*,
  959 F.3d 605 (4th Cir. 2020) .............................................17, 18, 41

*Blackwell v. Lehigh Valley Health Network*,
  Civil No. 5:22-cv-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23,
  2023) ....................................................................................................28

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020)...........................................................................37

*Braunfeld v. Brown*,
  366 U.S. 599 (1961)............................................................................24

iii

*Brennan v. Deluxe Corp.*,
361 F. Supp. 3d 494 (D. Md. 2019) .................................................................44

*Bryant v. Aiken Reg'l Med. Ctrs., Inc.*,
333 F.3d 536 (4th Cir. 2003) .........................................................................37

*Bube v. Aspirus Hosp. Inc.*,
No. 22-cv-745-jdp, 2023 WL 6037655 (W.D. Wis. Sept. 15, 2023),
*appeal filed*, No. 23-2892 (7th Cir. 2023) ...................................................27

*Cary v. Carmichael*,
908 F. Supp. 1334 (E.D. Va. 1995), *aff'd sub nom. Cary v.
Anheuser-Busch, Inc.*, 116 F.3d 472 (4th Cir. 1997) ...................................29

*Chalmers v. Tulon Co. of Richmond*,
101 F.3d 1012 (4th Cir. 1996) ........................................................19, 29, 37, 42

*Coleman v. Md. Court of Appeals*,
626 F.3d 187 (4th Cir. 2010) .........................................................18, 37, 39, 40

*Cosby v. S.C. Prob., Parole & Pardon Servs.*,
93 F.4th 707 (4th Cir. 2024) ...........................................................................40

*Coward v. Robinson*,
276 F. Supp. 3d 544 (E.D. Va. 2017) .............................................................22

*Cox v. Valley Health Sys.*,
Civil Action No. 5:23-cv-00051, 2024 WL 3236414 (W.D. Va.
June 28, 2024) .............................................................................................34, 40

*Craven v. Shriners Hosps. for Children*,
2024 WL 21557 (D. Or. Jan. 2, 2024) ...........................................................26

*Dachman v. Shalala*,
9 F. App'x 186 (4th Cir. 2001) ...................................................................21, 31

*Deabreu v. UPS*,
800 F. App'x 202 (4th Cir. 2020) ...................................................................43

*DeJarnette v. Corning, Inc.*,
133 F.3d 293 (4th Cir. 1998) ..........................................................................39

iv

*Dettmer v. Landon*,
    799 F.2d 929 (4th Cir. 1986) ........................................................21, 25

*Does 1-6 v. Mills*,
    16 F.4th 20 (1st Cir. 2022)..................................................................32

*Doswell v. Smith*,
    139 F.3d 888 (4th Cir. Mar. 13, 1998)...........................................22, 23

*Dykzeul v. Charter Commc'ns, Inc.*,
    No. CV 18-05826 DSF, 2019 WL 8198218 (C.D. Cal. Nov. 18,
    2019) ..................................................................................................44

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015)............................................................................19

*EEOC v. Consol Energy, Inc.*,
    860 F.3d 131 (4th Cir. 2017) .......................................................19, 28

*EEOC v. Firestone Fibers & Textiles Co.*,
    515 F.3d 307 (4th Cir. 2008) ...........................................19, 24, 29, 33

*EEOC v. Ithaca Indus., Inc.*,
    849 F.2d 116 (4th Cir. 1988) (en banc) (Wilkinson, J., concurring)................24

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002).....................................................................44, 45

*Ellison v. Inova Health Care Services et al.*,
    692 F. Supp. 3d 548 (Sept. 14, 2023) ...........................................15, 16

*Employment Division v. Smith*,
    490 U.S. 872 (1990)............................................................................19

*Enriquez v. Gemini Motor Transp. LP*,
    No. CV-19-04759-PHX-GMS, 2021 WL 5908208 (D. Ariz. Dec.
    14, 2021) ......................................................................................43, 44

*Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) .......................................................24, 25, 26

*Feminist Majority Found. v. Hurley*,
    911 F.3d 674 (4th Cir. 2018) ..............................................................44

*Finkbeiner v. Geisinger Clinic*,
  623 F. Supp. 3d 458 (M.D. Pa. 2022), *appeal dismissed*, 2023 WL
  6057495 (3d Cir. Sept. 18, 2023) ................................................................33, 34

*Fla. v. Dep't of Health and Human Servs.*,
  19 F.4th 1271 (11th Cir. 2021) ............................................................................3

*Fontell v. McGEO UFCW Local 1994*,
  Civil Action No. AW-09-2526, 2010 WL 3086498 (D. Md. Aug. 6,
  2010), *aff'd*, 410 F. App'x 645 (4th Cir. 2011 ..................................................38

*Foshee v. AstraZeneca Pharms. LP*,
  Civil No. SAG-23-00894, 2023 WL 6845425 (D. Md. Oct. 17,
  2023) ..................................................................................................................33

*Fuller v. Phipps*,
  67 F.3d 1137 (4th Cir. 1995), *abrogated on other grounds by
  Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ...........................................36

*General Telephone Co. of Northwest v. EEOC*,
  446 U.S. 318 (1980)...........................................................................................44

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159, 166 (4th Cir. 2016) ....................................................................11

*Groff v. DeJoy*,
  600 U.S. 447 (2023)...........................................................................................18

*Harman v. Unisys Corp.*,
  356 F. App'x 638 (4th Cir. 2009) ......................................................................38

*Haywood v. Locke*,
  387 F. App'x 355 (4th Cir. 2010) .................................................................37, 38

*Hernandez v. Comm'r*,
  490 U.S. 680 (1989)...........................................................................................21

*Holt v. Hobbs*,
  574 U.S. 352 (2015)...........................................................................................22

*Kather v. Asante Health Sys.*,
  No. 1:22-cv-01842-MC, 2023 WL 4865533 (D. Or. July 28, 2023) ................33

*Kerr v. Marshall Univ. Bd. of Governors*,
  824 F.3d 62 (4th Cir. 2016) ...............................................................43

*King v. Rubenstein*,
  825 F.3d 206 (4th Cir. 2016) .............................................................17

*Love v. Reed*,
  216 F.3d 682 (8th Cir. 2000) .............................................................24

*Lucky v. Landmark Medical of Michigan, P.C.*,
  103 F.4th 1241 (6th Cir. 2024) .........................................................29

*Mason v. Gen. Brown Cent. Sch. Dist.*,
  851 F.2d 47 (2d Cir. 1988) ................................................................23

*McCleary-Evans v. Md. Dep't of Transp.*,
  780 F.3d 582 (4th Cir. 2015) ................................................18, 41, 42

*Moli v. King Cnty.*,
  Case No. 2:23-cv-00823-RSL, 2024 WL 1860184 (W.D. Wash.
  Apr. 29, 2024) ....................................................................................31

*Osborne v. Bayhealth Med. Ctr., Inc.*,
  Civil Action No. 23-465-RGA, 2024 WL 278209 (D. Del. Jan. 25,
  2024) ...................................................................................................30

*Paradise Wire & Cable Defined Ben. Pension Plan v. Weil*,
  918 F.3d 312 (4th Cir. 2019) .............................................................17

*Passarella v. Aspirus, Inc.*,
  2023 WL 2455681 (W.D. Wis. Mar. 10), *appeal filed*, No. 23-1660
  (7th Cir. 2023)....................................................................................27

*Phillips v. Pitt Cty. Mem. Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ...............................................................7

*Ringhofer v. Mayo Clinic, Ambulance*,
  102 F.4th 894 (8th Cir. 2024) ...........................................................31

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020)...........................................................................32

*Rose-Stanley v. Virginia*,
  No. 2:15-cv-7, 2015 WL 6756910 (W.D. Va. Nov. 5, 2015)............................42

*Ruffin v. Lockheed Martin Corp.*,
  126 F. Supp. 3d 521 (D. Md. 2015), *aff'd in relevant part*, 659 F.
  App'x 744 (4th Cir. 2016) ................................................................39

*Shigley v. Tydings & Rosenberg*,
  No. JKB-23-02717, 2024 WL 1156613 (D. Md. Mar. 18, 2024) ....................34

*Spa v. Aiken/Barnwell Ctys. Cmty. Action Agency, Inc.*,
  No. CV 1:24-31-JDA-SVH, 2024 WL 2848492 (D.S.C. Mar. 1,
  2024). *report and recommendation adopted*, 2024 WL 2315293
  (D.S.C. May 22, 2024)......................................................................42

*Sturgill v. Am. Red Cross*,
  Case No. 22-cv-11837, 2023 WL 8701293 (E.D. Mich. Dec. 15,
  2023), *appeal filed*, No. 24-1011 (6th Cir. Jan. 8, 2024) .............................31

*Sunkins v. Hampton Roads Connector Partners*,
  __ F. Supp. 3d __, Civ. No. 2:23cv91, 2023 WL 7411761 (E.D.
  Va. Nov. 9, 2023)............................................................................35

