# NO. 24-1271

In The

# United States Court Of Appeals
## For The Fourth Circuit

## KRISTEN M. BARNETT,

*Plaintiff – Appellant,*

v.

## INOVA HEALTH CARE SERVICES,

*Defendant – Appellee,*

------------------------------

## COMMONWEALTH OF VIRGINIA;
## FORMER EEOC GENERAL COUNSEL AND
## RELIGIOUS NONDISCRIMINATION EXPERT;
## ALLIANCE DEFENDING FREEDOM,

*Amici Supporting Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

———————

## REPLY BRIEF OF APPELLANT

———————

Timothy P. Bosson
Isaiah R. Kalinowski
BOSSON LEGAL GROUP PC
8300 Arlington Boulevard,
Suite B2
Fairfax, VA 22031
(571) 775-2529
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................2

    I.     The facts of this case demonstrate that Mrs. Barnett based her objection to Inova's policy on sincerely-held religious beliefs. ...........2

    II.    Inova's arguments reveal a fundamental misunderstanding about the category of sincerely-held religious beliefs, and instead conflate beliefs with dogmatic teachings, or religion, broadly defined. ......................................................................................8

        A.    In criticizing Barnett, Inova confused individual religious beliefs with religious teachings from texts or religious authorities. ...............................................................................8

        B.    Inova confuses religious beliefs with religion as a category, just as the district court did in its dismissal of Barnett's complaint. ...............................................................15

    III.    The primary issue before this Court is the religiosity of Barnett's beliefs—not sincerity, a factual issue that was never raised below, and certainly not undue hardship, a fact-intensive affirmative defense. ............................................................................19

    IV.    Barnett pled sufficient facts to proceed on her claims of disparate treatment. ............................................................................20

CONCLUSION .................................................................................................23

CERTIFICATE OF COMPLIANCE ....................................................................24

# TABLE OF AUTHORITIES

**Page:**

**Cases:**

*Africa v. Pennsylvania*,
662 F.2d 1025 (3d Cir. 1981)...................................................................*passim*

*Am. Humanist Ass'n v. Maryland-National Capital Park & Planning Comm'n*,
891 F.3d 117 (4th Cir. 2018)..............................................................17

*Chalmers v. Tulon Co.*,
101 F.3d 1012 (4th Cir. 1996).............................................................21

*Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*,
No. 1:23CV1110 (DJN), 2024 U.S. Dist. LEXIS 110887
(E.D. Va. June 24, 2024)..................................................................18

*Doswell v. Smith*,
No. 94-6780, 1998 U.S. App. LEXIS 4644
(4th Cir. Mar. 13, 1998)...........................................................11, 17

*EEOC v. Ilona of Hungary, Inc.*,
108 F.3d 1569 (7th Cir.1997)..............................................................14

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*,
877 F.3d 487 (3d Cir. 2017)...............................................................15

*Fuller v. Phipps*,
67 F.3d 1137 (4th Cir. 1995)..............................................................22

*Lucky v. Landmark Med. of Michigan, P.C.*,
No. 23CV11004, 2023 U.S. Dist. LEXIS 192507,
2023 WL 7095085 (E.D. Mich. Oct. 26, 2023)..............................................14

*Lucky v. Landmark Medical of Mich., P.C.*,
103 F.4th 1241 (6th Cir. 2024)......................................................13, 14, 22

*Mickle v. Moore (In re Long Term Admin.*
    *Segregation of Inmates Designated As*
    *Five Percenters)*,
    174 F.3d 464 (4th Cir. 1999)...........................................................17

*Passarella v. Aspirus, Inc.*,
    Nos. 23-1660, __ F.4th __ (7th Cir. Jul. 29, 2024).......................11

*Patrick v. LeFevre*,
    745 F.2d 153 (2d Cir. 1984)...........................................................17

*Ringhofer v. Mayo Clinic, Ambulance*,
    102 F.4th 894 (8th Cir. 2024).........................................................13

*Thomas v. Review Board of the Indiana Employment Security Division*,
    450 U.S. 707 (1981).......................................................................12

*United States EEOC v. Consol Energy, Inc.*,
    860 F.3d 131 (4th Cir. 2017)......................................................7, 19

*United States v. Ballard*,
    322 U.S. 78 (1944).........................................................................11