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 322 (2007)...................................................................11

*Thomas v. Review Bd. Ind. Empl. Sec. Div.*,
  450 U.S. 707 (1981)....................................................................21, 30

*Thornton v. Ipsen Biopharms., Inc.*,
  Civil Action No. 23-11171-JCB, 2023 WL 7116739 (D. Mass. Oct.
  26, 2023), *appeal filed*, No. 23-1951 (1st Cir. 2023) ................................27

*Tinsley v. City of Charlotte*,
  854 F. App'x 495 (4th Cir. 2021) (Gregory, J., dissenting) ............................38

*Ulrich v. Lancaster Gen. Health*,
  Civil Action No. 22-4945, 2023 WL 2939585 (E.D. Pa. Apr. 13,
  2023) ..........................................................................................34

*United States v. Seeger*,
  380 U.S. 163 (1965)........................................................................23

*Versatile v. Johnson*,
  Civil Action No. 3:09CV120, 2011 WL 5119259 (E.D. Va. Oct.
  27, 2011), *aff'd*, 474 F. App'x 385 (4th Cir. 2012) ...........................................25

*Washington v. Offender Aid & Restoration of Charlottesville-
  Albemarle, Inc.*,
  677 F. Supp. 3d 383 (W.D. Va. June 15, 2023) ................................................35

*Welsh v. United States*,
  398 U.S. 333 (1970) ...........................................................................................23

*Wisconsin v. Yoder*,
  406 U.S. 205 ...........................................................................................22, 32, 33

*Workman v. Mingo Cnty. Bd. of Educ.*,
  419 F. App'x 348 (4th Cir. 2011) ......................................................................32

**Statutes**

Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C.
  § 2000e-2(a)(1) ............................................................................................18, 28
  § 2000e(j) ................................................................................................18, 23, 28

Virginia Human Rights Act (VHRA), Va. Code § 2.2-3905(B)(1)(a) ....................35

**Other Authorities**

29 C.F.R. § 1605.2(b)(1) ...........................................................................................18

Centers for Disease Control (CDC), "COVID-19 Vaccination for
  Pregnant People to Prevent Serious Illness, Deaths, and Adverse
  Pregnancy Outcomes from COVID",
  https://archive.cdc.gov/#/details?url=https://emergency.cdc.gov/ha
  n/2021/han00453.asp (last updated Sept. 29, 2021) ............................................9

Equal Employment Opportunity Commission (EEOC) Compliance
  Manual

  § 12-I-A-1 ...................................................................................................22, 32
  § 12-I-A-1 n.28 .................................................................................................24

Fed. R. Civ. P.
    8(a)(2) ........................................................................................................17
    8(d)(2) ........................................................................................................44
    10(c) ..........................................................................................................11

Hospital Attachment QSO-22-07-ALL to CMS Guidance for the
    Interim Final Rule – Medicare and Medicaid Programs; Omnibus
    COVID-19 Health Care Staff Vaccination, *available at*
    https://www.cms.gov/files/document/qso-22-07-all-attachment-d-
    hospital.pdf (last viewed July 10, 2024) ..............................................8

"Omnibus COVID-19 Health Care Staff Vaccination" (the "CMS
    Mandate"), 86 Fed. Reg. 61555 (Nov. 5, 2021) ..................................8

State Healthcare Worker and Patient Vaccination Laws (Feb. 28,
    2018),
    https://www.cdc.gov/phlp/publications/topic/vaccinationlaws.html ...................2

"What You Should Know About COVID-19 and the ADA, the
    Rehabilitation Act, and Other EEO Laws") (the "EEOC COVID-
    19 Guidance").  https://www.eeoc.gov/wysk/what-you-should-
    know-about-covid-19-and-ada-rehabilitation-act-and-othereeo-
    laws ........................................................................................9, 10, 14

## ISSUES PRESENTED FOR REVIEW

1.      Did the District Court correctly dismiss Appellant's Title VII religious accommodation claim in Count I of the Complaint for failure to allege facts sufficient to demonstrate that she communicated to her hospital employer a religious belief that conflicted with the COVID-19 vaccination requirement of the employer's Immunization Program Policy?

2.      Did the District Court correctly dismiss Appellant's disparate treatment claims under Title VII and the Virginia Human Rights Act (VHRA) in Counts II and III of the Complaint, respectively, for failure to allege facts sufficient to create a reasonable inference that she was intentionally discriminated against because of her religion?

**INTRODUCTION AND SUMMARY OF ARGUMENT**

"Vaccination requirements are a common feature of the provision of healthcare in America: Healthcare workers around the country are ordinarily required to be vaccinated for diseases such as hepatitis B, influenza, and measles, mumps, and rubella." *Biden v. Missouri*, 595 U.S. 87, 95 (2022) (citing CDC, State Healthcare Worker and Patient Vaccination Laws (Feb. 28, 2018), https://www.cdc.gov/phlp/publications/topic/vaccinationlaws.html).

The same is true for COVID-19. "COVID–19 is a highly contagious, dangerous, and—especially for Medicare and Medicaid patients—deadly disease." *Id.* at 93. Accordingly, in November 2021, "[t]he Secretary of Health and Human Services determined that a COVID–19 vaccine mandate" for healthcare workers — the "CMS Mandate" — "[would] substantially reduce the likelihood that healthcare workers will contract the virus and transmit it to their patients. He accordingly concluded that a vaccine mandate [was] 'necessary to promote and protect patient health and safety' in the face of the ongoing pandemic." *Id.* (internal citations omitted).

As a health system that operates facilities subject to the CMS Mandate, Appellee Inova Health Care Services ("Inova") understood that "ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no

harm. It would be the 'very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID–19.'" *Id.* at 93 (quoting *Fla. v. Dep't of Health and Human Servs.*, 19 F.4th 1271, 1288 (11th Cir. 2021)). Inova took these obligations seriously by updating its existing Immunization Program Policy in compliance with the CMS Mandate.

Appellant Kristen Barnett ("Appellant"), a nurse in an Inova Pediatric Intensive Care Unit, sought a religious exemption from Inova's COVID-19 vaccine requirement (following the expiration of a previously granted medical exemption). The concerns Appellant communicated to Inova in seeking this new exemption, however, failed to identify sincerely held religious beliefs that conflicted with the vaccination requirement. In her exemption requests, she expressed concerns that the vaccine might adversely affect her health and that of her child. She explicitly acknowledged, moreover, that she was not anti-vaccine in general, that she made a place in her belief system for both medicine and religion (including receiving the influenza vaccine), and that her practice is to make all significant medical decisions after prayer. After praying about whether to be vaccinated against COVID-19, Appellant stated she did not "feel led" to accept vaccination "in th[at] current moment" but was willing to be vaccinated against COVID-19 if led "next year, or the year after or in 5 years[.]"

These concerns, as communicated to Inova, did not communicate a religious conflict with the COVID-19 vaccination requirement either generally or to any particular COVID-19 vaccine. Rather, she expressed personal preferences and secular medical concerns about being vaccinated against COVID-19. Accordingly, consistent with the CMS Mandate and with its commitment to the Pediatric Intensive Care Unit patients in its care, Inova denied Appellant's exemption requests.

In the three-count lawsuit that followed, Appellant claims that because making decisions after prayer is part of her religious practice, any decision she makes after prayer regarding whether to comply with an employment requirement is protected by federal law as an exercise of her religion. As such, she alleges Inova's failure to grant her requested accommodation constituted both a failure to fulfill Title VII's reasonable accommodation requirement and discrimination on the basis of religion in violation of both federal and Virginia state law.

Upon review of Appellant's Complaint and the exemption requests that formed an integral part of it, the District Court correctly concluded that Appellant failed to state a claim that her beliefs presented a religious-based conflict with Inova's COVID-19 vaccine requirement. The District Court therefore properly dismissed her failure to accommodate claim in Count I of the Complaint.

Appellant's Complaint also failed to allege any viable disparate treatment claim. The District Court correctly recognized that Counts II and III of the

Complaint (alleging disparate treatment pursuant to Title VII of the Civil Rights and the Virginia Human Rights Act, respectively) lacked factual support sufficient to render plausible, under the *Twombly-Iqbal* standard, her claim that Inova intentionally discriminated against her based on her religion. This conclusion was particularly appropriate given the lack of either direct evidence of discrimination or circumstantial allegations involving any identifiable comparator(s) as well as the obvious alternative explanation that her employment ended because of her noncompliance with Inova's generally applicable immunization requirement. Moreover, the only action Appellant complained of in her Title VII disparate treatment claim in Count II is Inova's denial of the same exemption request on which her Title VII religious failure to accommodate claim in Count I was based. The District Court, therefore, properly recognized and dismissed Count II as entirely duplicative of Count I.

The District Court's judgment dismissing Appellant's Complaint should be affirmed.