*Versatile v. Johnson*,
    Civil Action No. 3:09CV120, 2011 U.S. Dist. LEXIS 124541
    (E.D. Va. Oct. 27, 2011) ...........................................................17, 18

*Welsh v. United States*,
    398 U.S. 333 (1970).........................................................................7

**Statutes:**

42 U.S.C. § 2000e ............................................................................18, 20

EEOC Compliance Manual at § 12-I-A-1 ......................................15, 16

**Rules:**

Fed. R. Civ. P. 8 ................................................................................20

**Other Authorities:**

Søren Kierkegaard, *Fear & Trembling*,
(1941 Walter Lowrie translation, original
published in Danish in 1843 s*ub nom. Frygt og Bæven*)..........................................8

# INTRODUCTION

As argued in the opening brief, the law protects Barnett's sincerely-held religious beliefs, which had precluded her from accepting the Covid-19 vaccination, and which she explained to Inova in seeking exemption to the vaccination policy. She also explained these beliefs in her complaint, stating her claim for relief against the discriminatory termination of her employment.

Yet Inova distorts Barnett's sincere arguments into a demand for unchecked prerogative, cynically deployed to avoid responsibility, and nakedly asserted without submitting to proper judicial analysis. Inova repeatedly insisted that Barnett's appeal is no more than an argument that the district court should not have evaluated her claim to assess whether she stated a cause of action. Aplee. Br. 20-21. Quite to the contrary, seeking judicial review of the grounds for her termination is precisely why she filed her complaint; the problem was that the district court applied a clearly erroneous analysis in doing so. The proposition that the district court had to assess the religiosity of Barnett's beliefs is uncontroversial; this appeal primarily concerns the appropriate metric for doing so.

**ARGUMENT**

**I.** **THE FACTS OF THIS CASE DEMONSTRATE THAT MRS. BARNETT BASED HER OBJECTION TO INOVA'S POLICY ON SINCERELY-HELD RELIGIOUS BELIEFS.**

In the Appellee brief, Inova went to great lengths to distort the facts of this case. Unlike the cases Inova cited for comparison, Barnett's objection to Inova's vaccination policy was almost entirely religious, and no distortion of the facts in the record will change that. Moreover, Barnett's answers as a layperson were remarkably cogent given the fact that she is not a theologian or an attorney; indeed, she was not required to be either to be afforded the protection of the law.

Barnett made two attempts for exemption from the vaccination policy based on sincerely-held religious beliefs, a first in December 2021, and a second in March 2022. JA18-28.

In her first effort, Barnett related that she became a Christian in 2011, and since then she has "made all life decisions after thoughtful prayer and Biblical guidance." JA21. This consistent approach was the one she followed in seeking God's direction about the vaccination policy. She "pray[ed] about receiving the vaccine" from the time in 2021 when Inova instituted its first vaccination exemption process, accepting what God instructed through "thoughtful prayer and continuous seeking of the Lord's will." JA21. She concluded from this process that God had instructed her not to receive the vaccine at that time, but remained

2

open to further instruction from God, and did not foreclose the possibility of being led to receive the vaccination at some point in the future.  JA21.  Indeed, she indicated her plan to "continu[e] to pray and allow the Lord to guide [her]," adding that if God directed her to receive the vaccine at a later time, she would "follow His guidance."  JA22.  However, given the instruction from God she had at that time, submitting to the vaccination policy would have violated her conscience and would have "show[n] that [she was] not trusting the Lord [which would] ultimately crush [her] spirit."  JA21-22.

In support, Barnett relied on clear Christian doctrine from the Epistle to the Romans, stating that, "But if you have doubts about whether or not you should eat something, you are sinning if you go ahead and do it.  For you are not following your convictions.  If you do anything you believe is not right, you are sinning." JA22.  She applied that passage to her decision, concluding that it would be sinful to accept the vaccination if she had been convicted not to do so.  JA22.

To be clear, Barnett's objection to the vaccination was not a veiled sense of prudential hesitancy based on the perceived safety of the Covid-19 vaccine or other vaccines, as she is "not an anti-vaccine person," and she was otherwise "fully vaccinated," accepting "a place in this world for both Science and Religion." JA21.  She reassured Inova that her decision was "not based on personal philosophy or inconvenience."  JA22.  When asked by Inova's exemption

questionnaire whether her belief was consistently applied to other vaccines, she showed the consistency of her belief in referring to God in prayer for direction. She answered that she and her family "make medical decisions as a family through Scripture guidance and prayer," and that her objection to the Covid-19 vaccination was "due to the spiritual contention in which I have encountered in thoughtful prayer." JA22. Answering a similar question about her use of other medicines, she answered that she chose to use medications based on prayer: "Through prayer, medicine and medical care is sought when led, and always in conjunction with prayer, never as a sole healer." JA22.