## STATEMENT OF THE CASE

**A.**    **Appellant is Hired by Inova to Provide Bedside Care for Children and Trauma Victims in an Inova Pediatric Intensive Care Unit (PICU).**

Inova hired Appellant as a bedside Registered Nurse (RN) on January 8, 2018. JA6.  Appellant worked at all relevant times in the Pediatric Intensive Care Unit (PICU), where she helped provide health care for critically ill children.  *Id.*

In February 2020, Appellant was promoted to "a PICU unit supervisor at a level 1 trauma center[.]"  *Id.* at JA6, JA10.  After the outbreak of the COVID-19 pandemic in early 2020, Inova also included Appellant as a member of its "COVID Committee."  JA6.

**B.**    **After the Onset of the COVID-19 Pandemic and the Development and Approval of Several Vaccines, Inova Requires Team Members to Be Vaccinated Against COVID-19, Subject to Qualifying Medical and Religious Exemptions.**

In July 2021, after several COVID-19 vaccines were granted Emergency Use Authorization (EUA) by the Food and Drug Administration (FDA) and made available to the general public, Inova updated its Immunization Program Policy ("IPP") to require team members (including Appellant) to be vaccinated against COVID-19 in addition to the IPP's existing immunization requirements. Specifically, the IPP allowed team members to receive the Pfizer, Moderna, or Johnson & Johnson (J&J) vaccines, or any other vaccine granted an EUA by the

6

FDA or approved by the World Health Organization.  JA6-7; *see also* JA30-34. Team members were notified that they could request exemptions from this COVID-19 vaccination requirement for "a valid medical or religious reason."  JA6.

Appellant originally submitted a request for a medical exemption in August 2021 based on concerns about the effect of a COVID-19 vaccine on her ability to breastfeed.  JA7, JA21, JA24, JA37.[1]  Inova granted this (temporary) medical exemption.  JA7.

### C.  In Response to a Mandate From the U.S. Center for Medicare and Medicaid Services (CMS) Requiring Staff To Be Vaccinated Against COVID-19, Inova Bolsters its Exemption Process.

On November 5, 2021, the U.S. Center for Medicare and Medicaid Services (CMS) published   the CMS Mandate requiring workers — including Inova employees — who provided services to recipients of Medicare and Medicaid funding to be vaccinated against COVID-19. "Omnibus COVID-19 Health Care Staff Vaccination," 86 Fed. Reg. 61555 (Nov. 5, 2021).[2]  As the Supreme Court explained shortly thereafter, in a decision affirming the agency's authority to impose

---

[1] Appellant later acknowledged that she "originally did not submit a Religious Exemption package with [her] Medical Exemption package[.]"  JA48.

[2] The Court may take judicial notice of factual information located on government websites.  *E.g.*, *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

the CMS Mandate, CMS was "compelled" by the need "to protect the health and safety" of staff and patients because:

- "[T]he COVID–19 virus can spread rapidly among healthcare workers and from them to patients, and [] such spread is more likely when healthcare workers are unvaccinated[.]";

- "[B]ecause Medicare and Medicaid patients are often elderly, disabled, or otherwise in poor health, transmission of COVID–19 to such patients is particularly dangerous.";

- "'[F]ear of exposure' to the virus 'from unvaccinated health care staff can lead patients to themselves forgo seeking medically necessary care,' creating a further 'ris[k] to patient health and safety.'"; and

- "[S]taffing shortages caused by COVID–19-related exposures or illness has disrupted patient care."

*Biden v. Missouri*, 595 U.S. 87, 91-92 (Jan. 13, 2022) (quoting 86 Fed. Reg. 61555, 61558-61, 61566-68, 61585-86, 61588, and 61609 (Nov. 5, 2021)).

The CMS Mandate "require[d] that providers and suppliers . . . establish and implement a process by which staff may request an exemption from COVID-19 vaccination requirements based on an applicable Federal law." 86 Fed. Reg. at 61572. Relevant to Appellant's medical exemption, CMS guidance directed covered employers to grant medical exemptions in accordance with guidance from the U.S. Centers for Disease Control and Prevention (CDC). *See* Hospital Attachment QSO-22-07-ALL to CMS Guidance for the Interim Final Rule – Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, *available at*

https://www.cms.gov/files/document/qso-22-07-all-attachment-d-hospital.pdf (last viewed July 10, 2024), at 3 ("With regard to recognized clinical contraindications to receiving a COVID-19 vaccine, facilities should refer to the CDC informational document, *Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States….*") The CDC strongly recommended that pregnant and lactating women receive the COVID-19 vaccine. *See* CDC, "COVID-19 Vaccination for Pregnant People to Prevent Serious Illness, Deaths, and Adverse Pregnancy Outcomes from COVID", https://archive.cdc.gov/#/details?url=https://emergency.cdc.gov/han/2021/han0045 3.asp (last updated Sept. 29, 2021).

With respect to religious exemption requests, the CMS Mandate directed that under "Title VII of the Civil Rights Act of 1964 . . . , workers who cannot be vaccinated . . . because of . . . sincerely held religious beliefs, practice, or observance may in some circumstances be granted an exemption from their employer[,]" but only if "employers [] ensure that they minimize the risk of transmission of COVID-19 to at-risk individuals, in keeping with their obligation to protect the health and safety of patients." *Id.* To facilitate the processing of religious exemption requests, the CMS Mandate referred employers to the Equal Employment Opportunity Commission's ("EEOC") guidance on "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws" (the "EEOC COVID-

19 Guidance") . *See id.* (citing https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-othereeo-laws). The EEOC COVID-19 Guidance explained that when "requesting an exception to a COVID-19 vaccination requirement because of a conflict between that requirement and their sincerely held religious beliefs, practices, or observances[,]" employees "need to explain the conflict and the religious basis for it." EEOC COVID-19 Guidance at Question L.1 (last updated Mar. 1, 2022); *see also id.* at Question L.2 ("The employer may ask for an explanation of how the employee's religious beliefs, practices, or observances conflict with the employer's COVID-19 vaccination requirement."). The EEOC counseled, "Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII." EEOC COVID-19 Guidance at Question L.2.

### D. In December 2021, Appellant Submits a Religious Exemption Request Expressing Concerns About the Long-Term Health Effects of the COVID-19 Vaccine.

"In December 2021[,]" *i.e.*, following the announcement of the CMS Mandate, "Inova notified [Appellant] that [] it had revised its C[OVID]-19 Policy and was requiring all employees [who wished to avoid being vaccinated] to reapply

for an exemption." JA7. Appellant responded by submitting a second exemption request – this time, seeking a religious exemption – on or about December 22, 2021 (the "December 2021 Request"). JA8, JA17-23; *see also* JA39-45 (December 2021 Request as received by Inova).[3]

In her December 2021 Request:

- Appellant "was careful to note that she did not oppose all vaccinations[.]" JA8. Indeed, Appellant stated multiple times that she is "not an anti-vaccine person[.]" (JA21, JA40; *see also* JA22, JA41 ("As stated before, I am not anti-vaccine."));

- Appellant stated that "her family were generally vaccine-compliant." (JA8, JA40);

- Appellant explained that she was "fully vaccinated except for C[OVID-19,]" including receiving the flu vaccine after "accepting Christ" (JA22, JA23, JA40, JA41);

- Appellant informed Inova that, she "believe[s] there is a place in this world for both Science and Religion" and is "pro medical care" in conjunction with prayer, and that while she considers her body a "temple of the Holy

---

[3] Because the written exemption requests Appellant submitted to Inova during her employment were explicitly cited in and incorporated by reference to her Complaint, and copies of these materials as received by Inova were attached to Inova's Motion to Dismiss without dispute as to their authenticity, they were properly before the District Court for consideration. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (recognizing that courts "also consider documents that are explicitly incorporated into the complaint by reference" and documents "attached to the complaint as exhibits" when evaluating a motion to dismiss) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) and Fed. R. Civ. P. 10(c)). Accordingly, Inova summarizes the facts as alleged in these materials.

Spirit," "[t]aking medicine does not mean you aren't trusting God to heal you" (JA21-22, JA39-40);

- Appellant confided that, "In the current state of not understanding the long-term effects [of the COVID-19 vaccine] on the body Christ has provided on this Earth," God "warns against making rash and hasty decisions[.]" (JA40);

- Appellant acknowledged that "church doctrine does not impact the personal decision of whether an individual receives most vaccines" and that "Scripture [did] not expressly instruct" on the matter of whether she could receive the COVID-19 vaccine (JA8-9, JA23, JA42); and

- Appellant explained that she had made the "personal decision to not receive the vaccination because in prayer [she had] *not yet* felt led to do so[,]" but if she felt led through prayer "to the [COVID-19] vaccine next year, or the year after or in 5 years," she would accept the vaccine (JA22, JA23, JA40, JA41 (emphasis added)). "In this current moment[,]" however, she maintained that accepting the vaccine despite her doubts would be a sin. (JA41).