Along with her own written statement, Barnett submitted a letter from both her and her pastor in support of her exemption request. JA23. That letter explained that, "[w]here Scripture does not expressly instruct on a particular matter," a believer is "required to search the Scripture" for applicable doctrines, and then "to seek personal guidance from the Holy Spirit." JA23. The letter then acknowledged that there was no official "church doctrine" on whether individual believers should receive vaccinations. JA23. However, the letter concluded with the statement that "[a]llowing substances to be introduced into my body that I believe God has directed me not to receive and believe to be displeasing to God would be a violation of my sincerely held religious beliefs." JA23.

In her second request for exemption, made in response to Inova's initial denial of her initial application for exemption, Barnett reiterated the prayerful approach she took to her position, and that she had been praying about the decision since applying for her temporary medical exemption in mid-2021. JA24. She explained that in November of 2021, she dedicated "focused time in fervent prayer as is required by my faith [which] took over a month to really pray and focus on God's will over receiving the vaccine." JA24. She based this approach on biblical teaching that instructs, "do not be anxious about anything, but in every situation, by prayer and petition, with thanksgiving, present your requests to God." JA24.

After "pray[ing] and seek[ing] God's will in [her] life," she explained that, although God had not commanded her "to refuse all vaccines," she had received "commandments to refuse Covid 19 vaccines," adding that God had "given [her] clear guidance that [she was] commanded to continue to refuse these [Covid-19] vaccines." JA24.

Correcting a statement she made in her initial request, she clarified that she understood "that these vaccines have been determined to be safe and my medical concerns are of no importance on a religious exemption." JA24. In fact, contrary to the mischaracterization of Inova, Barnett explained that she addressed her personal, prudential concerns about the vaccine to God, to submit to what He would instruct: She addressed her "cares and concerns to God for His guidance

and direction." JA24. She explained this nuanced distinction of Christian dogma, that, while "medical concerns have no application to a Religious Exemption, … when we have real life concerns, that serves to draw us to the ever-present God who saves, leads and directs." JA25. Barnett submitted her personal concerns to God to receive his direction and guidance for how to act.

Barnett made it clear that she took seriously the biblical injunction that her body was "the temple of the Holy Spirit," such that her body did not "belong to [her]self," but that she "must honor God with [her] body." She interpreted this verse to mean that she "must submit [her] body to Him for [her] direction in life for all things including medical decisions." JA25.

In other cases where plaintiffs have referred to this verse for authority, it may have sometimes been interpreted as enjoining a believer from admitting a substance they themselves have deemed harmful into their body. *See*, *e.g.*, JA71-72. However, it is clear from her statements that Barnett viewed this teaching as a command to obey the instructions God had laid upon her conscience within the actions taken with and pertaining to her physical body.

Barnett concluded these statements by reiterating that she was bound by the guidance God had given her, even up to the minute: "Even as I write this appeal, I am asking God to confirm His will and even still, He commands complete abstinence from these vaccines. If I were to refuse His command, I would be

removing Him from the place of authority over my life. That would be a sin and a huge mistake." JA25. Referring again to the verse from Romans, she reiterated that she had been "forbidden and it would be a sin to do anything that I know that my consciousness instructs that I ought not do." JA26. She reiterated that the reason for her objection to the vaccination was religious, "not medical, scientific, political, philosophical, ethical, or otherwise secular in nature." JA26.

Given that Inova's denial of her initial exemption request was nonspecific, Barnett then turned to a discussion of a putative "undue burden" that Inova may have relied upon in denying her exemption (JA26-28); however, that discussion is not germane to the currently disputed issue of religiosity. The references to that section of her application within Inova's brief fail to note this distinction.