As Appellant's counsel also acknowledged, Appellant did not raise any objection to receiving the COVID-19 vaccine based on the manufacture, development, testing, or production of the vaccines on fetal cell lines. JA58.

**E.     After Her December 2021 Request is Denied, Appellant Submits Additional Information, Including Public Health Data and Case Law, In Support of Her Religious Exemption Request.**

Inova denied Appellant's request for a religious exemption in March 2022, but gave her the opportunity to "submit additional information for consideration[.]"

JA6. Appellant then submitted a further written statement on or about March 21, 2022. JA6-7, JA9-10, JA24-28, JA47-52. In this further submission:

- Appellant acknowledged that "medical concerns have no application to a Religious Exemption," but reiterated, while citing a Bible verse describing her body as "God's temple," that she "must submit my body to Him for my direction in life for all things including medical decisions. I am also commanded to seek His direction for my baby's body…." (JA48-49);

- Appellant stated that she was "not receiving commandments from [God] to refuse all vaccines at this time" but that, as before, she needed to "continue to refuse [COVID-19] vaccines" "at this time" because "God warns against making rash decisions" and for that reason she "move[s] slowly and with precision when making decisions" (JA48-49);

- Appellant cited case rate information from the Virginia Department of Health and the Centers for Disease Control and Prevention (CDC) while arguing that scientists and other "trusted experts" "do not even fully know how effective the vaccine is at preventing infection" (JA48, JA50-51); and

- Appellant included a legal analysis of undue hardship issues, complete with case law citations from the 8th Circuit, and suggested that the CDC data showing that "the vaccine reduces serious illness" were merely hypothetical suggestions that vaccination reduced infection or transmission of COVID-19 (JA51-52).

**F.**     **After Her Exemption Request is Denied, and She Declines to Receive the COVID-19 Vaccine, Appellant's Employment Ends.**

Inova denied Appellant's renewed exemption request and soon thereafter Appellant was placed on administrative leave. JA10. Ultimately, after Appellant failed to come into compliance with Inova's Immunization Program Policy, Inova separated her from its employment in July 2022. *Id.*

**G.**     **Appellant Sues Inova, Alleging a Failure to Accommodate Her Religious Beliefs and Disparate Treatment Religious Discrimination Under Both Title VII and the Virginia Human Rights Act.**

On December 1, 2023, Appellant filed her three-count Complaint in the United States District Court for the Eastern District of Virginia. JA4-28. Appellant contended that Inova failed to accommodate her religious beliefs in violation of Title VII when it denied her COVID-19 vaccine exemption requests. JA11-13. Appellant also pursued disparate treatment claims under both Title VII and the Virginia Human Rights Act (VHRA), alleging vaguely that Inova "decided to pick winners and losers from among the employees making exemption requests" and that she was treated differently than "employees who came from more prominent religions or held to more conventional beliefs related to religious exemptions to vaccines" when Inova "refused to accommodate [her] unique" and "less well-known or respected religious beliefs." JA7, JA3-14; *see* JA16 (asserting disparate treatment under the VHRA

based on Inova's "f[inding] certain religious beliefs as sufficiently acceptable to qualify for a C[OVID]-19 [vaccine] exemption, while rejecting others").

**H. The Eastern District of Virginia Grants Inova's Motion to Dismiss the Complaint.**

Inova moved to dismiss the Complaint for failure to state a claim. JA2. With the consent of the parties, the District Court scheduled a hearing on Inova's Motion to Dismiss on March 7, 2024, at which Appellant's case was consolidated solely for purposes of oral argument with several others. JA3, JA53-56.

At the close of the hearing, after hearing argument from both parties, the District Court granted Inova's Motion to Dismiss. JA60-61. As the Court explained:

> The Court finds that with regard to Count I, the failure to accommodate, that those claims must be dismissed . . . . for the same reasons that were articulated in *Ellison* [*v. Inova Health Care Services et al.*, 692 F. Supp. 3d 548 (Sept. 14, 2023)]. And whether the terms "body is a temple" or "self-determinism" or the various other language that's used by the individual plaintiffs is taken into account, they all run into the same challenge, which is that they would amount to a blanket privilege and that if permitted to go forward would undermine our system of ordered liberty for the reasons that have been set out in the *Ellison* case and that apply with equal force here….
>
> With regard to [Ms.] Barnett, her claim under Count I must [] be dismissed, [and] there is no surviving part of that claim because she did not raise abortion or fetal cells as a basis for her objection, and I believe [her] counsel conceded that at oral argument, and our review of the [C]omplaint reflects that as well, and so Count I will be dismissed in its entirety as to [Ms.] Barnett.

> With regards to Count II and III, they must also be dismissed….There really is no argument that the disparate treatment claim [in Count II] and the VHRA claim [in Count III] are coextensive or rely on the same facts that are alleged with regard to Count I. There are no new or additional facts alleged. They are, therefore, duplicative. They also fail, as a matter of pleading, to address a comparator or comparators that can survive *Twombly* and *Iqbal*; and, accordingly, those claims will be dismissed….

JA61-62; *see also* JA64-76 (district court's decision in *Ellison* granting in part and denying in part Inova's motion to dismiss Title VII religious accommodation claims by three (other) named plaintiffs after analyzing whether complaint plausibly alleged religious beliefs conflicting with Inova's COVID-19 vaccination requirement).

The district court issued a one-page written order confirming that Inova's Motion to Dismiss was granted. JA86. Appellant filed a Notice of Appeal on March 27, 2024. JA87.

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews *de novo* the district court's decision to grant Inova's Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 615-16 (4th Cir. 2020) (citing *Paradise Wire & Cable Defined Ben. Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019)).

"The purpose of a Rule 12(b)(6) motion is to 'test the sufficiency of a complaint[.]'"  *Bing*, 959 F.3d at 616 (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).  A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). "When considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.  "But importantly, [Rule 8(a)(2)] 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Likewise, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557)).  Ultimately, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.*, at 663-64 (citing *Twombly*, 550

U.S. at 556).

To survive a motion to dismiss her Title VII claim, Appellant is "'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing*, 959 F.3d at 616 (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)). This Court's "inquiry is whether [Appellant] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Id.* at 617 (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (in turn quoting *Twombly*, 550 U.S. at 555)); *see* Appellant's Br. at 23-24 (same).

## II.     The District Court Properly Dismissed Appellant's Title VII Religious Accommodation Claim in Count I of the Complaint Because Appellant Failed to Allege That She Informed Inova of a Religious Conflict With Inova's COVID-19 Vaccine Requirement.

Title VII makes it unlawful for covered employers "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Congress has defined the term "religion" to "include[] all aspects of religious observance and practice, as well as belief[.]" 42 U.S.C. § 2000e(j). There is no religious discrimination if "accommodat[ing] an employee's . . . religious observance or practice" would work an "undue hardship on the conduct of the employer's business." *Id.*; *see also* 29 C.F.R. § 1605.2(b)(1); *Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023).

It "is the plaintiff's burden" to prove their employer failed to accommodate their religious beliefs under Title VII. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015). As this Court has repeatedly reaffirmed, and as Appellant acknowledges, a plaintiff must plead facts that, if accepted as true, plausibly show "(1) [she] has a bona fide religious belief that conflicts with an employment requirement; (2) [she] informed the employer of this belief; [and] (3) [she] was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996); *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008); *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017); *see also* JA68-69 (quoting *Chalmers* and *Firestone Fibers*); Appellant's Br. at 19-20. The District Court correctly recognized that Appellant failed to plead that she communicated to Inova "a bona fide religious belief that conflicted with Inova's vaccination requirement." JA60-61, JA69 at n.4.

Appellant attempts to distort the Supreme Court's observation in *Employment Division v. Smith*, 490 U.S. 872, 887 (1990), that "courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim" into the conclusion that virtually any belief, if asserted to be religious, must therefore state a plausible claim for relief sufficient to survive a motion to dismiss. *See* Appellant's Br. at 8-16. Appellant's Br. at 17. To the contrary, regardless of

19

Appellant's assertion that what she labels religious is the end of the matter, it was necessary for the District Court to decide whether Appellant alleged facts sufficient to plausibly claim that she communicated to Inova a bona fide religious belief and that what she communicated conflicted with her ability to receive an approved COVID-19 vaccine.

Appellant failed to do so, for two reasons. First, the concerns she conveyed to Inova about receiving the COVID-19 vaccine were personal preferences or secular medical concerns, not religious in nature. Second, her alleged practice of making medical decisions only after prayer did not state a religious conflict with Inova's COVID-19 vaccine requirement. Accordingly, the district court's decision dismissing Count I should be affirmed.