In sum, Barnett was remarkably consistent in her description of her religious beliefs that mandated her refusal to accept the Covid-19 vaccination. Inova attempts in its brief to malign this clear statement and to take selections out of context. However, when fairly read in its totality, Barnett stated beliefs that align with the cases discussed in Barnett's opening brief. *See United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 138-139 (4th Cir. 2017); *Welsh v. United States*, 398 U.S. 333, 340 (1970). She read, interpreted, and relied upon written Scripture, and ultimately followed the direction given to her by God in prayer, even when it meant giving up her livelihood and promising career. At its most

basic, her reason for refusing the Covid-19 vaccine was the most fundamental of
religious reasons—God had forbidden it.  She believed the God of the Bible, a
book detailing the experiences of people to whom God had spoken and given
explicit commands to do or not to do a given act, and who were judged
accordingly.  As Kierkegaard might say, Barnett stood in "absolute relation to the
absolute," not by observing a universal dogma against vaccination enunciated by a
religious authority, but by her particular interaction with the divine.[1]

## II.  INOVA'S ARGUMENTS REVEAL A FUNDAMENTAL MISUNDERSTANDING ABOUT THE CATEGORY OF SINCERELY-HELD RELIGIOUS BELIEFS, AND INSTEAD CONFLATE BELIEFS WITH DOGMATIC TEACHINGS, OR RELIGION, BROADLY DEFINED.

### A. IN CRITICIZING BARNETT, INOVA CONFUSED INDIVIDUAL RELIGIOUS BELIEFS WITH RELIGIOUS TEACHINGS FROM TEXTS OR RELIGIOUS AUTHORITIES.

In the face of Barnett's clear explanation of the beliefs that conflicted with
the vaccination policy, Inova argued that she failed to provide a legitimate
religious reason, but instead "expressed personal preferences and secular medical

---

[1] "[T]he paradox is that he as the individual puts himself in an absolute relation to
the absolute.  Is he justified in doing this?  His justification is once more the
paradox; for if he is justified, it is not by virtue of anything universal, but by virtue
of being the particular individual."

Søren Kierkegaard, *Fear & Trembling*, p. 30 (1941 Walter Lowrie translation,
original published in Danish in 1843 s*ub nom. Frygt og Bæven*) (*available at*
https://www.sorenkierkegaard.nl/artikelen/Engels/101.%20Fear%20and%20Tremb
ling%20book%20Kierkegaard.pdf).

concerns." Aplee. Br. 3-4, 20. For instance, Inova took issue with the concerns Barnett initially discussed regarding the vaccination. Aplee. Br. 20. In service of this argument, Inova bends Barnett's words beyond their breaking point so as to distort her statements, to impute insincere or irreligious motivations. Aplee. Br. 20-21. In reality, Barnett was plainspoken about her own concerns regarding the vaccination, but stated clearly that she sublimated her own concerns to the will of God expressed to her in prayer. JA25.

Curiously, Inova's criticism of Barnett's beliefs demonstrates a confusion between a specific belief (God told me I cannot receive the vaccination) and a more general teaching or tenet of Christianity ("a belief that one must make medical decisions after prayer"). Aplee. Br. 30. Based on this conflation of categories, Inova insisted that the vaccination policy was not directly contradicted by a religious tenet that "one must make medical decisions after prayer."

Further failing to understand that it is religious beliefs that are at issue, Inova focused instead on whether Barnett's beliefs were directly required by a specific pronouncement from religious authority. Inova points to the letter Barnett submitted in conjunction with her pastor, in which Barnett "acknowledged that 'Scripture [did] not expressly instruct' on the matter of whether she could receive the COVID-19 vaccine." Aplee. Br. 26. **If reference to an express prohibition against vaccinations within an ancient text were required, then surely no one**

**would receive a religious accommodation**. That is certainly not the rule that this Court has adopted. But Inova claims on that basis that Barnett's beliefs "are untethered to a particular religious belief, and her claimed obligation to follow her conscience after prayer is, at most, an 'isolated teaching.'" Aplee. Br. 26-27. Again, this evinces a confusion in differentiating between individuals' religious *beliefs*, vis-à-vis the teachings, tenets, or dogmas of specific religions. This confusion was shared by some of the legally erroneous district court decisions to which Inova cited, criticizing employee beliefs because "they were 'not tie[d] to any particular religious belief or practice." Aplee. Br. 27.