### A.    The Concerns Appellant Raised Reflected Her Personal Preferences or Fears, Not Religious Beliefs.

An employer's duty to provide a reasonable accommodation only extends to those employment requirements that conflict with an individual's bona fide religious belief(s) communicated to the employer. Here, Appellant advised Inova that she had medical concerns about the long-term effects of the COVID-19 vaccines on her body (and that of her baby), despite being aware of medical guidance to the contrary. JA24, JA48. She turned to prayer for reassurance, but her qualms were "not yet" assuaged. JA22, JA24, JA41. She therefore elected not to receive the vaccine at the

time, arguing that accepting the vaccine *while she doubted its health effects* on her and her child would be sinful.  JA22, JA25-26, JA49-50.  Because the beliefs Appellant communicated to Inova during her employment did not preclude her from making a decision for or against being vaccinated against COVID-19, she was not entitled to an exemption from the vaccine policy as a matter of federal law, and the District Court properly dismissed her Title VII religious accommodation claim.

Appellant argues that the District Court should not have evaluated her exemption request to determine if the beliefs she shared with Inova regarding the vaccine requirement were religious in nature.  To be sure, as the District Court observed, "courts are in no position to 'question the centrality of particular beliefs or practices of faith, or the validity of particular litigants' interpretations of those creeds.'"  JA69 (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)).  Indeed, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others" to be protected.  *Thomas v. Review Bd. Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981); *see also Dettmer v. Landon*, 799 F.2d 929, 932 (4th Cir. 1986) ("[D]iffering beliefs and practices are not uncommon among followers of a particular creed.") (citation omitted).

Yet, as Appellant acknowledges, "[w]hile an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences."  *Dachman v. Shalala*, 9 F. App'x 186,

192 (4th Cir. 2001); *see* Appellant's Br. at 20-21 (same); *see also Wisconsin v. Yoder,* 406 U.S. 205, 215-216) (1972) (Determining what is a "religious belief or practice entitled to constitutional protection may present "a most delicate question"; nevertheless, "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests."); *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015) (observing, in the First Amendment context, that an individual's "request for an accommodation must be sincerely based on a religious belief and not some other motivation"). Put otherwise, Title VII protects *religious* beliefs; it does not protect "mere personal preferences" or "[s]ocial, political, or economic philosophies." EEOC Compliance Manual § 12-I.A.1 (citing *Yoder*, 406 U.S. at 216, and other cases).

As this Court has explained in the First Amendment context:

> Whether one's beliefs and practices are religiously motivated is of course a difficult question for courts of law to decide. In deciding it, they must take care to "avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Africa v. Com. of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981). But the inquiry, however difficult, is necessary, for while "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests," *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972), the Free Exercise Clause protects those beliefs that are "religious" and sincerely held.

*Doswell v. Smith*, 139 F.3d 888, at *3 (4th Cir. Mar. 13, 1998); *see also Coward v.*

*Robinson*, 276 F. Supp. 3d 544, 565 (E.D. Va. 2017) (quoting *Doswell* and reiterating the necessity of the religiosity inquiry); *accord Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) ("[A]n individual's assertion that [her] belief [is religious does not] automatically mean that the belief is religious . . . [A] threshold inquiry into the religious aspect of particular beliefs and practices cannot be avoided if [courts] are to determine what it is in fact based on religious belief, and what is based on secular or scientific principles.") (collecting cases). Likewise, in the Title VII context, as both the District Court and Appellant acknowledge, a court "must therefore determine whether [Appellant's] purported beliefs are both (1) 'sincerely held' and (2) 'religious' in nature." JA69-70 (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965) and *Welsh v. United States*, 398 U.S. 333, 339 (1970)); *see* Appellant's Br. at 14 ("[T]his Court has followed the Supreme Court's guidance in cases such as *Seeger* and *Welsh*.").

As this Court has observed:

> As the statutory language of § 2000e(j) makes clear, this is not an area for absolutes. Religion does not exist in a vacuum in the workplace. Rather, it coexists, both with intensely secular arrangements such as collective bargaining agreements and with the intensely secular pressures of the marketplace. Hence the import of the statutory term "accommodate." The provision's use of the terms "reasonably" and "undue hardship" likewise indicates that this is a field of degrees, not a matter for extremes. Both terms are "variable ones," dependent on the extent of the employee's religious obligations and the nature of the employer's work requirements.

*Firestone Fibers*, 515 F.3d at 313 (quoting *EEOC v. Ithaca Indus., Inc.,* 849 F.2d 116, 120 (4th Cir. 1988) (en banc) (Wilkinson, J., concurring)); *cf. Braunfeld v. Brown*, 366 U.S. 599, 603 (1961) (observing, in the First Amendment context, that "[t]he freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions").  In evaluating whether an individual's beliefs are religious in nature, several sister circuits have looked to the three "useful indicia" set out in *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981) — including in the context of Title VII religious accommodation claims involving vaccination-related objections:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.  Third, a religion often can be recognized by the presence of certain formal and external signs.

*Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (quoting *Africa*, 662 F.2d at 1032); *accord Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000); *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229-30 (9th Cir. 1996); s*ee also* EEOC Compliance Manual at § 12-I-A-1 n.28 ("When evaluating whether the belief qualifies as religious, courts should consider whether the belief is merely focused on an 'isolated moral teaching' or rather is part of a 'comprehensive system of beliefs

about fundamental or ultimate matters.'") (citing *Fallon*, 877 F.3d at 492).[4]

While this Court "has not explicitly adopted the multi-part *Africa* framework to determine whether a belief is religious in nature," it has cited the analysis used in *Africa* with approval. *Versatile v. Johnson*, Civil Action No. 3:09CV120, 2011 WL 5119259, at *6 n.11 (E.D. Va. Oct. 27, 2011), *aff'd*, 474 F. App'x 385 (4th Cir. 2012); *see also Dettmer*, 799 F.2d at 931 (citing *Africa* factors with approval); JA71 (applying *Africa* guidance to evaluate claims in light of *Dettmer* and *Versatile*). As a district court in this Circuit cogently explained, "the more subjective approach" of the "Jamesian" standard urged by Appellant "does not offer clear boundaries that a court, and therefore litigants, must follow when evaluating or presenting claims." *Versatile*, 2011 WL 5119259, at *6 n.11.

The *Africa* indicia support the conclusion that the concerns about vaccination communicated by Appellant were not religious in nature. In her exemption request, she advised Inova that she had concerns about the long-term effects of the COVID-19 vaccines on her body (and that of her child), although she acknowledged medical

---

[4] The brief filed by the Virginia Office of the Attorney General ("OAG Amicus Brief") suggests that the *Africa* indicia are intended to answer the "critically different" question of whether particular beliefs qualify as "a religion" rather than as merely "religious." OAG Amicus Brief at 11. But OAG's brief ignores both *Fallon* and the EEOC Guidance cited above, which cite the *Africa* factors as useful guidance when assessing the religiosity of an accommodation request. In so doing, OAG overlooks the fact that Appellant's submission to Inova stated that her version of Christianity permitted her to be vaccinated if she felt so "led." JA21.

guidance deemed the vaccines to be safe and conceded that her beliefs are not, in fact, "anti-vaccine." JA21-22, JA40-41. Concerns like these about the potential health effects of vaccination (or failing to be vaccinated) do not "address fundamental and ultimate questions having to do with deep and imponderable matters" and are not "comprehensive in nature." *Fallon*, 877 F.3d at 492 (employee's objection to flu vaccine did not qualify as a religious belief protected by Title VII because his "worries about the health effects of the flu vaccine" and belief that "the flu vaccine may do more harm than good" did not "address fundamental and ultimate questions having to do with deep and imponderable matters" and were not "comprehensive in nature"); *Craven v. Shriners Hosps. for Children*, 2024 WL 21557, at *4 (D. Or. Jan. 2, 2024) ("[W]hether Plaintiff's body is a temple has no bearing" on whether objections to the COVID-19 vaccine were religious in nature, because Plaintiff's concerns that the vaccine "ingredients include carcinogens, neurotoxins, animal viruses, animal blood, allergens, and heavy metals" were "scientific and medical, not religious").