Beyond the category error or conflating an individual's sincerely-held religious beliefs and the more generalized, express teachings of their religion, Inova's argument exposes a presumption that Inova should determine which religious beliefs are legitimate, which ones are significant enough for legal recognition, and which ones are "isolated teachings." While most Christians would likely argue that obeying the conviction of conscience revealed through prayer is more than an isolated teaching, that is beside the point here. No district court, much less Inova, is in a position to parse the relative theological significance of a religious belief within a particular religion; even if that were possible, the law is clear that religious beliefs are protected even if religious authorities do not share the individual's particular convictions about the religion. Barnett "may not be put

to the proof of [her] religious doctrines or beliefs," as "[r]eligious experiences which are as real as life to some may be incomprehensible to others." *Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644 *8 (4th Cir. Mar. 13, 1998) quoting *United States v. Ballard*, 322 U.S. 78, 86 (1944).

To support its attempt to denigrate Barnett's religious belief as an "isolated teaching," Inova cites to a district court ruling that has since been reversed by the Seventh Circuit: "We reverse and, aligned with the only two circuits to have considered the question, hold that an employee seeks accommodation because of their religion when their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice." *Passarella v. Aspirus, Inc.*, Nos. 23-1660 and 23-1661, __ F.4th __ (7th Cir. Jul. 29, 2024) (Slip Op. at 2). *Passarella* bears factual similarities with this case. Passarella was "a nurse in a medical surgery unit" who submitted a "five-page letter (effectively an appeal or request for reconsideration) she submitted after Aspirus denied her initial request," to explain "her Christian belief that her body 'is [the Lord's] dwelling place' and that '[a]fter prayerful consideration, I don't feel at peace about receiving the COVID vaccine' and instead 'must trust God with my body (His temple).'" *Id.*, Slip Op. at 2.

In ruling for reversal, the Seventh Circuit explained "the controlling inquiry at the pleading stage [is] whether the employee plausibly based her vaccination

exemption request at least in part on an aspect of her religious belief or practice," adding that the employee "may object to an employer's vaccine mandate on both religious and non-religious grounds—for example, on the view that receiving the vaccine would violate a religious belief and implicate health and safety concerns." *Id.*, Slip Op. at 6. By contrast, the errant district court ruling (which Inova had urged this Court to follow) "charted a different course," and "fail[ed] to give effect to Congress's expansive definition of 'religion.'" *Id.*, Slip Op. at 7. The Seventh Circuit heeded the admonitions of the Supreme Court in *Thomas v. Review Board of the Indiana Employment Security Division* "that judges are not to 'undertake to dissect religious beliefs … because [they] are not articulated with the clarity and precision that a more sophisticated person might employ'" and that "[i]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation." *Id.*, Slip Op. at 8-9, quoting 450 U.S. 707, 715-16 (1981).

Along the same lines, Inova also argued that Barnett did not demonstrate that her religious beliefs were in conflict with the vaccination requirement. As described above, Barnett stated in her exemption request, and alleged in her complaint, her belief that God had instructed her not to receive the vaccination. JA21. **This would seem to impose a fairly obvious conflict with receiving the**

**vaccination**.  However, Inova again confuses religious beliefs with teachings, doctrines, and dogmas to make the otherwise ridiculous claim that no conflict existed between her stated belief and the vaccination requirement.

This confused approach has likewise been rejected by another Circuit Court of Appeals.  *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024) (reversing the district court which "erred in finding that the plaintiffs failed to adequately connect their refusal of the vaccine with their religious beliefs" because "[t]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible").

Inova feebly seeks to distinguish this case from the groundswell of circuit court rulings that oppose the reasoning that was applied by the district court and is urged now by Inova.  Inova pointed out that in *Lucky v. Landmark Medical of Michigan, P.C.*, 103 F.4th 1241 (6th Cir. 2024), the plaintiff alleged "a religious objection to vaccines of any kind."  Aplee. Br. 29.  Suggesting a bright-line test on this criterion, Inova argued that this meant Barnett's refusal to receive the Covid-19 vaccination could not be religious, inasmuch as Barnett had acknowledged that she does not hold a personal objection to vaccines generally but had "only" received specific direction from God in prayer against the Covid-19 vaccination. Aplee. Br. 11, 29-30.  This superficial distinction is irrelevant to the religiosity of Barnett's belief.  At most, this appears to be a backhanded attempt to challenge the

sincerity of Barnett's belief, on the basis of inconsistency. But even this argument

has been rejected by appellate courts. *See EEOC v. Ilona of Hungary, Inc.*, 108

F.3d 1569, 1575 (7th Cir.1997) (Jewish employee's request of vacation to observe

Yom Kippur was sincere, even though she had not requested vacation for that

holiday in the previous eight years).