Even as Appellant explained that she made medical decisions through prayer and cited certain general Bible verses, she acknowledged that "Scripture [did] not expressly instruct" on the matter of whether she could receive the COVID-19 vaccine. JA40-41. Her stated concerns about accepting a vaccination for which she found the long-term effects uncertain, without more, are untethered to a particular

religious belief, and her claimed obligation to follow her conscience after prayer is, at most, an "isolated teaching." *Accord Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *5-7 (W.D. Wis. Mar. 10), *appeal filed*, No. 23-1660 (7th Cir. 2023) (observing that "the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion" and dismissing plaintiff Passarella's objection "[a]fter prayerful consideration" that she "must trust God with [her] body (His temple)" and "it goes against [her] conscience to receive" the COVID-19 vaccine because "there is no religious belief that would prevent Passarella from taking the vaccine if she believed it was safe"); *Bube v. Aspirus Hosp. Inc.*, No. 22-cv-745-jdp, 2023 WL 6037655, at *4 (W.D. Wis. Sept. 15, 2023), *appeal filed*, No. 23-2892 (7th Cir. 2023) (plaintiffs' "objections about personal autonomy, as well as the safety and efficacy of the vaccine" were not religious, even if "intermingled with" general "moral and religious language that taking the vaccine would violate their conscience, be inconsistent with God's wishes, and even qualify as a sin[,]" because they were "not tie[d] to any particular religious belief or practice that was inconsistent with taking the vaccine"); *Thornton v. Ipsen Biopharms., Inc.*, Civil Action No. 23-11171-JCB, 2023 WL 7116739, at *4 (D. Mass. Oct. 26, 2023), *appeal filed*, No. 23-1951 (1st Cir. 2023) (plaintiff's assertion that it would "defil[e her] perfectly created body that [God] created in His image" and "jeopardize [her] soul" found to be an isolated teaching given the lack of allegations that "her religion

requires her to observe certain medical limitations that include a refusal to take vaccines generally or the COVID-19 vaccine"); *Blackwell v. Lehigh Valley Health Network*, Civil No. 5:22-cv-03360-JMG, 2023 WL 362392, at \*8-9 (E.D. Pa. Jan. 23, 2023) (acknowledging that the United Church of Christ is a comprehensive religion but dismissing Title VII claim in part because "Plaintiff's belief against the 'insertion of an *unwanted* foreign object into her body'" is an "isolated moral teaching") (emphasis in original). Therefore, the district court correctly dismissed Count I of the Complaint.

### B.     Appellant's  Communications to Inova Did Not Demonstrate a Conflict Between Her Beliefs and Inova's COVID-19 Vaccine Requirement.

An employer does not owe any duty to accommodate beliefs – regardless of whether they are religious – that do not conflict with the employer's requirement. *See* 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 65 (1986) (requiring each employee to show that they "ha[ve] a bona fide religious ***belief that conflicts*** with an employment requirement") (emphasis added); *id.* at 76 (Stevens, J., concurring in part and dissenting in part) (Title VII "impose[s] a special duty [to accommodate] upon the employer when— and only when—a conflict arises between an individual's religious observance or practice and the employer's policy."); *EEOC v. Consol Energy*, 860 F.3d 131, 143 (4th Cir. 2017) (reiterating that the employee's beliefs must both be "sincerely

held . . . and conflict with [the employer's] requirement" to trigger the obligation to accommodate); *accord* EEOC COVID-19 Guidance at Question L.1 (Employees "need to explain the conflict" between their beliefs and the COVID-19 vaccination requirement "and the religious basis for it."). The Virginia Office of the Attorney General (OAG) agrees with this view. *See* OAG Amicus Br. at 22 ("Even when there is no dispute that the employee's belief is religious," a Title VII religious accommodation claim fails where "the belief did not actually conflict with an employment requirement.") (citing *Firestone Fibers*, 515 F.3d at 312, and *Chalmers*, 101 F.3d at 1019). After all, "[i]f an employer has not been given adequate notice of an employee's religious ***conflict***, then *ipso facto* the religious animus that [Title VII] was designed to prevent cannot have existed." *Cary v. Carmichael*, 908 F. Supp. 1334, 1344 (E.D. Va. 1995), *aff'd sub nom. Cary v. Anheuser-Busch, Inc.*, 116 F.3d 472 (4th Cir. 1997) (first emphasis added). Appellant failed to meet that threshold requirement.

Unlike some of the cases upon which Appellant relies, this is not a case on which the motion to dismiss presented only the pleadings for review; in this case, the Complaint reviewed by the District Court included all of Appellee's exemption request communications to Inova. Nor is this a case in which the plaintiff "alleged that she has a religious objection to vaccines of any kind[,]" as in *Lucky v. Landmark Medical of Michigan, P.C.*, 103 F.4th 1241 (6th Cir. 2024). Quite the contrary:

Appellant "was careful to note that she did not oppose all vaccinations"; stated multiple times that she is "not an anti-vaccine person"; and acknowledged that she was "fully vaccinated except for C[OVID-19]", including receiving the flu vaccine. JA8, JA22-23, JA40-41. In her scheme of things, Appellant makes "a place . . . for both Science and Religion" and believes that "[t]aking medicine does not mean you aren't trusting God to heal you." JA40-41. Indeed, Appellant explained, she made the "***personal decision*** to not receive the vaccination because in prayer [she had] ***not yet*** felt led to do so[,]" but ***if she felt led through prayer "to the [COVID-19] vaccine next year, or the year after or in 5 years," she would get vaccinated***. JA22-23, JA40-41 (emphasis added). In other words, reviewing Appellant's own allegations in the light most favorable to her, she stated she should decide whether complying with the policy was right for her after prayer. Inova's policy emphatically does not conflict with a belief that one must make medical decisions after prayer. Her conclusion was that she did not choose to be vaccinated when Inova asked, but not because of any particular religious conflict that did not allow her to accept it.

In short, Appellant's own statements demonstrated that she lacked any "honest conviction that [compliance with the policy] was forbidden by [her] religion." *Thomas*, 450 U.S. at 716; *accord Osborne v. Bayhealth Med. Ctr., Inc.*, Civil Action No. 23-465-RGA, 2024 WL 278209, at **3-4 (D. Del. Jan. 25, 2024) (dismissing Title VII religious accommodation claim where plaintiff sought an

exemption, requesting "the opportunity to choose in time and if my faith leads me to get the COVID-19 vaccine" because plaintiff "fail[ed] to adequately link her objection to the COVID-19 vaccines to religious beliefs stemming from her Christian faith" and, indeed, "indicate[d] that she might eventually choose to receive the vaccine 'if [her] faith leads [her] to' that decision"); *Moli v. King Cnty.*, Case No. 2:23-cv-00823-RSL, 2024 WL 1860184, at *2-4 (W.D. Wash. Apr. 29, 2024) ("While the Court fully credits [the plaintiff's] belief that her body is to be cherished and protected as a reflection of and temple to her deity, there is no indication that this belief compels her to reject any particular medical intervention, injection, or foreign substance[,]" especially because "plaintiff acknowledges that neither injections nor vaccines are, as a general matter, forbidden in her belief system"). This lack of conflict is fatal to her claim. *See Dachman*, 9 F. App'x at 182 (affirming district court's ruling rejecting Title VII religious accommodation claim as to employee's religious practices that could be performed at any time during the week and, therefore, did not conflict with prohibition against working on Sabbath); *accord Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024) (requiring the plaintiffs to "plausibly connect [their] refusal to receive the vaccine with [their] religious beliefs" to state a claim); *Sturgill v. Am. Red Cross*, Case No. 22-cv-11837, 2023 WL 8701293, at *6 (E.D. Mich. Dec. 15, 2023), *appeal filed*, No. 24-1011 (6th Cir. Jan. 8, 2024) (dismissing complaint where citations to scripture describing "the

human body as God's temple and espous[ing] the value of protecting it" did not illustrate why the plaintiff "thinks taking the COVID-19 vaccine violates her religious beliefs[,]" and "under Plaintiff's belief system, if she believed that the vaccine was safe and effective, she would have no qualms with getting vaccinated").

Appellant's more generalized assertions that she makes medical decisions through prayer or had conscience-based concerns are similarly insufficient. *See* Appellant's Br. at 21-22. "[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Yoder*, 406 U.S. at 215-16; *see* JA69, JA70 (citing *Yoder*); *see also* EEOC Compliance Manual § 12-I-A-1 (citing *Yoder* for the proposition that "unlike religious beliefs, philosophical and personal beliefs 'do[] not rise to the demands of the Religion Clauses[].').

While this is not a First Amendment case, CMS identified (and the Supreme Court recognized) a compelling interest in "protect[ing] the health and safety" of staff and patients in facilities covered by Medicare and Medicaid. *Biden*, 595 U.S. at 91-92 (citations omitted); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest…."); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 353 (4th Cir. 2011) ("[T]he state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest."); *accord Does 1-6 v. Mills*, 16

F.4th 20, 32 (1st Cir. 2022) ("Few interests are more compelling than protecting public health against a deadly virus.").  To state the obvious, a deadly disease like COVID-19 both poses a "substantial threat to public safety[]" and health and places "intensely secular pressures" on the operations of health care facilities like Inova. *Yoder*, 406 U.S. at 230; *Firestone Fibers*, 515 F.3d at 313.