In reality, the *Lucky* court bluntly rejected a district court ruling that

mirrored (and cited) the approach followed by the district court here, analyzing

similar facts:

> Those are allegations of particular facts—she prayed, she received an
> answer, she acted accordingly—rather than what the district court
> called "naked assertions devoid of further factual enhancement."
> Moreover, she alleged that she has a religious objection to vaccines of
> any kind. *Id.* ¶12. No further "enhancement" was necessary: Lucky's
> allegations were almost self-evidently enough to establish, at the
> pleadings stage, that her refusal to receive the vaccine was an "aspect"
> of her religious observance or belief.

103 F.4th 1241, reversing *Lucky v. Landmark Med. of Mich., P.C.*, No.

23CV11004, 2023 U.S. Dist. LEXIS 192507, at *15-16, 2023 WL 7095085 (E.D.

Mich. Oct. 26, 2023) (relying on *Ellison* and wrongly applying *Africa* test).

What Inova seeks to confuse, the law has made clear: An employee's

religious beliefs are particular to the individual, not bound to a particular teaching

of a particular church, and they are to be assessed broadly and holistically by

courts in evaluating a well-pled complaint. That was all that Barnett asked from

the district court at the pleadings stage, but was denied it.  The district court's

ruling must be reversed.

B. <span style="text-decoration: underline">INOVA CONFUSES RELIGIOUS BELIEFS WITH RELIGION AS A CATEGORY, JUST AS THE DISTRICT COURT DID IN ITS DISMISSAL OF BARNETT'S COMPLAINT.</span>

Similarly, Inova urges this Court to make the same category error committed

by the district court, jamming the analysis of an individual employee's religious

beliefs into the ill-fitting suit of an outdated religious test that should only ever be

applied to novel belief systems claimed by inmates in government custody.  As

explained in Barnett's opening brief, the Third Circuit's 40-year-old opinion in

*Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), is useless for assessing the

religiosity of individual beliefs espoused by an employee seeking a religious

accommodation.  This is because *Africa* discusses what makes a collection of

connected, systemic beliefs into a religion, not what makes a specific belief

religious.  This critical analytical defect pervades Inova's brief, just as it did the

district court's ruling.

Inova quotes from *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d

487 (3d Cir. 2017), and that quote itself recites the *Africa* criteria for what defines

a religion—it does not describe what constitutes a religious belief or what elements

make a belief religious.  Aplee. Br. 24 ("First, a religion addresses…").  Inova

likewise cites an EEOC compliance manual in support of using the *Africa*

elements, but at least that manual attempts to conform this ill-fitting approach into one that might assess individual religious beliefs,[2] instead of dogmatically interjecting a religious test into the evaluation of individual beliefs.  Aplee. Br. 24; *but see* Brief for former EEOC GC as *Amicus Curiae* at 5-7; Brief for ADF as *Amicus Curiae* at 4; Brief for Va. OAG as *Amicus Curiae* at 11.

Unsurprisingly, Inova's application of the *Africa* religion test to Barnett's discrete religious beliefs resulted in an incoherent result.  Barnett's specific religious beliefs about the specific question of whether she should receive the Covid-19 vaccination "do not 'address fundamental and ultimate questions having to do with deep and imponderable matters' and are not 'comprehensive in nature.'" Aplee. Br. 26.  Had Barnett's beliefs been "imponderable" or "comprehensive in nature," they likely would not have been specific to the question of whether she should receive the vaccination.  Even in this, Inova's attempted application of the *Africa* analysis to the facts of this case show why it is a poor fit for the legal context of this case.

---

[2] Instead of demanding that religious beliefs meet *Africa*'s definitional test of what constitutes a religion, the cited footnote within that EEOC manual asks whether the employee's belief is "part of a comprehensive system of beliefs about fundamental or ultimate matters."  EEOC Compliance Manual at § 12-I-A-1, n. 28.  In case it needs to be said, footnotes in compliance manuals are not binding authority bearing on this Court's resolution of this case.