Taken to its logical extreme, "[t]he same conscience-based justification" that Appellant espouses "could be used to evade any job requirement that [an employee] disagreed with." *Foshee v. AstraZeneca Pharms. LP*, Civil No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023).  "For example, a hypothetical plaintiff could assert, despite his shift starting at 8, that his God-given conscience or the Holy Spirit told him to rest and not start to work until 10:30.  Mandating that such assertions be accommodated as religious in nature would entirely frustrate an employer's ability to maintain an orderly workplace." *Id.*; *accord Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), *appeal dismissed*, 2023 WL 6057495 (3d Cir. Sept. 18, 2023) (dismissing Title VII claim where plaintiff's "belief that she has a 'God given right to make [her] own choices' – which, implicitly, her employer must unfailingly respect—would amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted . . . obligations'") (citations omitted); *Kather v. Asante Health Sys.*, No. 1:22-cv-01842-MC, 2023 WL 4865533, at *5 (D. Or. July 28, 2023) ("'[V]ague expressions of sincerely held

[religious] beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations.'") (quoting *Finkbeiner*, 623 F. Supp.3d at 465-66); *Ulrich v. Lancaster Gen. Health*, Civil Action No. 22-4945, 2023 WL 2939585, at *5-6 (E.D. Pa. Apr. 13, 2023) (dismissing Title VII claim where plaintiff's "citation to a 'religious faith' that her body is 'a temple of the Holy Spirit,' and assertion that this gives her the right to determine which 'medical interventions' 'comport with' this commandment, is . . . 'fungible enough to cover anything she trains it on[]'"). To hold otherwise would improperly allow a worker to avoid any and all policies with which she had a personal disagreement (as opposed to a religious conflict) simply by saying each such disagreement was ratified by prayer, unless the employer could – after protracted litigation – demonstrate that each such request posed an undue hardship to its operations. *See, e.g.*, *Cox v. Valley Health Sys.*, Civil Action No. 5:23-cv-00051, 2024 WL 3236414, at *5 (W.D. Va. June 28, 2024) ("[E]mployees are not entitled to 'blanket exemptions' to 'make unilateral decisions' about job requirements with which they will comply, 'even where religion is expressly invoked in communicating beliefs.'") (quoting *Shigley v. Tydings & Rosenberg*, No. JKB-23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024)). This cannot be the law.

Reading the Complaint and the written exemption requests incorporated by reference therein as a whole, the District Court correctly concluded that Appellant

failed to plead she communicated to Inova a bona fide religious belief that conflicted with her ability to be vaccinated against COVID-19. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680. Count I of the Complaint was properly dismissed.

### III. Appellant's Disparate Treatment Claims in Counts II and III of the Complaint Failed To State A Plausible Claim of Intentional Discrimination.

The District Court properly dismissed Appellant's disparate treatment claims under Title VII (Count II) and the VHRA (Count III), respectively, for two reasons. First, as the District Court correctly observed, the allegations of the Complaint failed to "survive *Twombly* and *Iqbal*" (JA61-62) because Appellant offered no factual allegations to raise a reasonable inference that Inova intentionally treated her differently than others because of her religion. Second, Count II failed inasmuch as it= was unsupported by factual allegations beyond those undergirding Appellant's Title VII failure to accommodate allegations, sought no additional relief, and was entirely duplicative of that claim.[5]

---

[5] Like Title VII, the Virginia Human Rights Act prohibits covered employers from "discharg[ing] . . . any individual . . . because of such individual's . . . religion[.]" Va. Code § 2.2-3905(B)(1)(a). Accordingly, courts often analyze Title VII and VHRA disparate treatment claims together – as the District Court properly did here. *See, e.g.*, *Sunkins v. Hampton Roads Connector Partners*, __ F. Supp. 3d __, Civ. No. 2:23cv91, 2023 WL 7411761, at *3 (E.D. Va. Nov. 9, 2023) (citing *Abreu v. N. Am. Partners in Anesthesia, LLP,* C.A. No.1:22-cv-759 (RDA/WEF), 2023 WL 5959430, at *10 n.8 (E.D. Va. Sept. 12, 2023)); *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 394 n.4 (W.D. Va. June 15, 2023).

### A. Appellant's Complaint Lacks Sufficient Facts To Create a Plausible Inference That Inova Intentionally Treated Her Differently Because of Her Religion.

The District Court's ruling that Counts II and III of Appellant's Complaint cannot "survive *Twombly* and *Iqbal*" is correct and should be affirmed. JA61-62.

As an initial matter, Appellant's contention that "she has pled direct evidence" in support of her disparate treatment claim could not be further from the truth. Appellant's Br. at 29. Direct evidence is "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Appellant's Complaint pleads no such evidence. Indeed, the only support Appellant points to for this assertion is her fact-free, conclusory Complaint allegation that because Inova granted some religious exemption requests, it must have found "other 'more conventional beliefs'" more acceptable than it found her beliefs. Appellant's Br. at 29 (quoting JA13-14 (¶ 53)). Appellant cites no legal authority in support of her claim that these allegations constitute direct evidence of discrimination. Nor could she.

Absent direct evidence, to state a plausible disparate treatment religious discrimination claim, a plaintiff-employee must plead and ultimately show that her employer "treated her differently than other employees because of her religious

36

*beliefs.*" *Chalmers*, 101 F.3d at 1017 (emphasis in original); *see also Abeles v. Metro. Washington Airports Auth.*, 676 F. App'x 170, 174 (4th Cir. 2017) ("[A] plaintiff must show '(1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment'—which here means more severe discipline—'than similarly situated employees outside the protected class.'") (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Appellant has not plausibly alleged that she was treated more harshly than similarly situated employees outside her protected class, so Counts II and III were properly dismissed.[6]

Inova acknowledges that "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). But where, as here, a plaintiff "base[s] their allegations completely upon a comparison to an employee from a non-protected class," their ability to state a claim "depends upon whether that comparator is indeed similarly situated[,]" and the plaintiff is "required to show that

---

[6] It is not at all clear what protected class Appellant claims to be a member of, either. In her Complaint, she describes her beliefs in various places as both Christian or "Unique." *Compare* JA7 (¶ 17) *with* JA13-14 (¶ 53). Regardless, her pleading lacks sufficient allegations to permit any comparison that would allow a court or jury to "change [Appellant's religion] and see if the outcome changes[,]" as Title VII's disparate treatment provision requires. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).

they are similar in all relevant respects to their comparator." *Id.*; *see also* Appellant's Br. at 28 ("[T]his Circuit has recognized that a plaintiff need not plead an 'appropriate comparator' **unless she 'lacks direct evidence of discrimination**.'") (quoting *Tinsley v. City of Charlotte*, 854 F. App'x 495, 510 (4th Cir. 2021) (Gregory, J., dissenting)) (emphasis added).

Appellant's allegations in this case are woefully deficient. She identifies no other employees – similarly situated or otherwise – at all, and she contends, based on nothing more than "information and belief," that Inova "'pick[ed] winners and losers' and only grant[ed] exemptions to religious groups preferred by Inova," *i.e.*, those who "came from more prominent religions or held to more conventional beliefs related to religious exemptions to vaccines[.]" JA4, JA13-14. "Such conclusory allegations" made "'upon information and belief'" are "'insufficient to defeat a motion to dismiss.'" *Harman v. Unisys Corp.,* 356 F. App'x 638, 640–41 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (affirming the dismissal of allegations that Arab Muslim men were arrested and detained in disproportionate numbers following the events of 9/11 because such allegations, without further factual support, were merely consistent with a discriminatory motive and did not plausibly support a claim of intentional race or religious discrimination); *Fontell v. McGEO UFCW Local 1994*, Civil Action No. AW-09-2526, 2010 WL 3086498, at *8 (D. Md. Aug. 6, 2010), *aff'd*,

410 F. App'x 645 (4th Cir. 2011) (dismissing Section 1981 claim because, "other than Plaintiff's assertions that '[u]pon information and belief, [Defendants do] not act [in a discriminatory] manner against other (non African American or male) employees…', Plaintiff does not sufficiently allege that [Defendant] had a racial animus[]'"); *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 528 (D. Md. 2015), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016) ("Conclusionary allegations that similar actions were not taken against [other] employees [outside the plaintiff's protected class] are 'insufficient' to state a discrimination claim.").

Virtually every employment decision results in "'winners and losers,'" as Appellant frames it. JA4 (¶ 16). One candidate in a competitive application process is hired for a job, while the other applicants are not; an employee is chosen over others who applied for a promotion; another employee gets a larger bonus than does her co-workers. But courts do not act as super-personnel departments, scrutinizing employment decisions simply because the employer has been accused of discrimination. *See, e.g.*, *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). Rather, to state a religious disparate treatment claim, the complaint must plausibly allege that the decision was made *because of* the plaintiff's religion. *See Iqbal,* 556 U.S. at 681; *Coleman*, 626 F.3d at 190. Appellant's Complaint does not clear this threshold.