In urging this Court to accept the *Africa* test, Inova cited to selected cases from within this Circuit that reference *Africa*, including the district court's related ruling in *Ellison v. Inova Health Care Services* (JA64-76) and *Versatile v. Johnson*, Civil Action No. 3:09CV120, 2011 U.S. Dist. LEXIS 124541 (E.D. Va. Oct. 27, 2011).[3]  In *Versatile*, the district court had to assess whether a *pro se* inmate's belief system as a "Five Percenter" was properly considered "a Security Threat Group or gang rather than a religion." *Id.* at *4.  In assessing whether the inmate's "system of beliefs [was] religious in nature," the district court acknowledged the difficulty in evaluating "new or exotic [belief systems] outside the mainstream of traditional, clearly established, religious beliefs held and practiced." *Id.* at *13, quoting *Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644 (4th Cir. Mar. 13, 1998).  Acknowledging that this Circuit had not established a specific rubric on point, the district court weighed the approaches taken by other courts (including the Second Circuit's analysis in *Patrick v. LeFevre*), then ultimately elected to follow a "modified *Africa/Meyers* test." *Id.* at *17.

---

[3] Inova fails to mention the more recent line of cases that cite to the more widely-adopted framework of *Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984) and not to *Africa*. *See Mickle v. Moore (In re Long Term Admin. Segregation of Inmates Designated As Five Percenters)*, 174 F.3d 464, 468 (4th Cir. 1999); *Am. Humanist Ass'n v. Maryland-National Capital Park & Planning Comm'n*, 891 F.3d 117, 119 (4th Cir. 2018) (J. Wynn, concurring).

As with other inmate cases, which arise in the context of state action and the police power, and assess whether a novel belief system can be accepted as a religion, there is very little analytical overlap between *Versatile* and religious accommodation cases proceeding under the Civil Rights Act, especially where, as here, the question is not whether Barnett belongs to a religion, but whether her specific beliefs are religious and conflict with an employer policy requirement.

Furthermore, *Africa* is not consistently applied or accepted in district courts within this Circuit. A more recent ruling from the same district court ruled that *Africa* was "uncontrolling and unpersuasive," noting that, while it has been "favorably cited" by this Court, this Court has never "explicitly or implicitly adopt[ed] its tripartite framework." *Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. 1:23CV1110 (DJN), 2024 U.S. Dist. LEXIS 110887, at *9 (E.D. Va. June 24, 2024). Moreover, that ruling further explained that *Africa*'s assessment of "what constitutes a bona fide faith" is impractical because it "cries of arbitrary—and impermissible—judicial subjectivity," such that the test "stands antithetical to the Supreme Court's repeated and emphatic guidance in this area." *Id.* at *10. The judge is obviously correct.

This Court should reject Inova's urging to apply the Africa religious test to this case, and instead follow its own published rulings on point to reverse the

district court's dismissal of Barnett's complaint. *See*, *e.g.*, *United States EEOC v. Consol Energy, Inc.*, 860 F.3d at 138-139.

### III. THE PRIMARY ISSUE BEFORE THIS COURT IS THE RELIGIOSITY OF BARNETT'S BELIEFS—NOT SINCERITY, A FACTUAL ISSUE THAT WAS NEVER RAISED BELOW, AND CERTAINLY NOT UNDUE HARDSHIP, A FACT-INTENSIVE AFFIRMATIVE DEFENSE.

Consistent with the erroneous ruling of the district court, Inova seeks to litigate the factual issues of sincerity and undue hardship under the guise of a purely legal challenge to religiosity. Although stated in Barnett's opening brief, perhaps it bears repeating that neither of those factual issues were legitimate bases for dismissing Barnett's complaint. Also, rather than an onerous burden of proof, religiosity is a threshold inquiry, a point that Inova seems to concede. Aplee. Br. 23.

For instance, rather than addressing controlling precedent on religiosity of belief, Inova's brief cites to this Court's rulings on the balancing of religious beliefs with employer undue hardship and governmental interests. Aplee. Br. 23-24. Later, Inova collected cases about the compelling governmental interest in protecting health and safety, a topic that has nothing to do with the question of whether Barnett's beliefs are religious. Aplee. Br. 32-33. If Barnett is permitted to proceed with her claim, Inova can raise those competing interests, as contemplated by the law, in due time. But it is a subtle strategy to argue that the religiosity of Barnett's beliefs should be affected by such competing interests.