People who "'h[o]ld less well-known or respected religious beliefs,'" without

any description of what those purportedly lesser known or less respected beliefs are, are not a protected class. JA13-14 (¶ 53); *see, e.g., Cox*, 2024 WL 3236414, at *6 ("A similarly situated employee must be outside of the protected class and treated differently than the plaintiff.") (citing *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024)). Nor, for that matter, are "'employees who h[o]ld to conventional beliefs related to religious exemptions to vaccines'" an identifiable group of comparators. *Id.* Indeed, according to her pleading, Appellant's beliefs were "'Unique[,]'" suggesting she believes the protective class she belongs to is a class of one. JA13 (¶ 52). But "[t]he similarly situated element requires a plaintiff to "provide evidence that the proposed comparators are not just similar in some respects, but 'similarly-situated in all respects.'" *Cosby*, 93 F.4th at 714 (internal citations omitted). Appellant's vague allegations do not allow for any meaningful comparison between or among Inova team members who applied for religious exemptions from the vaccine requirement or suggest Inova's decision making was motivated by intentional religious animus. Plaintiff's allegations, therefore, do not "nudge [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 545, 570; *see also Coleman*, 626 F.3d at 190-91 (affirming dismissal of Title VII claim where complaint "conclusorily allege[d] that [plaintiff] was terminated based on his race, [but did] not assert facts establishing the plausibility of that allegation").

The Complaint also acknowledges an obvious alternative explanation for the treatment that Appellant encountered. Appellant, like all other Inova employees, was required to receive the COVID-19 vaccine under its Immunization Program Policy. JA6 (¶ 12). In the light most favorable to Appellant, the allegations in Paragraphs 53 and 62 of the Complaint, respectively, that Inova "chose to exempt employees who came from more prominent religions or held to more conventional beliefs related to religious exemptions to vaccines" while "den[ying] exemptions to employees like [Appellant] who held less well-known or respected religious beliefs" and "found certain religious beliefs as sufficiently acceptable to qualify for a C[OVID]-19 Policy exemption, while rejecting others[,]" are "*consistent* with discrimination, [but they do] not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586 (emphasis in original); *see also Bing*, 959 F.3d at 618 ("The mere fact that a certain action is potentially consistent with discrimination does not support a reasonable inference that the action was motivated by bias."); *Iqbal*, 556 U.S. at 681 (citing *Twombly*, and stating "As between that 'obvious alternative explanation… and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.'").

Moreover, a complaint cannot "survive a motion to dismiss" when a court "can only speculate" about "the *possibility* that a plaintiff might later establish some

set of undisclosed facts to support the record[.]" *McCleary-Evans*, 780 F.3d at 586-87 (emphasis in original). Here, Appellant asks the Court to engage in pure speculation that Inova granted exemptions to persons who were from "more prominent religions" or had "more conventional beliefs" compared to her. *Id.*; *see also Spa v. Aiken/Barnwell Ctys. Cmty. Action Agency, Inc.*, No. CV 1:24-31-JDA-SVH, 2024 WL 2848492, at *8 (D.S.C. Mar. 1, 2024) (dismissing Title VII disparate treatment claim where plaintiff failed to "allege[] her 'employer treated [her] more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct.'") (quoting *Chalmers*, 101 F.3d at 1017), *report and recommendation adopted*, 2024 WL 2315293 (D.S.C. May 22, 2024).

As such, Counts II and III of the Complaint "'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *McCleary-Evans*, 780 F.3d at 586-87 (quoting *Iqbal*, 556 U.S. at 678 (in turn quoting *Twombly*, 550 U.S. at 557)); *see also Rose-Stanley v. Virginia*, No. 2:15-cv-7, 2015 WL 6756910, at *4 (W.D. Va. Nov. 5, 2015) (Because the plaintiff "has not stated any viable claim under federal law, she cannot claim an unlawful discriminatory practice under the VHRA[.]"). Appellant's disparate treatment claims were properly dismissed.

### B. Count II of the Complaint Was Also Properly Dismissed as Duplicative of Her Title VII Religious Accommodation Claim.

Count II also was properly dismissed because it was substantively duplicative

of Count I.   In both Counts I and II, Appellant alleges that she requested an

exemption from Inova's COVID-19 vaccination requirement, but that Inova denied

that request based on her beliefs.   *Compare* Compl. ¶ 45 (Count I) ("Ultimately,

Inova *denied Mrs. Barnett's request for reasonable accommodation* that would have

allowed her to continue to perform her job, and disciplined her by suspending and

then terminating her employment, simply because she would not agree to violate her

sincerely-held Religious Beliefs.") *with* Compl. ¶¶ 52, 54 (Count II) ("While Inova

granted accommodations to certain religious beliefs, it *refused to accommodate*"

Plaintiff's beliefs by "*den[ying her] an exemption to the Covid-19 Policy* that would

have allowed her to continue to perform her job and disciplined her by suspending

and then terminating her employment simply because she would not agree to violate

her Religious Beliefs.") (emphasis added).[7]

Inova acknowledges that, as a theoretical matter, a plaintiff is "'welcome to

establish disparate treatment on different facts'" from her religious accommodation

claim.   Appellant's Br. at 25 (quoting *Enriquez v. Gemini Motor Transp. LP*, No.

---

[7] Inova is not arguing, as Appellant contends, that Appellant's VHRA claim in Count III of the Complaint should be dismissed as duplicative.  *See* Appellant's Br. at 26-27.  Nevertheless, as explained above, the District Court properly concluded that as Appellant had failed to state a cognizable disparate treatment claim as a matter of federal law, so too Appellant failed to state a plausible claim for relief under the VHRA.  *See, e.g.*, *Deabreu v. UPS*, 800 F. App'x 202, 202 (4th Cir. 2020) (This Court "'may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court.'") (quoting *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016)).

CV-19-04759-PHX-GMS, 2021 WL 5908208, at \*10 (D. Ariz. Dec. 14, 2021)).

Here, however, Appellant relied upon the same set of facts to support both claims without adding substantive additional facts that created a plausible entitlement to relief under a disparate treatment theory of discrimination.  It is true that Rule 8 generally permits a party to "set out 2 or more statements of a claim" in the alternative, "either in a single count . . . or in separate ones." Fed. R. Civ. P. 8(d)(2); *see Feminist Majority Found. v. Hurley*, 911 F.3d 674, 696 (4th Cir. 2018) (explaining that parties may generally "plead[] multiple or alternative claims based on the same facts" and rejecting the notion that Title IX retaliation claim was duplicative of Title IX sex discrimination claim).  But it also "'goes without saying that courts can and should preclude double recovery by an individual.'"  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 333 (1980)).

As a result, "'it would be superfluous'" to permit Plaintiff to allege claims under "'Title VII for both failure to accommodate and disparate treatment'" based on the same allegations.  *Enriquez*, 2021 WL 5908208, at \*10 (quoting *Dykzeul v. Charter Commc'ns, Inc.*, No. CV 18-05826 DSF (GJSx), 2019 WL 8198218, at \*10 (C.D. Cal. Nov. 18, 2019)); *see also Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 510-11 (D. Md. 2019) (granting motion to dismiss "failure to engage in interactive process to arrive at [religious] accommodation" claim as duplicative of plaintiff's

Title VII religious failure-to-accommodate claim). Furthermore, had Appellant prevailed on both Counts I and II, the doctrine of double recovery would bar her from recovering the same relief (lost wages, compensatory and punitive damages, and reasonable attorney's fees) twice. *See Waffle House*, 534 U.S. at 297. For these reasons, Count II was properly dismissed.

## CONCLUSION

For the foregoing reasons, the decision of the Eastern District of Virginia dismissing Appellant's Complaint should be affirmed.

## REQUEST FOR ORAL ARGUMENT

Appellee believes oral argument would be helpful and therefore requests a hearing on this matter.

July 10, 2024                              Respectfully Submitted,


                                          */s/ Nancy N. Delogu*
                                          Nancy N. Delogu
                                          LITTLER MENDELSON, P.C.
                                          815 Connecticut Avenue NW
                                          Suite 400
                                          Washington, DC  20006.4046
                                          Telephone:      202.842.3400
                                          Facsimile:      202.842.0011
                                          nndelogu@littler.com

                                          Alexander P. Berg
                                          Lauren M. Bridenbaugh
                                          LITTLER MENDELSON, P.C.
                                          1800 Tysons Boulevard
                                          Suite 500
                                          Tysons Corner, VA 22102
                                          Telephone:    703.442.8425
                                          Facsimile:    703.442.8425
                                          aberg@littler.com
                                          lbridenbaugh@littler.com

                                          *Counsel for Appellee*

## RULE 32(g)(1) CERTIFICATE OF COMPLIANCE

1.    This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A) because this brief contains 10,544 words, excluding the parts of the brief exempted by Fed. R. App. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using in Times New Roman 14-point font.

*/s/ Nancy N. Delogu*
Nancy N. Delogu

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2024, a true and correct copy of the foregoing Brief was filed electronically with the U.S. Court of Appeals for the Fourth Circuit, which will send a notice of the filing to all counsel of record.

*/s/ Nancy N. Delogu*
Nancy N. Delogu