Elsewhere, Inova raised for the first time the sincerity issue, arguing that Barnett's statements "demonstrated that she lacked any '*honest* conviction that [compliance with the policy] was forbidden by [her] religion." Aplee. Br. 30 (emphasis added). Later, Inova cited to rulings that cast darkly cynical aspersions against religious people who were merely asserting their legally protected rights. Aplee. Br. 33-34 (accusing religious adherents of claiming purported religious beliefs "to evade any job requirement [they] disagreed with," as a "blanket privilege" or a "limitless excuse for avoiding all unwanted … obligations"). Properly categorized, these are not challenges to religiosity of individual beliefs; these are cynical attacks on the sincerity of religious people. If sincerity is the issue, that issue should be raised and argued openly. But suspicion about sincerity, or prejudice regarding legitimacy of religious belief, should not become a coded rubric for declaring religious beliefs to be irreligious as an all-consuming but unspoken policy exception to the Civil Rights Act.

### IV.   BARNETT PLED SUFFICIENT FACTS TO PROCEED ON HER CLAIMS OF DISPARATE TREATMENT.

Essentially conceding the legal basis for the district court's decision was incorrect,[4] Inova now pivots to new arguments, urging that Barnett's complaint is

---

[4] "Inova acknowledges that "[p]laintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim" (Aplee. Br. 37), and admits Rule 8 of the Federal Rules of Civil Procedure "generally

still doomed because she failed to allege enough to show that "Inova granted exemptions to persons who were from 'more prominent religions' or had 'more conventional beliefs' compared to her." Aplee. Br. 42. This is a strange argument for Inova to make, since it quoted the exact wording Barnett used in her Complaint to make out her allegations!

The law regarding disparate treatment is straightforward: "To prove a claim under the disparate treatment theory, an employee must demonstrate that the employer treated her differently than other employees because of her religious beliefs." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1018 (4th Cir. 1996). Unlike the facts of all the inapposite cases cited by Inova,[5] in this case, Inova literally created a committee for the purpose of **differentiating between the religious beliefs** of certain of their employees. As such, this case is clearly distinguishable.

And it is neither "conclusory" nor "absent direct evidence" to allege Inova's committee "pick[ed] winners and losers from among the employees making exemption requests, based upon whether the Committee found an employee's religious beliefs were legitimate" (JA7, ¶ 16); "created specific questions for each employee to answer so that the Committee could scrutinize and determine, in its view, the validity of an employee's religious beliefs" (JA8, ¶ 20); "chose to exempt

---

permits a party to 'set out 2 or more statements of a claim' in the alternative, 'either in a single count . . . or in separate ones.'" Aplee. Br. 43-44.
[5] *See* string citation, Aplee. Br. 38-39.

employees who came from more prominent religions or held to more conventional beliefs related to religious exemptions to vaccines" (JA13-14, ¶ 53); "found certain religious beliefs as sufficiently acceptable to qualify for a Covid-19 Policy exemption, while rejecting others" (JA16, ¶ 62); and "determine[d] based upon the religion, and religious beliefs flowing from that religion, [which] of the employees [would be] denied an exemption" (JA16, ¶ 63).  See, *Lucky*, 103 F.4th 1241 (finding more scant pleading (where plaintiff alleged only that she "prayed, she received an answer, she acted accordingly") was sufficient factual pleading).

Obviously, Inova quibbles with these allegations, but its arguments highlight the differing views one can have as to these facts, and not that the allegations invite a "court to engage in pure speculation."  Aplee. Br. 42.  To the contrary, the above allegations relate to direct evidence of "conduct and statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995) (defining direct evidence).

Accordingly, this Court should reject the arguments of Inova as to Counts II and III and reinstate these Counts.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant again respectfully requests that this Court REVERSE the Order granting dismissal, and REMAND the case to the district Court for further proceedings as appropriate.

Respectfully submitted:

/s/ Isaiah Kalinowski
Timothy P. Bosson (VSB: 72746)
Isaiah R. Kalinowski (VSB: 71125)
**Bosson Legal Group, PC**
8300 Arlington Blvd., Suite B2
Fairfax, VA 22031
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com
Ph: (571) 775-2529
*Counsel for Appellant*

Filed: 31 July 2024

**CERTIFICATE OF COMPLIANCE**

I, Isaiah R. Kalinowski, as counsel of record in this matter, certify that this Brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

This document contains <u>5,291 words.</u>

This document complies with the typeface requirements because it has been prepared in a proportional spaced typeface using Microsoft Word in <u>14-point Times New Roman</u>.

<u>/s/ Isaiah Kalinowski    </u>
Isaiah R. Kalinowski, Esq.